**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DALLAS BUYERS CLUB, LLC, | ) | |
| | ) | Case No.: 14-c-2162 |
| Plaintiff, | ) | |
| | ) | Judge Gary Feinerman |
| v. | ) | |
| | ) | |
| DOES 1 – 36, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM ON JOINDER AND RESPONSE**
**TO DEFENDANT DOE 17'S MOTION TO QUASH**

Plaintiff, Dallas Buyers Club, LLC, by and through its undersigned counsel, and in response to both the Court's request to distinguish *AF Holdings, LLC v. Does 1-1058* and Doe 17's Motion to Quash, states as follows:

I.      **Introduction**

Plaintiff respectfully requests this Court to deny Defendant Doe No. 17's Motion to Quash Subpoena ("Motion") [ECF No. 12].  This case involves a copyright owner's effort to protect its award-winning, copyrighted motion picture *Dallas Buyers Club* from numerous, unknown individuals, all of whom reside in this District, who illegally copied and distributed the work through the Internet.  *Dallas Buyers Club* is a mainstream movie that was directed by Jean-Marc Vallée, and which stars Matthew McConaughey, Jennifer Garner, Jared Leto, Denis O'Hare, and Steve Zahn, among others.  Plaintiff has been harmed as a result of this copyright infringement, and has no viable option to recover from those who have stolen the movie, or to prevent its further theft, other than to file suit.

This Response also addresses the concerns this Court raised in open court on June 9, 2014 regarding how the recent *AF Holdings, LLC v. Does 1-1058,* --- F.3d ----, 2014 WL 2178839 (D.C. Cir. 2014), attached hereto as Exhibit 1, may affect Doe 17's Motion.  Specifically, the Court sought

Plaintiff's comment on whether the Defendants in this case reside in District, and the propriety of joinder of multiple Doe Defendants pursuant to Federal Rule of Civil Procedure 20(a)(2). (Doe 17 also raised joinder, without reference to *AF Holdings,* as an alleged basis for quashing Plaintiff's subpoena. Motion, pgs. 3-7). As demonstrated in depth below, the decision in *AF Holdings* arose out of a justifiable desire to corral an out-of-control litigant. That the D.C. Circuit had an understandable basis for its ruling in *AF Holdings*, however, does not mean that this Court should take that approach here, involving a very different type of litigant pursuing a different type of claims.

For the reasons set forth below, joinder of the defendants in this case is proper pursuant to Federal Rule of Civil Procedure 20(a)(2), and none of the arguments that Doe 17 raises in his Motion should compel this Court to grant his Motion to Quash. Accordingly, Doe 17's Motion should be denied.

## II.     Argument

### A.     Joinder is Appropriate Here, and is Not a Basis for Quashing Plaintiff's Subpoena.

Though Doe 17 styles his Motion as a Motion to Quash, he incongruously also argues that joinder is inappropriate here. Motion, pgs. 3-7. For the reasons that follow, joinder is appropriate here, and *AF Holdings* does not change that conclusion.

#### 1.   *AF Holdings* is Not Controlling Upon this Court.

At the outset, as a decision of the D.C. Court of Appeals, *AF Holdings* is not controlling authority on this Court. Opinions "bind' only within a vertical hierarchy. *United States v. Glaser,* 14 F.3d 1213, 1216 (7th Cir. 2014). A district court in Illinois must follow Seventh Circuit decisions, but it owes no more than respectful consideration to the views of other circuits. *Id.* Thus, whatever authority *AF Holdings* possesses here depends on the persuasiveness of its arguments. However, the analysis set forth in *AF Holdings* is flawed.

### 2. There are Material Errors in the Legal Analysis in *AF Holdings*.

#### a. The *AF Holdings* Court Invented New Requirements for Joinder not Found in Rule 20(a)(2).

In *AF Holdings*, the Court concluded that joinder only was appropriate where two defendants participated in the same swarm at the same time:

> For purposes of this case, we may assume that two individuals who participate in the same swarm *at the same time* are part of the same series of transactions within the meaning of Rule 20(a)(2). In that circumstance, the individuals might well be actively sharing a file with one another, uploading and downloading pieces of the copyrighted work from the other members of the swarm. But AF Holdings has provided no reason to think that the Doe defendants it named in this lawsuit were ever participating in the same swarm at the same time. . . Two individuals who downloaded the same file five months apart are exceedingly unlikely to have had any interaction with one another whatsoever.

*AF Holdings*, 2014 WL 2178839 at *6-7 (emphasis in the original).

In doing so, the Court imposed a new requirement for joinder not established by the Federal Rules. Specifically, it now requires joined defendants to have been participating in a swarm at the same time before joinder under Rule 20(a) becomes proper. *Id*. However, neither the plain language of Rule 20(a), nor its interpretation, is that limiting.

At the outset, Rule 20(a)(2) has no temporality requirement setting limits on joinder. So, *AF Holdings* is reading new requirements into the joinder rule that cannot be found in its actual text. Reading new restrictive language into a law is improper – especially here. The U.S. Supreme Court long ago advised that, "Under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties, joinder of claims, parties and remedies **is strongly encouraged**." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966)(emphasis added). Thus, Federal Rule of Civil Procedure 20(a) provides that permissive joinder is to be liberally construed to promote convenience and judicial economy. *See First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 251-52 (N.D. Ill. 2011).

Further, the *AF Holdings* Court suggests that temporality is necessary because defendants

must interact with each other before joinder is appropriate under Rule 20(a)(2). *AF Holdings,* 2014 WL 2178839 at *6-7. This approach also imposes a brand new requirement into Rule 20(a)(2) not supported by the statute's text. Rule 20(a) permits joinder when "any right to relief is asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, *or series of transactions or occurrences*; and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B). Thus, Rule 20(a) not only permits permissive joinder in cases arising out of the same transaction or occurrence, but it also permits joinder when Plaintiff has pled a "series of transactions or occurrences."

The Court's opinion in *AF Holdings*, however, effectively reads the words "*or series of transactions or occurrences*" out of Rule 20(a). For the words "or series" in Rule 20(a) to have any meaning, the rule must permit joinder when there is something other than a direct transaction between the defendants. "Series" has been interpreted to mean a *logically related* fact pattern.

> [A]ll "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence. The analogous interpretation of the terms as used in Rule 20 would permit all reasonably related claims for relief by or against different parties to be tried in a single proceeding. Absolute identity of all events is unnecessary.

*Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974). That pleadings such as Plaintiff's involve logically related fact patterns, even though there may be no direct transactions, led one judge to state unequivocally:

> [I]t is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file—could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a).

*Digital Sin, Inc. v. Does 1–176*, 279 F.R.D. 239, 244 (S.D.N.Y. 2012)(emphasis in original), attached hereto as Exhibit 2.

4

While this "logical relationship test" does not require it, should the matters at issue here go to trial, Plaintiff will prove that Defendants' respective infringements (and that includes Doe 17's) were committed through the same transaction, or through a series of transactions, with mathematical certainty by demonstrating, among other things, that the algorithm used by BitTorrent Trackers would have caused the entire series of transactions to be different but for each of the Defendants' infringements.

Similarly, Magistrate Judge Randon of the Eastern District of Michigan analyzed the facts in an analogous case, taking considerable effort in his Report and Recommendation of April 5, 2012 to explain the allegations in the complaint and the applicable law. Judge Randon summarized the plaintiff's allegation that each defendant copied the same pieces of the same file as follows:

> Plaintiff alleges that its investigator ("IPP") was able to download at least one piece of the copyrighted Movie from each Defendant (Dkt. No. 1 at 8-10). It is important to understand the implications of this allegation before determining whether joinder is proper. If IPP downloaded a piece of Plaintiff's copyrighted Movie from each Defendant (and, conversely, each Defendant uploaded at least one piece of the Movie to IPP) then each Defendant had at least one piece of the Movie – traceable via Hash Identifier to the same Initial Seeder – on his or her computer and allowed other peers to download pieces of the Movie. By way of illustration: IPP's computer connected with a tracker, got the IP address of each of Defendant's computers, connected with each Defendants' computer, and downloaded at least one piece of the Movie from each Defendants' computer. During this transaction, IPP's computer verified that each Defendants' piece of the Movie had the expected Hash; otherwise, the download would not have occurred.

*Patrick Collins, Inc. v. John Does 1-21*, 282 F.R.D. 161, 164-165 (E.D. Mich., 2012).

Significantly, Judge Randon then explained that each defendant obtained the pieces of Plaintiff's movie in one of four ways, *all of which relate directly back to one individual seed file*.

> If Plaintiff's allegations are true, each Defendant must have downloaded the piece(s) each had on his or her computer in one, or more, of the following four ways: (1) the Defendant connected to and transferred a piece of the Movie *from the initial seeder*; or (2) the Defendant connected to and transferred a piece of the Movie *from a seeder* who downloaded the completed file from the initial seeder or from other peers; or (3) the Defendant connected to and transferred a piece of the Movie *from other Defendants* who downloaded from the initial seeder or from other peers; or (4) the Defendant connected to and transferred a piece of the Movie *from other peers* who downloaded from other Defendants, other peers, other Seeders, or

the Initial Seeder. In other words, in the universe of possible transactions, at some point, each Defendant downloaded a piece of the Movie, which had been transferred through a series of uploads and downloads from the Initial Seeder, through other users or        directly, to each Defendant, and finally to IPP.

*Id.*, 282 F.R.D. at 165. (Emphasis added).

Having limited the universe to four possibilities, the court correctly concluded the transaction was logically related.

Therefore, each Defendant is logically related to every other Defendant because they were all part of a series of transactions linked to a unique Initial Seeder and to each other. This relatedness arises not merely because of their common use of the BitTorrent protocol, but because each Defendant affirmatively chose to download *the same Torrent file* that was created by *the same initial seeder*, intending to: 1) utilize other users' computers to download pieces of *the same Movie*, and 2) allow his or her own computer to be used in the infringement by other peers and Defendants in *the same swarm*.

*Id.*, (emphasis added). These actions may be contrasted, for example, with people who utilize different swarms to copy different files containing the movie, or who use different sharing programs to share the movie.

In light of the above, permissive joinder under Rule 20(a) requires neither that the Defendants act at the same time nor that they directly interact with each other in the conduct that is the source of the litigation.

### b. The Court's Ruling in *AF Holdings* Fails to Consider How BitTorrent Works.

The Court's approach in *AF Holdings* also fails to take into account the way copying a film through BitTorrent works. As the term *file sharing* expressly denotes, Defendants' mutual use of BitTorrent to each access a copy of Plaintiff's movie (and that includes Doe 17's use) is an inherently cooperative and interdependent endeavor.

To share information using BitTorrent, an initial file-provider (the "seeder") elects to share an initial file, called a "seed," with a torrent network. The file to be distributed is divided into segments called "pieces." Other users ("peers") intentionally connect to the seed file to download it. As each peer receives a new piece of the file, the peer also immediately becomes a source of that piece for other peers, relieving the original seeder from having to send that piece to every peer requesting a copy.

*TCYK, LLC v. Does 1-44*, Case No. 13–cv–3825, 2014 WL 656786, *1 (N.D. Ill. February 20, 2014) (Dow, J.), attached hereto as Exhibit 3. Thus, copying movies through BitTorrent is an inherently cooperative enterprise.

> As more users download the file, thereby increasing the number of sources from which potential downloaders can take bits of that file, downloading speeds increase for future users. The users who download and upload the same seed file are called, collectively, a "swarm." Once a user who seeks to download a file connects to (effectively joining) an existing swarm, he continuously takes pieces of the seed file from the other users in the swarm until he has downloaded a completed file. Those sources are, by definition, in the swarm because they have already downloaded the seed file. And that new swarm member who joined the swarm to download the file is now also a potential source of file bits for future downloaders who join the swarm. Swarm members are only a potential source, because users must be logged in to the BitTorrent software to share files. Therefore, swarm members must be logged in to the BitTorrent protocol simultaneously to be in the same swarm at the same time.

*Id.* BitTorrent encourages users to remain connected to the original swarm, by linking swarm connection to download speed. *Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191, fn. 4 (N.D.Ill. 2013). Users who stay connected to the swarm enjoy much faster download speeds than those who have disconnected. *Id.*

These facts reveal the inherent flaws in the inapposite "Blackjack table" analogy which the *AF Holdings* Court adopted. Blackjack is not an inherently cooperative game. Conversely, copying materials through a BitTorrent swarm *is* an inherently cooperative enterprise. A more appropriate analogy to a BitTorrent case would involve a group of Blackjack players, each of whom is secretly a confederate of the others, engaged in a card-counting scheme. The team targets a single table, playing a single game, with a single deck of cards. While members of the team may join and leave the table at different times, and there may be no point where all members of the team are playing at the table simultaneously, the team members still would be sharing information with each other about the composition of the as-yet undealt cards in the deck over time in order to gain an unfair advantage over the house. The card-counting Blackjack team is akin to the file sharers at issue in a BitTorrent case. Just as a card-counting team would meet the requirements of joinder under Rule 20(a)(2) from

a technical standpoint in that their actions arise out of the same series of transactions (i.e., the card game at which they all were cheating), so also do the defendants in this BitTorrent case. See the accompanying Supplemental Declaration of Daniel Macek – Exhibit 4, para. 21.

Moreover, a BitTorrent client seeks to download from *any* available source and serves as a source to *any* requesting downloader, and because the system is designed to survive the termination of participation by any midpoint user, there is no basis for creating an artificial distinction between "direct" sharers and "indirect" sharers. This is especially true given that these features are central to how BitTorrent file sharing works. Defendants here would not have been able to illicitly steal Plaintiff's movie had they not all used the exact same software to share the *same* (identical) seed file. Further, their common participation in the swarm improved the chances that their individual efforts to copy the film would be successful. These factors demonstrate that they were engaging in a "series of transactions or occurrences" for the purpose of Rule 20(a). Thus, joinder is appropriate here under the federal rules.

Putting it another way, uploading/downloading of a file comprising a movie is a "transaction." "Transactions" are synonymous with "connections." Computers using the BitTorrent Protocol to download a particular movie are or have been definitively connected to one another. Transactions are occurring here. No one disputes that.

The connections or transactions among computers may have been direct or they may have been indirect. But however direct or indirect they may be, connections/transactions are occurring here. Rule 20 does not provide for severance because the transactions/connections are indirect even through a multitude of connections/transactions. Note that Rule 20 does not even require that these identical transactions stem, directly or indirectly, from a common source or originating point.

The BitTorrent transactions which occur in a particular movie upload/download are more than similar to the BitTorrent transactions which occur in another download of the same movie. They are indeed the same – they are electronically identical to one another. Identical transactions are

occurring. The term "similar," however, does not appear in Rule 20. Thus, an analysis based on "similarity" is improper and unnecessary.

These transactions may occur at different times, or at the same time, or at overlapping times. "Temporality," however, is not an explicit or even implied consideration in Rule 20 unless the term "series of transactions" is understood necessarily to occur over a period of time.

"Series," however, does not necessarily require time sequencing. Multiple chains of identical events can occur at the same time, or at different times. Again, in considering Rule 20, an analysis that takes time into consideration is improper.

The only proper analysis is that Rule 20 provides for joinder in any case where a "series of transactions" has occurred – if "(B) any question of law or fact common to all defendants will arise in the action." In this case, the questions of law are obviously common, and probably identical. Questions of fact also will certainly be common from the plaintiff's standpoint, and, to an overwhelming extent, from the defendants' standpoint as well. Thus, these activities come within Rule 20(a)(2), and are properly joined.

### c. The Court's Logic in *AF Holdings* is Contrary to U.S. Supreme Court Precedent Interpreting Rule 20(a).

The Court's holding that joinder is contingent on a showing of direct interaction between Doe Defendants during the same period is at odds with the U.S. Supreme Court's holding in *United States v. Mississippi*, 380 U.S. 128 (1965). There, the Court found that the joinder of six defendants – election registrars of six different counties – was proper because the allegations all were based on the same state-wide system designed to enforce the voter registration laws in a way that would deprive African Americans of the right to vote. The complaint did not allege that the registrars directly interacted with each other, that they knew of each other's actions, or even that any one defendant's actions directly affected any of the others in any way. Nevertheless, the Supreme Court understood Rule 20(a) as allowing the joinder of these disparate defendants in one action because

9

the series of transactions they were accused of participating in was related and contained a common

nexus of law and fact. *United States v. Mississippi*, 380 U.S. at 142-143.

> [T]he complaint charged that the registrars had acted and were continuing to act as
> part of a state-wide system designed to enforce the registration laws in a way that
> would inevitably deprive colored people of the right to vote solely because of their
> color. On such an allegation the joinder of all the registrars as defendants in a single
> suit is authorized by Rule 20(a) of the Federal Rules of Civil Procedure.

*Id.* at 142. Indeed, the Supreme Court held all of the defendants were joined properly because they

were all acting on the basis of the same system which created a transactional relatedness. *Id.*

Plaintiff recognizes that the facts at issue here do not rise to the same level of importance as

civil rights litigation, but the joinder standard remains the same regardless of the significance of the

case. Thus, like the defendants in *United States v. Mississippi*, it is not necessary for each of the Doe

Defendants here to have directly interacted with any other Doe Defendant; or, in the language of a

BitTorrent file sharing operation, for each Doe Defendant to have shared a piece of the file with each

and every Doe Defendant when downloading the copyrighted work. The Doe Defendants are joined

properly because the Doe Defendants all acted under the same system – a system that expressly is

designed to work cooperatively, and whose efficiency and effectiveness improve as more people

join the swarm. Here, the Doe Defendants (including Doe 17) shared the exact same seed file with

the exact same type of software for the exact same purpose – improperly copying one file of a copy

of *Dallas Buyers Club*. Thus, *United States v. Mississippi* supports a finding of proper joinder under

Rule 20(a) in this case.

### 2. Additional Technical Arguments Relating to How BitTorrent Protocol Works Also Support Joinder here.

Plaintiff further notes that it is not only the interactions between the Defendants in sharing

from the same seed file that justify joinder here. The BitTorrent Protocol has a number of default

features which encourage interactivity among users of BitTorrent to facilitate their file sharing. See:

Supplemental Declaration of Daniel Macek in Support of Plaintiff's Motion for Leave to Take

Discovery Prior to Rule 26(f) Conference, attached as Exhibit 4 hereto.  Plaintiff adopts the language and the reasoning of the Supplemental Declaration herein.  As the declaration makes plain, file sharing through BitTorrent is a cooperative enterprise, and thus, Defendants' common infringements are well suited to joinder pursuant to Rule 20(a).

> **3.**      ***AF Holdings* Was Intended to Punish and Corral an Out-of-Control Litigant, and its Holding Should Not be Extended to Plaintiffs Who Follow the Rules.**

The decision in *AF Holdings* cannot be understood apart from the participants – one of whom is notorious for its disrespect for the Rules of the Courts before whom it appears.

At the outset of *AF Holdings*, the Court noted that AF Holdings was represented by Paul A. Duffy.  *AF Holdings,* 2014 WL 2178839 at *1.  Until recently, Mr. Duffy was associated with Prenda Law, a law firm that represented AF Holdings in the D.C. district court.  *Id*.  Prenda subsequently disbanded, and then reconstituted itself in a similar form.  *Id.*  The Court set forth a parade of horribles with which Prenda Law had been associated – not the least of which being that *AF Holdings was an entity allegedly formed by the law firm prosecuting the case.  Id*.at *1.  The Court was concerned because the law firm which initially prosecuted the case had purchased the rights to pornographic films, implying that it did so for the purpose of pursuing thousands of defendants in copyright infringement cases.  *Id*., 2014 WL 2178839 at *1-2.  The Court further noted that Prenda may have submitted a document to the Court with a forged signature, had been sanctioned by a number of courts, and had been referred to the United States Attorney in at least two districts, one state Attorney General, and the I.R.S.  *Id*., 2014 WL 2178839 at *1-2.

Significantly, the *AF Holdings* Court is not the only court to find fault in the legal practices of the Prenda firm.  Federal courts in Illinois have had occasion to comment unfavorably (putting it mildly) on Prenda's reputation, and even to sanction Prenda.  See: *Lightspeed Media Corp. v. Smith,* 12-889-GPM, 2013 WL 6225093 (S.D. Ill. November 27, 2013) at *5 (attached hereto as Exhibit 5) ("These men [including Duffy] have shown a relentless willingness to lie to the Court on paper and

11

in person. . . "); *Guava, LLC v. Does 1-5,* 12-CV-8000, 2013 WL 3270663 (N.D. Ill. June 27, 2013) at *3(attached hereto as Exhibit 6) ("Courts have expressed strong concerns that Prenda Law's aggressive tactics are a means to improperly leverage settlements.")

With these facts serving as the backdrop, the *AF Holdings* Court noted that the plaintiff had sued 1,058 defendants, the "overwhelming majority" of whom did not even live in the district. *AF Holdings,* 2014 WL 2178839 at *4-5. The Court further noted that the swarm at issue in this case had lasted five months. *Id.,* 2014 WL 2178839 at *7. Finally, the case involved a pornographic film, which the Court acknowledged was an aspect that encouraged defendants to settle quickly. *Id.,* 2014 WL 2178839 at *1.

Understood in this context, the decision in *AF Holdings* clearly was intended to punish the litigation abuses of the Prenda firm and its successors. The opening paragraph of the opinion states as much. *AF Holdings,* 2014 WL 2178839 at *1. With that in mind, the errors cited above in the Court's reasoning and application of the law may be understood as the well-intentioned attempt to bring a rogue law firm to heel.

The sins of Prenda, however, should not be visited upon all plaintiffs who wish to enforce their infringed-upon copyrights. The multitude of danger signs that were present in *AF Holdings* are not present here. In the case at issue here, there are only 36 defendants in this case, not 1,058. *See*: ECF No. 1. Moreover, as best as Plaintiff has been able to ascertain, all of these defendants reside in the Northern District of Illinois. *Id.*, ¶¶6, 8, Ex. C. By contrast, out of the more than a thousand parties sued in *AF Holdings*, the plaintiff could not say how many of them resided in the district – and the "overwhelming majority" did not. *AF Holdings,* 2014 WL 2178839 at *4-5. The Defendant in this lawsuit participated in the swarm at issue between January 15, 2014 and January 21, 2014 – a period of about six days. *Id.*, Ex. C. By contrast, the defendants in *AF Holdings* participated in the swarm at issue over a period lasting nearly *five months*. *AF Holdings,* 2014 WL 2178839 at *7. Finally, this case involves a mainstream motion picture, starring recognizable Hollywood actors, that

has won numerous film awards.  By contrast, the film at issue in *AF Holdings* was an adult film.  *AF Holdings*, 2014 WL 2178839 at *2.  The motion picture at issue here is a mainstream film.

In sum, none of the issues raised either by Defendant on the issue of joinder or by the D.C. Circuit Court of Appeals in *AF Holdings* compel the defendants in this case to be severed or Plaintiff's subpoena to be quashed.

### B.    Defendant's Remaining Arguments do not Merit Quashing Plaintiff's Subpoena.

Federal Rule of Civil Procedure 45 requires a court to quash or modify a subpoena if it: (1) fails to allow a reasonable time for compliance; (2) "requires a person who is neither a party nor a party's officer to travel more than 100 miles;" (3) "requires disclosure of privileged or other protected matter, if no exception or waiver applies;" or (4) "subjects a person to undue burden."  Fed R. Civ. P. 45(c)(3)(A).  A party moving to quash bears the burden of demonstrating that the subpoena falls within one of these categories.  In this case, the subpoena does not fall within any of the above categories.

Doe 17's claims to the contrary [Motion, pgs. 8-9], the subpoena does not impose an undue burden on Defendant, or any other burden for that matter, because Defendant is not the party who must comply with the subpoena.  See, e.g., *Purzel Video GmbH v. Does 1-108*, No. 13-cv-0792, 2013 WL 6797364, at *3 (N.D. Ill. December 19, 2013) (Gottschall, J.) (attached as Exhibit 7); *Malibu Media, LLC v. Reynolds*, No. 13-c-6672, 2013 WL 870618, at *6 (N.D. Ill. March 20, 2013) (Kendall, J.) (attached as Exhibit 8).  The subpoena at issue is instead directed to Comcast, which has not objected.  Because Defendant does not, and moreover cannot, show that the subpoena at issue falls into one of the categories outlined by Rule 45(c)(3)(A), Defendant has no legal basis to quash Plaintiff's subpoena to Comcast.

Defendant further argues that Plaintiff's subpoena to Comcast should be quashed by suggesting (though conspicuously, not asserting) that Defendant may not have committed the file sharing [Motion, pgs. 3, 7-8], that identifying a Comcast subscriber whose IP address was used to

share a movie is not the same as identifying the actual infringer [*Id.*, pgs. 7-8], that Plaintiff has not "verified the validity of the data forming the basis of the request" [*Id.*, pg. 9], and that his or her reputation will be hurt by involvement in this lawsuit. *Id.*, pg. 9. These arguments (which, again, are not any of the bases for quashing a subpoena under Rule 45) repeatedly have been rejected by other Courts in this District. See: *Malibu Media, LLC v. John Doe*, No. 13-C-8484, 2014 WL 1228383, at *3 (N.D. Ill. March 24, 2014) (Ellis, J.) (attached as Exhibit 9) ("[E]ven if the person associated with Doe's IP address did not download the files at issue in this suit, obtaining the person's information is the logical first step in identifying the correct party. [citing] *TCYK, LLC v. Does 1-44*, Case No. 13–cv–3825, 2014 WL 656786, *4 (N.D. Ill. February 20, 2014)"; *reFX Audio Software, Inc. v. Does 1-111*, No. 13-C-1795, 2013 WL 3867656, at *2 (N.D. Ill. July 23, 2013) (Gettleman, J.) (attached as Exhibit 10) ("[The] argument that the subpoena should be quashed because the information sought will not itself identify the actual infringer demonstrates a lack of understanding of the basic scope of discovery under the federal rules."); *The Thompsons Film, LLC v. Does 1-60*, No. 13-C-02368, 2013 WL 4805021, at *3 (N.D. Ill. September 6, 2013) (Dow, J.) (attached as Exhibit 11) ("Insofar as IP address holders may contend that they were not the infringing parties, such arguments go to the merits of the action and are 'not relevant as to the validity or enforceability of a subpoena, but rather should be presented and contested once parties are brought properly into the suit.' [citing] *Hard Drive Prods. v. Does 1-48*, No. 11-C-9062, 2012 WL 2196038, at *4 (N.D. Ill. June 14, 2012)"; *Malibu Media, LLC v. John Does 1-49*, No. 12-CV-6676, 2013 WL 4501443, at *2 (N.D. Ill. 2013) (attached as Exhibit 12) ("It is not a wild assumption on Plaintiff's part that the subscriber may be the alleged infringer or may lead to the alleged infringer. Without connecting the IP address to a person, Plaintiff would have no way of prosecuting infringement of its claimed copyright.").

In sum, Doe 17's protestations of innocence are not yet at issue in this case, and they are not a basis for quashing a third-party subpoena. Further Doe 17's arguments that his or her reputation will be harmed if Plaintiff learns his or her identity (perhaps a concern where a pornographic film

14

was shared, but not relevant here), have already been addressed above.

Finally, Defendant makes a meritless argument that "the motion for discovery violates due process by allowing the identified Defendant to be subjected to the Plaintiff's direct discovery and/or interrogatories." Motion, pg. 9. Since no discovery has been served on Doe 17, and the subpoena is directed to a third party, his or her arguments are without any basis in fact. In light of all of the above, Doe 17's Motion to Quash should be denied.

**III.     Conclusion**

In sum, there is no legal basis for quashing Plaintiff's subpoena to Comcast. Joinder is appropriate, *AF Holdings* notwithstanding. The decision of the D.C. Cir. in *AF Holdings, LLC* arose out of an understandable concern with halting the abusive litigation practices of the Prenda firm. That understandable concern, however, neither should excuse the flaws in the D.C. Cir. Court's interpretation of Rule 20(a)(2), nor tar with the same brush all plaintiffs seeking to enforce their copyrighted films. Internet piracy of copyrighted material remains a widespread problem. Lawsuits to enforce those copyrights remain the only way a rights holder can protect its property from such theft. Plaintiffs who try to enforce their property rights within legal and ethical guidelines should not be limited from using their legal right to joinder under Rule 20(a)(2). Further the remainder of Doe 17's legal arguments in support of his motion to quash either consist of defenses that should be

raised after Doe 17 has been served with process in this case, or are meritless on their face.

For all of the above reasons, Plaintiff respectfully submits that Doe 17's Motion to Quash should be denied.

Dated:  June 23, 2014                    Respectfully submitted,

                                         DALLAS BUYERS CLUB, LLC


                                         By:    s/ Michael A. Hierl_____
                                                Michael A. Hierl (Bar No. 3128021)
                                                Todd S. Parkhurst (Bar No. 2145456)
                                                Karyn L. Bass Ehler (Bar. No. 6285713)
                                                Hughes Socol Piers Resnick & Dym, Ltd.
                                                Three First National Plaza
                                                70 W. Madison Street, Suite 4000
                                                Chicago, Illinois 60602
                                                (312) 580-0100 Telephone
                                                (312) 580-1994 Facsimile
                                                Attorneys for Plaintiff Dallas Buyers Club, LLC

16

### CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Memorandum on Joinder and Response to Defendant Doe 17's Motion to Quash was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on June 23, 2014.

s/Michael A. Hierl