## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DALLAS BUYERS CLUB, LLC, | ) |
| | ) Case No.: 14-c-2162 |
| Plaintiff, | ) |
| | ) Judge Gary Feinerman |
| v. | ) |
| | ) |
| DOES 1 – 36, | ) |
| | ) |
| Defendants. | ) |

## EXHIBITS TO PLAINTIFF'S MEMORANDUM ON JOINDER
## AND RESPONSE TO DEFENDANT DOE 17'S MOTION TO QUASH

1. *AF Holdings, LLC v. Does 1-1058*, --- F.3d ----, 2014 WL 2178839 (D.C. Cir. 2014)

2. *Digital Sin, Inc. v. Does 1–176*, 279 F.R.D. 239, 244 (S.D.N.Y. 2012)

3. *TCYK, LLC v. Does 1-44*, Case No. 13–cv–3825, 2014 WL 656786 (N.D. Ill. February 20, 2014)

4. Supplemental Declaration of Daniel Macek in Support of Plaintiff's Motion for Leave to Take Discovery Prior to Rule 26(f) Conference.

5. *Lightspeed Media Corp. v. Smith*, 12-889-GPM, 2013 WL 6225093 (S.D. Ill. November 27, 2013)

6. *Guava, LLC v. Does 1-5*, 12-CV-8000, 2013 WL 3270663 (N.D. Ill. June 27, 2013).

7. *Purzel Video GmbH v. Does 1-108*, No. 13-cv-0792, 2013 WL 6797364, at *3 (N.D. Ill. December 19, 2013)

8. *Malibu Media, LLC v. Reynolds*, No. 13-c-6672, 2013 WL 870618, at *6 (N.D. Ill. March 20, 2013)

9. *Malibu Media, LLC v. John Doe*, No. 13-C-8484, 2014 WL 1228383, at *3 (N.D. Ill. March 24, 2014)

10. *reFX Audio Software, Inc. v. Does 1-111*, No. 13-C-1795, 2013 WL 3867656, at *2 (N.D. Ill. July 23, 2013)

11. *The Thompsons Film, LLC v. Does 1-60*, No. 13-C-02368, 2013 WL 4805021, at *3 (N.D. Ill. September 6, 2013)

12. *Malibu Media, LLC v. John Does 1-49*, No. 12-CV-6676, 2013 WL 4501443, at *2 (N.D. Ill. 2013)

# EXHIBIT 1

Westlaw.

Not Reported in F.Supp.2d, 2012 WL 5520861 (N.D.Ill.)
(Cite as: 2012 WL 5520861 (N.D.Ill.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
AF HOLDINGS LLC, Plaintiff,
v.
John DOE, Defendant.

No. 12 C 4222.
Nov. 13, 2012.

Paul A. Duffy, Prenda Law, Chicago, IL, for Plaintiff.

*MEMORANDUM OPINION AND ORDER*
JOHN W. DARRAH, District Judge.

*1 Plaintiff AF Holdings LLC ("AF Holdings") has filed a Complaint against John Doe, alleging copyright infringement of an adult-entertainment video. On June 26, 2012, this Court granted AF Holdings leave to file subpoenas, pursuant to Federal Rule of Civil Procedure 45, to identify certain information associated with Internet Protocol ("IP") address 24.13.57.221. This matter comes before the Court on Movant's Motion to Quash and Proceed Under a Pseudonym ("Movant"). Plaintiff filed a response, and Movant failed to file a reply.

**BACKGROUND**

AF Holdings filed the instant Complaint on March 31, 2012, alleging that John Doe "knowingly and illegally reproduced and distributed Plaintiff's copyrighted video by acting in concert with others via the **BitTorrent** file-sharing protocol and, upon information and belief, continues to do the same." (Compl.¶ 1.) The copyrighted work at issue in this Complaint is one of Plaintiff's adult-entertainment videos, entitled "Popular Demand" (the "Video").

Plaintiff alleges that "[i]n the course of monitoring Internet-based infringement of its copyrighted content, Plaintiff's agents observed unlawful reproduction and distribution occurring over IP address 24.13.57.221 via the **BitTorrent** file transfer protocol." (*Id.* ¶ 4.) As Plaintiff explains, "**BitTorrent** is a modern file sharing method ("protocol") used for distributing data via the Internet." (*Id.* ¶ 8.)

Plaintiff did not know Defendant's actual name; instead, Defendant was known to Plaintiff only by an IP address, which is a number assigned to devices, such as computers, that are connected to the Internet. On June 26, 2012, this Court granted AF Holdings leave to file subpoenas, pursuant to Federal Rule of Civil Procedure 45, to identify certain information associated with Internet Protocol ("IP") address 24.13.57.221, as follows: "information sufficient to identify John Doe associated with IP address 24.13.57.221, including name, current (and permanent) address, telephone number, e-mail address, and Media Access Control address." (Dkt. No. 9.) AF Holdings issued a subpoena, pursuant to Federal Rule of Civil Procedure 45, to Comcast Cable Communications LLC ("Comcast"), to obtain the above information.

**LEGAL STANDARD**

Rule 45(c)(3)(A) states that the court must quash or modify a subpoena if it "requires disclosure of privileged or other protected matter" or if it "subjects a person to undue burden." The party seeking to quash a subpoena has the burden of demonstrating that it meets these requirements. *See Pacific Century Int'l, Ltd. v. Does 1–37,* 282 F.R.D. 189, 2012 WL 1072312, at *2 (N.D.Ill. Mar.30, 2012).

**ANALYSIS**

Movant raises three arguments in favor of her Motion. First, Movant argues that AF Holdings' iden-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5520861 (N.D.Ill.)
(Cite as: 2012 WL 5520861 (N.D.Ill.))

tification of her IP address is incorrect; therefore, AF Holdings' subpoena seeks information that is not relevant. Movant claims her IP address is 10.0.0.02 and, in support, Movant submits the affidavit of an individual [FN1] ("Affiant"), who avers, "I reviewed and examined the Internet Protocol address ... for the personal computer of [Movant] ... [and] determined that the IP address for [the] personal computer of [Movant] is 10.0.0.2." (Ex. 1 ¶¶ 2–3.) The credibility of this conclusory statement by Affiant, however, is outweighed by an affidavit submitted by AF Holdings and a letter sent by Comcast to Movant.

> FN1. Movant has identified herself by name when she filed the instant Motion. Movant has also identified the affiant, who has the same last name as the Movant. Because of the Court's ruling below, that Movant may proceed under a pseudonym, the Movant and Affiant are not identified by name in this ruling.

*2 With its *Ex Parte* Application for Leave to Take Expedited Discovery, AF Holdings submitted an affidavit of Peter Hansmeier, a technician at a firm that monitors and documents Internet-based piracy for clients, one of whom is AF Holdings. Hansmeier provides a detailed explanation of the process he employed to identify John Doe's IP address and service provider. (*See* Dkt. No. 6–2 ¶¶ 22–27.) Hansmeier avers that he "personally observed John Doe's IP address 24.13.57.221 ... downloading and uploading the Video in a BitTorrent swarm." (*Id.* ¶ 27.) To her instant Motion, Movant attached a letter from the Comcast Legal Response Center, which identified Movant by name and was sent to what appears to be her home address. (Dkt. No. 10 at 6.) The letter states:

AF Holdings, LLC has filed a federal lawsuit in the United State District Court for the Northern District of Illinois. You have been identified in our records via your assigned Internet Protocol ("IP") address, which is unique to each user, in this lawsuit for al-legedly infringing AF Holdings LLC's copyrights on the Internet by uploading or downloading a movie without permission. This was allegedly done using a device assigned the IP address 24.13.57.221 on 05/01/2012 02:01:32 GMT.

(*Id.*) The affidavit, coupled with the letter from Comcast to Movant, suggests that the IP address 24.13.57.221 does belong to Movant.

Furthermore, even if the IP address 24.13.57.221 does not belong to Movant, her argument that AF Holdings's subpoena "seeks information that is not relevant," pursuant to Federal Rule of Civil Procedure 26(b)(1), lacks merit. AF Holdings alleges that "Plaintiff's agents observed unlawful reproduction and distribution occurring over IP address 24.13.57.221 via the BitTorrent file transfer protocol." (Compl.¶ 4.) Therefore, a subpoena, seeking to discover certain information associated with this IP address is certainly "relevant to [AF Holding's] claim" and is "reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

Second, Movant argues that AF Holding's subpoena seeks information that is " 'privileged or other protected matter' because the subpoena seeks information about an IP address that does not belong to the undersigned." (Mot.¶ 8.) It is unclear what the basis of Movant's argument is. But to the extent Movant has argued that she has a privacy interest in the information that is the subject of the subpoena, this argument also fails. Another court in this district recently addressed this argument in *Hard Drive Productions v. Does 1–48*, No. 11–cv–9062, 2012 WL 2196038, at *4 (N.D.Ill. June 14, 2012), noting that "courts have recognized that because internet subscribers must convey their identity and other information to an ISP in order to establish an account, they do 'not have a reasonable expectation of privacy in their subscriber information.' " *Id.* at *4; *First Time Videos v. Does 1–500*, 276 F.R.D. 241, 249 (N.D.Ill.2011); *Boy Racer, Inc. v. Does 1–34*, No. 11–23035, 2012 WL

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2012 WL 5520861 (N.D.Ill.)
**(Cite as: 2012 WL 5520861 (N.D.Ill.))**

1535703, at *4 (S.D.Fla. May 1, 2012).

*3 Last, Movant argues that she should be permitted to proceed under a pseudonym because her interest in proceeding anonymously outweighs the public's right to access this judicial proceeding. AF Holdings responds that Movant's request should be denied because Movant has already identified herself in documents filed in this Court. Further, AF Holdings argues that leave to proceed pseudonymously should only be granted in "an unusual case." (Resp. at 4.)

A court in this district recently addressed a similar claim. In *Sunlust Pictures, LLC v. Does 1–75,* No. 12–cv–1546, 2012 WL 3717768, at *1 (N.D.Ill. Aug.27, 2012) (*Sunlust Pictures* ), the court noted that "Judges within this district have recognized that plaintiffs in these types of cases might unfairly threaten to disclose defendants' identities in order to improperly leverage settlement negotiations." *Id; see also Hard Drive Productions v. Does 1–48,* No. 11–9062, 2012 WL 2196038, *6 (N.D.Ill. June 14, 2012).

AF Holdings concedes that in "matters of a sensitive and highly personal nature such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families," anonymous litigation may be permitted. (Resp. at 4, citing *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707, 712–13 (5th Cir.1979).) "A disputed allegation that [Movant] illegally downloaded (and presumably viewed) a pornographic movie fits within this framework." *Sunlust Pictures,* 2012 WL 3717768, at *5.

In this case, the balance of the sensitive nature of the proceedings to Movant against any unfair prejudice to AF Holdings is in favor of Movant. AF Holdings will not be unfairly prejudiced because AF Holdings will know Movant's true identity and be able to prosecute its claims appropriately. As the court in *Sunlust* noted, "[the only consequence to [movant] that proceeding anonymously will be diminution of the threat of publicly disclosing **Doe's** identity (thereby embarrassing **Doe**) as leverage to force a settlement." *Id.* Nor is there any harm to the public interest in having access to judicial proceedings because Movant did not initiate this litigation. *See id* ("And because **Doe** (as a defendant) has not purposely availed himself of the courts, the public's interest in knowing his identity is weaker."). Accordingly, at this stage in litigation, Movant's request to proceed by pseudonym is granted; but this ruling may be revisited at later stages of ligation should the case so proceed.

**CONCLUSION**

For the reasons stated above, Movant's Motion to Quash and to Proceed Under a Pseudonym [10] is denied except that Movant is granted leave to proceed anonymously in this case, and AF Holdings is ordered not to reveal Movant's name or identifying information. Because Movant has already identified herself by name in documents filed on this Court's docket, Docket Numbers 10 and 13, which identify Movant by name, shall be placed under seal.

N.D.Ill.,2012.
AF Holdings LLC v. Doe
Not Reported in F.Supp.2d, 2012 WL 5520861 (N.D.Ill.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 2

279 F.R.D. 239
(Cite as: 279 F.R.D. 239)

▷

United States District Court,
S.D. New York.
DIGITAL SIN, INC., Plaintiff,
v.
John DOES 1–176, Defendants.

No. 12–CV–00126 (AJN).
Jan. 30, 2012.

**Background:** Copyright owner brought action against John Doe users of Internet peer-to-peer (P2P) file-sharing program, alleging that users had downloaded and illegally distributed its copyrighted adult film. After Internet protocol (IP) addresses of 176 John Doe users had been obtained, plaintiff filed ex parte motion for expedited discovery to obtain mailing addresses and locations of the users from internet service provider (ISP).

**Holdings:** The District Court, Alison J. Nathan, J., held that:
(1) good cause existed for expedited discovery, and
(2) defendants' actions constituted a series of transactions or occurrences for purposes of joinder.

Ordered accordingly.

West Headnotes

**[1] Federal Civil Procedure 170A ⟡1261**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1261 k. In general. Most Cited Cases

Courts apply a flexible standard of reasonableness and good cause in determining whether to grant a party's expedited discovery request. Fed.Rules Civ.Proc.Rule 26(d), 28 U.S.C.A.

**[2] Federal Civil Procedure 170A ⟡1261**

170A Federal Civil Procedure
    170AX Depositions and Discovery
        170AX(A) In General
            170Ak1261 k. In general. Most Cited Cases

District court applies particularly careful scrutiny when a plaintiff seeks expedited discovery on an ex parte basis. Fed.Rules Civ.Proc.Rule 26(d), 28 U.S.C.A.

**[3] Copyrights and Intellectual Property 99 ⟡84**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k84 k. Discovery. Most Cited Cases

Good cause existed for granting ex parte request for expedited discovery in copyright infringement suit brought by owner of adult film against John Doe users of Internet peer-to-peer (P2P) file-sharing program, where owner had alleged a prima facie case of infringement, the Internet protocol (IP) addresses of 176 John Doe users had already been obtained, owner had no way, absent subpoena, of determining identities, mailing addresses, or location of alleged infringers for purposes of service of process, and expedited discovery was necessary to prevent the requested data from being lost forever as part of routine deletions by in-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

279 F.R.D. 239
**(Cite as: 279 F.R.D. 239)**

ternet service providers (ISPs) in possession of the information. Fed.Rules Civ.Proc.Rule 26(d), 45, 28 U.S.C.A.; Communications Act of 1934, §§ 602(5), 631(c), 47 U.S.C.A. §§ 522(5), 551(c).

**[4] Federal Civil Procedure 170A ⬥81**

170A Federal Civil Procedure
    170AI In General
        170AI(E) Joinder of Claims and Remedies
            170Ak81 k. In general. Most Cited Cases

**Federal Civil Procedure 170A ⬥241**

170A Federal Civil Procedure
    170AII Parties
        170AII(F) Permissive Joinder
            170AII(F)1 In General
                170Ak241 k. In general. Most Cited Cases

Under federal rules, joinder of claims, parties, and remedies is strongly encouraged; impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties. Fed.Rules Civ.Proc.Rule 20(a)(2), 28 U.S.C.A.

**[5] Copyrights and Intellectual Property 99 ⬥81**

99 Copyrights and Intellectual Property
    99I Copyrights
        99I(J) Infringement
            99I(J)2 Remedies
                99k72 Actions for Infringement
                    99k81 k. Parties. Most Cited Cases

Actions of defendants constituted a "series of transactions or occurrences" for purposes of joinder in copyright infringement suit brought by owner of adult film against 174 John Doe Internet users, where defendants, through swarm technology, had allegedly utilized peer-to-peer (P2P) file-sharing program to download and illegally distribute copyrighted movie; defendants, who were all allegedly located in state of New York, were trading the exact same file as part of same swarm within same six-week period of time. Fed.Rules Civ.Proc.Rule 20(a), 28 U.S.C.A.

**\*240 Mike Meier, Fairfax, VA, for Plaintiff.**

*OPINION AND ORDER PERMITTING LIMITED EXPEDITED DISCOVERY PURSUANT TO A PROTECTIVE ORDER*
ALISON J. NATHAN, District Judge:

Plaintiff Digital Sin, Inc. ("Digital Sin") filed an *ex parte* motion seeking permission to take expedited discovery from third-party Internet Service Providers ("ISPs") to identify the names, physical addresses, e-mail addresses, and Media Access Control ("MAC") addresses associated with identified Internet Protocol ("IP") addresses that Digital Sin alleges were used to illegally share its copyrighted motion picture in violation of 17 U.S.C. § 101 *et seq.*

Litigation of this nature, involving *ex parte* applications for expedited discovery of identifying information pertaining to hundreds or thousands of John Doe defendants, is proliferating in this district and throughout the country. Some courts, faced with these *ex parte* applications for expedited discovery, have expressed serious concerns about the nature of the litigation and have denied the *ex parte* applications or severed all but one of the Doe defendants.[FN1] Other courts have granted the applications and issued orders allowing the expedited discovery to proceed in order to identify the Doe defendants.[FN2]

> FN1. *See, e.g., SBO Pictures, Inc. v. Does 1–3036,* 2011 WL 6002620 (N.D.Cal. Nov. 30, 2011) (severing and permitting expedited discovery as to the identity of one Doe defendant pursuant to a protective order); *Digital Sin, Inc. v. Does 1–5698,* 2011 WL

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

279 F.R.D. 239
(Cite as: 279 F.R.D. 239)

5362068 (N.D.Cal. Nov. 4, 2011) (same): *Hard Drive Prods., Inc. v. Does 1–30*, 2011 WL 4915551 (E.D.Va. Oct. 17, 2011) (severing and ordering plaintiff's counsel to show cause as to why materials gained by Rule 45 subpoenas issued in previous, analogous cases should not be "suppressed"); *DigiProtect USA Corp. v. Does 1–240*, 2011 WL 4444666, at *24 (S.D.N.Y. Sept. 26, 2011) (finding joinder improper based on facts pleaded in initial Complaint).

FN2. *See, e.g., Call of the Wild Movie, LLC v. Does 1–1,062*, 770 F.Supp.2d 332 (D.D.C.2011); *K–Beech, Inc. v. Does 1–57*, 2011 WL 5597303 (M.D.Fla. Nov. 1, 2011); *MCGIP, LLC v. Does 1–18*, 2011 WL 2181620 (N.D.Cal. June 2, 2011); *Voltage Pictures, LLC v. Does 1–5,000*, 818 F.Supp.2d 28 (D.D.C.2011); *First Time Videos, LLC v. Does 1–76*, 276 F.R.D. 254 (N.D.Ill.2011); *see also* Order Permitting Expedited Discovery, *Media Prods., Inc. v. Does 159*, 12–CV–125 (S.D.N.Y. Jan. 11, 2012); Order Permitting Expedited Discovery, *Next Phase Distrib., Inc. v. Does 1138*, 11–CV–9706 (S.D.N.Y. Jan. 6, 2012); Order Permitting Expedited Discovery, *Patrick Collins, Inc. v. Does 1115*, 11–CV–9705 (S.D.N.Y. Jan. 5, 2012).

This Court has serious reservations about the *ex parte* application and the proposed order submitted by the Plaintiff. Nevertheless, for the reasons discussed below, the Court finds that good cause exists for Digital Sin to engage in cabined expedited discovery with respect to the IP addresses listed in Exhibit A to its Complaint (Docket # 1), but only pursuant to a protective order as outlined in Section III.

**I. *Background***

Digital Sin is a California company that produced a motion picture titled "My Little Panties # 2" ("Mo-

tion Picture"). Digital Sin alleges the following facts in its Complaint, memorandum of law and accompanying declaration. The Court, while making no findings, accepts these facts as true for purposes of this ruling.

**\*241** Digital Sin contracted "Copyright Enforcement Group" ("CEG"), a company that discovers copyright infringements and arranges for enforcement (Nicolini Dec. ¶ 3). CEG determined that a number of individuals were sharing the Motion Picture using an internet protocol called BitTorrent. (Comp. ¶¶ 12; Nicolini Dec. ¶¶ 917). BitTorrent software allows users to join together in a "peer-to-peer" network to download and make available for download large files, (Nicolini Dec. ¶¶ 5–7). The individual downloaders might only download small pieces of the file at a time and it may take several days or even weeks for an individual to download an entire file. (1/17/12 Tr. at 10). While downloading, the downloader is also required to share with others the pieces of the file that she or he has already successfully downloaded. (*Id.* at 13–14). This group of interacting users is referred to as a "swarm." (Nicolini Dec. ¶ 6).

Individuals who participate in a swarm expose the IP address they are using when downloading or sharing a file. (Comp. ¶ 12). As a result, CEG was able to obtain 176 IP addresses that were being used to share and download the same Motion Picture file without permission. (*Id.*). Publicly available "reverse IP" checks confirmed that all of these addresses very likely belong to individuals located in New York. (Comp. ¶ 14).[FN3]

FN3. This factual assertion by Plaintiff as to the location of the Doe defendants at the time of the alleged infringement is critical for establishing that personal jurisdiction is proper in this Court *See Digiprotect USA Corp. v. Does 1–266*, 2011 WL 1466073, at *34 (S.D.N.Y. April 13, 2011); *see also Digi-Protect USA Corp. v. Does 1–240*, 2011 WL

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

279 F.R.D. 239
**(Cite as: 279 F.R.D. 239)**

4444666, at \*24 (S.D.N.Y. Sept. 26, 2011). Should the ISPs or any Doe defendants make a showing that undermines this factual assertion, the Court will of course reassess the issue of personal jurisdiction.

Immediately after initiating its complaint against the 176 John Doe defendants, identifying them by their IP addresses, Digital Sin filed an *ex parte* motion for expedited discovery seeking access to the names and addresses of the individuals affiliated with the IP addresses as found in the ISPs' account records. Plaintiff alleges that this account information may be routinely erased by ISPs and therefore lost forever if Plaintiff's motion is not granted on an expedited basis. (Nicolini Dec., ¶ 27). In response to Plaintiff's *ex parte* motion, the Court ordered an *ex parte* conference call with Plaintiff's counsel on January 17, 2012. Plaintiff's counsel was asked to address the Court's concerns regarding privacy, joinder, and the potential for misidentification of defendants.

**II. *Discussion***

**A. *Good Cause Standard***

[1][2] Though parties generally may not initiate discovery prior to satisfying the meet and confer requirement of Fed.R.Civ.P. 26(f), courts may in some instances order earlier discovery. Fed.R.Civ.P. 26(d). Courts in this district have applied a "flexible standard of reasonableness and good cause" in determining whether to grant a party's expedited discovery request. *Ayyash v. Bank Al–Madina,* 233 F.R.D. 325, 326–27 (S.D.N.Y.2005) (Lynch, J.); *see also Stern v. Cosby,* 246 F.R.D. 453, 457 (S.D.N.Y.2007) (Chin, J.); *accord* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2046.1 (3d ed. 2011) ("Although [Rule 26(d) ] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard."). Courts have also applied "particularly careful scruti-

ny" when plaintiffs seek expedited discovery on an *ex parte* basis. *Ayyash,* 233 F.R.D. at 327.

[3] Here, Plaintiff has alleged a prima facie case of infringement sufficient for purposes of this motion and appears to have no other way of obtaining the identities of the alleged infringers. Absent a Court-ordered subpoena, many of the ISPs, who qualify as "cable operators" for purposes of 47 U.S.C. § 522(5), are effectively prohibited by 47 U.S.C. § 551(c) from disclosing the identities of the putative defendants to Plaintiff. Indeed, in all of the opinions and rulings in similar cases around the country, the Court has found no indication that the plaintiffs have any reasonable alternative to these subpoenas to obtain the identities of the alleged \*242 infringers. Thus, without granting Plaintiff's request, the defendants cannot be identified or served and the litigation cannot proceed. Additionally, expedited discovery is necessary to prevent the requested data from being lost forever as part of routine deletions by the ISPs.

Under these circumstances, the Court finds that Plaintiff has established good cause to issue a Rule 45 subpoena to the ISPs listed in Exhibit A to its Complaint (Docket # 1) to obtain the name, physical address, e-mail address, and MAC address associated with each defendant IP address subject to the protective order outlined in Sections II.B and III below.

**B. *Protective Order***

District courts may for good cause issue a protective order to spare parties "annoyance, embarrassment, oppression, or undue burden." Fed.R.Civ.P. 26(c)(1). Plaintiff's counsel stated that he will not object to allowing defendants to litigate the matter anonymously, nor will he object to language in an order informing defendants of their ability to do so. (1/17/12 Tr. at 17).

The Court is concerned about the possibility that many of the names and addresses produced in re-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

279 F.R.D. 239
(Cite as: 279 F.R.D. 239)

sponse to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned *over* by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often the "teenaged son ... or the boyfriend if it's a lady." (1/17/12 Tr. at 16). Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks. *See, e.g.*, Mot. to Quash Verizon Subpoena, 11–CV–7564 (S.D.N.Y. Jan. 6, 2012) (Docket # 11) (claiming that a Doe defendant did not know how to use a computer and implying that the perpetrator was a neighbor in his condominium). This risk of false positives gives rise to "the potential for coercing unjust settlements from innocent defendants" such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2," *SBO Pictures, Inc. v. Does 1–3036*, 2011 WL 6002620, at *4 (N.D.Cal. Nov. 30, 2011).

One court in Virginia recently described this dynamic as follows:

> According to some of the defendants, [following the Court's grant of expedited discovery compelling the ISPs to turn over the names associated with 85 IP addresses,] the plaintiffs then contacted the John Does, alerting them to this lawsuit and their potential liability. Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation ....

> This course of conduct indicates that the plaintiffs have used the offices of the Court as an inexpensive means to gain the Doe defendants' personal information and coerce payment from them. The plaintiffs seemingly have no interest in actually litigating the cases, but rather **simply have used the Court and its subpoena powers to obtain sufficient information to shake down the John Does.**

*K–Beech, Inc. v. Does 1–85*, 11–CV–00469 at 4 (E.D.Va. Oct. 5, 2011) (Docket # 9) (severing Doe defendants and issuing an Order To Show Cause demanding that attorney for plaintiff explain why Rule 11 sanctions were inappropriate) (emphasis added and internal citations omitted). Indeed Plaintiff's counsel also bluntly conceded that there are "horror stories out there, what some law firms have done. For example, they have called and harassed the John Doe defendants." (1/17/12 Tr. at 20). The Court appreciates counsel's candor and notes that Plaintiff's counsel appropriately does not request that the ISPs turn over the John Does' telephone numbers.

Accordingly, the Court **will issue a protective order** to the extent that any information regarding the Doe defendants released to Digital Sin by the ISPs shall be treated as confidential for a limited duration. This Order is adapted from the one issued by Magistrate Judge Beeler in *243Digital Sin, Inc. v. Does 1–5698*, 2011 WL 5362068 (N.D.Cal. Nov. 4, 2011) and outlined in Section III below. At base, the protective order allows Doe defendants and the ISPs to be heard in this matter before the identifying information is revealed to Plaintiff.

### C. *Joinder of 176 Doe Defendants Pursuant to Rule 20(a)*

[4] The Court finally turns to the difficult question of whether the 176 Doe defendants are properly joined into this single action pursuant to Rule 20(a)(2). Parties may be joined when (1) the defendants are jointly and severally liable under the claims asserted by the plaintiff, or (2) the claims for relief by the plaintiff arises out of the same transaction, occurrence, or series of transactions or occurrences. Fed.R.Civ.P. 20(a)(2). Additionally, there must be common questions of law or fact. *Id.* Under the Federal Rules of Civil Procedure, "the impulse is toward entertaining

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

279 F.R.D. 239
**(Cite as: 279 F.R.D. 239)**

the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); "The purpose of the rule is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1652 (3d ed. 2011). "District Courts have broad discretion to determine whether or not to grant a motion to sever." *In re WorldCom, Inc. Sec. Litig.,* 2003 WL 1563412, at *3 (S.D.N.Y. March 25, 2003) (Cote, J.).

Though Plaintiff did not cite or distinguish them in its *ex parte* motion papers, the Court has become aware of several analogous copyright infringement cases from across the country finding it improper under Fed.R.Civ.P. 20(a) to join into one action hundreds (or in some cases thousands) of Doe defendants.[FN4] At the same time, several courts have drawn the opposite conclusion, finding joinder to be proper under similar circumstances.[FN5]

FN4. *See, e.g., supra* note 1.

FN5. *See, e.g., Call of the Wild Movie, LLC v. Does 1–1,062,* 770 F.Supp.2d 332 (D.D.C.2011); *K–Beech, Inc. v. Does 1–57,* 2011 WL 5597303 (M.D.Fla. Nov. 1, 2011); *MCGIP, LLC v. Does 1–18,* 2011 WL 2181620 (N.D.Cal. June 2, 2011); *Voltage Pictures, LLC v. Does 1–5,000,* 818 F.Supp.2d 28 (D.D.C.2011); *First Time Videos, LLC v. Does 1–76,* 276 F.R.D. 254 (N.D.Ill.2011).

During the January 17, 2011, *ex parte* conference, Plaintiff argued that the cases finding joinder of so many Doe defendants improper in copyright infringement cases were distinguishable because they involved substantially more defendants from different geographic areas lumped together into one action, as well as users accessing the same copyrighted work though different files available from different swarms. (1/17/12 Tr. at 58, 1011). In the present action, Plaintiff claims to have carefully selected only a small group of New York-based defendants who traded the exact same file, identifiable by a hash value, as part of the same swarm within a six-week period. (*Id.*).

Yet Magistrate Judge Spero in the Northern District of California, assessing a situation identical to the present case where joined defendants were part of the same BitTorrent "swarm," wrote:

Under the BitTorrent Protocol, it is not necessary that each of the Does 1–188 participated in or contributed to the downloading of each other's copies of the work at issue—or even participated in or contributed to the downloading by any of the Does 1188. Any 'pieces' of the work copied or uploaded by any individual Doe may have gone to any other Doe [but also] *to any of the potentially thousands who participated in a given swarm.*

*Hard Drive Prods., Inc. v. Does 1–188,* 809 F.Supp.2d 1150, 1163 (N.D.Cal.2011) (emphasis in original). Magistrate Judge Spero concluded that this pattern of usage did not amount to the same transaction, occurrence, or series of transactions or occurrences, for purposes of Rule 20. *Id.*

Judge Crotty came to a different conclusion in *DigiProtect USA Corp. v. Does 1–240,* 2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011). In *DigiProtect,* the plaintiff alleged that Doe defendants across the country traded the same copyrighted work, but as parts of different swarms, utilizing different file sharing *244 software and networks. *Digiprotect* Complaint at ¶¶ 9–10, No. 10–CV–8760 (S.D.N.Y. Nov. 19, 2010) (Docket # 1). Although he dismissed the case on jurisdictional grounds, Judge Crotty also instructed that any re-pleading "must be based on specific allegations

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

279 F.R.D. 239
(Cite as: 279 F.R.D. 239)

connecting the[ ] defendants to the same specific swarming transaction, or series of transactions, to support their joinder." *DigiProtect,* 2011 WL 4444666, at *3 n. 3.

[5] This Court is persuaded to adopt the standard articulated by Judge Crotty in *DigiProtect.* In particular, it is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or "swarm" of connectivity designed to illegally copy and share the exact same copyrighted file—could *not* constitute a "series of transactions or occurrences" for purposes of Rule 20(a). In the present case, Plaintiff has satisfied the *DigiProtect* standard by alleging that the Doe defendants were trading the exact same file as part of the same swarm. As a result, the Court declines to sever the case at this time. *See MCGIP, LLC v. Does 1–18,* 2011 WL 2181620, at *1 (N.D.Cal. June 2, 2011) ("[A]ssertion of improper joinder may be meritorious but, at this stage in the litigation, when discovery is underway only to learn identifying facts necessary to permit service on Doe defendants, joinder of unknown parties identified only by IP addresses is proper ....") (internal citations and quotation marks omitted).[FN6]

> FN6. The Court is also cognizant of other considerations that have caused some courts not to sever, including that severance at this stage in the litigation would introduce "significant obstacles in [plaintiffs'] efforts to protect their copyrights from illegal file-sharers and this would only needlessly delay their cases." *Call of the Wild Movie, LLC v. Does 1–1,062,* 770 F.Supp.2d 332, 344 (D.D.C.2011). Furthermore, courts have opined that requiring aggrieved parties to file hundreds or even thousands of separate copyright infringement actions would neither be cost efficient for the plaintiffs nor promote convenience or judicial economy for the courts. *See, e.g., id.* at 344–45.

The Court remains open, however, to reconsidering this issue at a later date. Should John Doe defendants come forward to defend themselves against the allegations in the Complaint—potentially raising differing, conflicting defenses—the Court will remain open to any arguments against joinder of the parties that those defendants wish to make at that time. The Court will also remain open to hearing arguments regarding joinder or any other matters from the ISPs, should they move to quash Digital Sin's Rule 45 subpoena. The Court simply holds that for purposes of carrying out the initial, necessary discovery in an efficient manner, the claims may remain joined together at this time.

**III. *Conclusion***

IT IS HEREBY ORDERED that Digital Sin may immediately serve a Rule 45 subpoena on the ISPs listed in Exhibit A to the Complaint to obtain information to identify Does 1–176, specifically her or his name, address, MAC address, and email address. The subpoena shall have a copy of this order attached,

IT IS FURTHER ORDERED that the ISP will have *60 days* from the date of service of the Rule 45 subpoena upon them to serve Does 1–176 with a copy of the subpoena and a copy of this order. The ISPs may serve Doe 1–176 using any reasonable means, including written notice sent to her or his last known address, transmitted either by first-class mail or via overnight service.

IT IS FURTHER ORDERED that Does 1–176 shall have *60 days* from the date of service of the Rule 45 subpoena upon her or him to file any motions with this Court contesting the subpoena (including a motion to quash or modify the subpoena), as well as any request to litigate the subpoena anonymously. **The ISPs may *not* turn over the Doe defendants' identifying information to Digital Sin before the expiration of this 60–day period. Addi-**

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

279 F.R.D. 239
(Cite as: 279 F.R.D. 239)

tionally, if a defendant or ISP files a motion to quash the subpoena, the ISPs may not turn over any information to Digital Sin until the issues have been addressed and the Court issues an Order instructing the ISPs to resume in turning over the requested discovery.

**\*245 IT IS FURTHER ORDERED** that if that 60–day period lapses without a Doe defendant or ISP contesting the subpoena, the ISPs shall have *10 days* to produce the information responsive to the subpoena to Plaintiff, A Doe defendant or ISP who moves to quash or modify the subpoena, or to proceed anonymously, shall at the same time as her or his filing also notify all ISPs so that the ISPs are on notice not to release any of the Doe defendants' contact information to Plaintiff until the Court rules on any such motions.

**IT IS FURTHER ORDERED** that the subpoenaed entity shall preserve any subpoenaed information pending the resolution of any timely-filed motion to quash.

**IT IS FURTHER ORDERED** that an ISP that receives a subpoena pursuant to this order shall confer with Digital Sin and shall not assess any charge in advance of providing the information requested in the subpoena. An ISP that receives a subpoena and elects to charge for the costs of production shall provide a billing summary and cost report to Plaintiff.

**IT IS FURTHER ORDERED** that Digital Sin shall serve a copy of this Opinion and Order along with any subpoenas issued pursuant to this order to the listed ISPs.

**IT IS FURTHER ORDERED** that any information ultimately disclosed to Digital Sin in response to a Rule 45 subpoena may be used by Digital Sin solely for the purpose of protecting Digital Sin's rights as set forth in its complaint.

SO ORDERED:

S.D.N.Y.,2012.
Digital Sin, Inc. v. Does 1-176
279 F.R.D. 239

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 3

Westlaw.

Not Reported in F.Supp.2d, 2014 WL 656786 (N.D.Ill.)
(Cite as: 2014 WL 656786 (N.D.Ill.))

C

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
TCYK, LLC, Plaintiff,
v.
Does 1–44, Defendants.

Case No. 13–cv–3825
1:13-cv-03825Filed February 20, 2014

Michael A. Hierl, Todd Sheldon Parkhurst, Hughes
Socol Piers Resnick & Dym Ltd., Chicago, IL, for
Plaintiff.

Alex Ogoke, Cardinal Legal Group, P.C., Kristen
Elizabeth O'Neill, Levin Ginsburg, Chicago, IL, for
Defendants.

### MEMORANDUM OPINION AND ORDER
Robert M. Dow, Jr., United States District Judge

*1 Before the Court are four separate motions to
sever defendants for improper joinder and/or quash
third-party subpoenas, filed by two unspecified pro se
John Does [18, 19], John Doe 11[21], and Defendant
Babafemi George [24]. For the reasons stated below,
the motions filed by the two John Does and Babafemi
George [18, 19, and 24] are denied. John Doe 11's
motion [21] is denied as moot, because Plaintiff has
voluntarily dismissed John Doe 11 from the case
without prejudice. See [30 and 41].

### I. Background

On May 23, 2013, Plaintiff TCYK, LLC
("TCYK"), a motion picture producer and developer,
brought this copyright infringement suit against for-
ty-four John Does. TCYK alleges that each Defendant
illegally downloaded and/or uploaded a copy of

TCYK's motion picture "The Company You Keep,"
starring Robert Redford and Susan Sarandon, using
computer software known as BitTorrent. BitTorrent is
a software protocol that facilitates internet filesharing.
Compared with the standard peer-to-peer file-sharing
protocol in which one user downloads a file directly
from another, BitTorrent allows users to download
different small pieces of a file simultaneously from
many users. Consequently, BitTorrent enables
file-sharing at relative high speeds.

As Judge Tharp explained:

To share information using BitTorrent, an initial
file-provider (the "seeder") elects to share an initial
file, called a "seed," with a torrent network. The file
to be distributed is divided into segments called
"pieces." Other users ("peers") intentionally con-
nect to the seed file to download it. As each peer
receives a new piece of the file, the peer also im-
mediately becomes a source of that piece for other
peers, relieving the original seeder from having to
send that piece to every peer requesting a copy. This
is the key difference between BitTorrent and earlier
peer-to-peer file sharing systems: "BitTorrent
makes file sharing a cooperative endeavor."

TCYK, LLC v. Does 1–87, 2013 WL 3465186, at
*1 (N.D.Ill. July 10, 2013) (quoting The Case Against
Combating BitTorrent Piracy through Mass John Doe
Copyright Infringement Lawsuits, 111 Mich. L.Rev.
283, 290 (2012)).

Each user who downloads the seed file becomes a
potential source of a piece of that file for peers who
seek to download it subsequently. As more users
download the file, thereby increasing the number of
sources from which potential downloaders can take
bits of that file, downloading speeds increase for fu-
ture users. The users who download and upload the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2014 WL 656786 (N.D.Ill.)
(Cite as: 2014 WL 656786 (N.D.Ill.))

same seed file are called, collectively, a "swarm." Once a user who seeks to download a file connects to (effectively joining) an existing swarm, he continuously takes pieces of the seed file from the other users in the swarm until he has downloaded a completed file. Those sources are, by definition, in the swarm because they have already downloaded the seed file. And that new swarm member who joined the swarm to download the file is now also a potential source of file bits for future downloaders who join the swarm. Swarm members are only a *potential* source, because users must be logged in to the BitTorrent software to share files. Therefore, swarm members must be logged in to the BitTorrent protocol simultaneously to be in the same swarm at the same time. See Compl. ¶ 4; see also *Malibu Media, LLC v. Reynolds,* 2013 WL 870618, at *2 (N.D.Ill. Mar. 7, 2013).

*2 TCYK alleges that John Does 1–44 participated in the same swarm to download and/or upload an identical version (*i.e.,* the same seed file) of The Company You Keep. Plaintiff does not know the true names of the Defendants at this time. Instead, Plaintiff knows the Internet Protocol ("IP") address assigned to each Defendant by his or her Internet Service Provider ("ISP"). Exhibit B to Plaintiff's complaint is a spreadsheet that, according to Plaintiff, captures the IP addresses, ISPs, and geographic locations of the forty-four John Doe Defendants, as well as the date and time that each IP address downloaded the common seed file. Plaintiff believes that discovery will lead to the true names of the Defendants, at which time Plaintiff intends to amend its complaint with that information.

To that end, Plaintiff has issued third-party subpoenas to the ISPs identified on Exhibit B, seeking the identities and personal information associated with the corresponding IP addresses. Several Defendants, having been informed of the subpoena (and this lawsuit) by their ISP, now seek to quash the subpoena and/or sever all defendants for improper joinder. More specifically:

• An unspecified John Doe argues [18] that Plaintiff has improperly joined the forty-four Defendants because Plaintiff does not allege that they participated in the same swarm *at the same time,* such that Federal Rule of Civil Procedure 20(a)(2) requires the Court to dismiss forty-three of them from the case.

• Another unspecified John Doe makes the same argument [19] and, in the alternative, argues that Plaintiff's third-party subpoena to his ISP provider should be quashed because the person to whom the IP address is assigned may not be the only person who accessed the internet through that address.

• Babafemi George, who purports to be a Defendant but does not identify himself by John Doe number or IP address, seeks [24] to quash Plaintiff's subpoena, because—seemingly confused as to whom the subpoena is directed—he is not in possession of the requested documents and has no knowledge of the alleged infringement.

## II. Analysis

### A. Motion to Sever for Improper Joinder

Rule 20 of the Federal Rules of Civil Procedure governs permissive joinder of defendants. It states: "Persons ... may be joined as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). John Doe Defendants argue that Plaintiff has failed to allege that the forty-four Defendants in this case engaged in either the same transaction or the same series of transactions. Although Plaintiff alleges that Defendants participated in the same swarm (*i.e.,* that they downloaded,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2014 WL 656786 (N.D.Ill.)
(Cite as: 2014 WL 656786 (N.D.Ill.))

and therefore may also have distributed, the same seed file), Plaintiff acknowledges that Defendants may not have participated in the swarm *at the same time.* See Compl. ¶ 4 (noting that a swarm member is only a source of the file for future downloaders if the swarm member is online at the time that the subsequent peer downloads the file). Plaintiff argues, however, that Defendants' actions comprise the same series of transactions or occurrences for the purpose of Rule 20, by virtue of the cooperative and interdependent nature of the BitTorrent platform.

Exhibit B to TCYK's complaint sets out the exact dates and times at which the forty-four Defendants allegedly downloaded the movie. The forty-four downloads took place over the span of thirty days, from April 14, 2013 to May 14, 2013. Defendants argue that this underscores the unrelatedness of their actions and the improbability that all forty-four participated in the swarm simultaneously. Defendants argue that, absent an allegation that these forty-four users shared file bits with each other, they cannot be considered to have participated in the same transaction. And absent an allegation that they were necessary links in the file's chain of custody, they cannot be considered to have participated in the same *series of* transactions. Defendants contend that their only connection to each other is that they each allegedly downloaded the same seed file, and that they therefore did not engage in the "same transaction, occurrence, or series of transactions or occurrences" within the meaning Rule 20. Implicit in their argument is that—given the likelihood that this swarm consisted of far more than the forty-four Defendants named in this suit (sued here only because of their physical location in this district)—there is a possibility that not one user among the forty-four Defendants shared a single file bit with another user in this group.

*3 There is a split of authority in this district over the appropriateness of joining defendants who are alleged to have participated in the same BitTorrent swarm. *Compare, e.g., Reynolds,* 2013 WL 870618 at

* 2 (finding joinder improper because "[w]here a swarm continues to exist for an extended period of time, it is improbable that defendants entering a swarm weeks or months apart will actually exchange pieces of data."), *with reFX Audio Software, Inc. v. Does 1–111,* 2013 WL 3867656, at *3 (N.D.Ill. July 23, 2013) ("[T]he argument that joinder is appropriate only if defendants participated in the same swarm at the same time ... ignores the fact that permissive joinder under Rule 20(a) does not require that defendants act in concert with each other, nor does it have as a precondition that there be a temporal distance or temporal overlap.") (internal citations and quotations omitted). The debate centers on whether participation in a swarm constitutes the requisite "series of transactions or occurrences" contemplated by Rule 20, in light of the interdependent quality about BitTorrent file sharing. Rule 20 does not define "series of transactions or occurrences," but there is momentum building in this district in favor of the Federal Circuit's recent articulation of the phrase's meaning. See *Zambezia Film PTY, LTD. v. Does 1–65,* 2013 WL 4600385, at *4 (N.D.Ill. Aug. 29, 2013); *reFX Audio Software,* 2013 WL 3867656 at *3; *Malibu Media, LLC v. John Does 1–6,* 291 F.R.D. 191, 199–200 (N.D.Ill. May 17, 2013). To date, the Federal Circuit is the only federal court of appeals that has addressed the issue. Tracing the rule's history, past application, and interpretation of the phrase "transaction or occurrence" in other contexts, the Federal Circuit noted that "the mere fact that a case involves independent actors as defendants does not necessarily bring the case outside the scope of Rule 20." See *Malibu Media,* 291 F.R.D. at 200 (quoting *In re EMC Corp.,* 677 F.3d 1351, 1358 (Fed. Cir. 2012)). Citing both the Wright and Miller treatise and Supreme Court case law, the Federal Circuit concluded that "independent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action." *Id.* at 1356. "The flexibility of this standard enables federal courts to promote judicial economy by permitting all reasonably related claims for relief by or

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2014 WL 656786 (N.D.Ill.)
(Cite as: 2014 WL 656786 (N.D.Ill.))

against different parties to be tried in a single proceeding under the provisions of Rule 20." *Malibu Media,* 291 F.R.D. at 201 (quoting Charles Alan Wright, *et al., Federal Practice and Procedure* § 1652 (3d ed.1998).

The Court acknowledges the strong arguments on both sides of the issue, but agrees with the weight of the authority and growing trend in this district that participation in a swarm qualifies as engaging in a "series of transactions or occurrences" for the purpose of Rule 20. As other judges in this district have concluded, a user who connects to a swarm joins a "cooperative endeavor." *TCYK, LLC,* 2013 WL 3465186 at *1. Regardless of whether these forty-four defendants contemporaneously participated in the swarm, shared bits of the seed file with each other, or even shared bits of the file at all, each joined the swarm knowing that his participation increased the swarm's ability to disseminate a common seed file quickly and efficiently. The Court therefore concludes that a logical relationship exists among the actions of the Defendants such that joinder is proper. Moreover, joinder here serves the interest of judicial economy, which underlies Rule 20. Wright *et al., supra,* § 1653. "At the pleading stage, it is more efficient to join Doe Defendants in one action than to require separate lawsuits. Individual litigations, at least at the early stages of litigation, would be needlessly expensive for both [Plaintiff] and the courts and would frustrate the judicial efficiency policies at the heart of Rule 20." *Malibu Media,* 291 F.R.D. at 204–05. Accordingly, at this stage of the ligation, the Court denies Defendants' motions to sever for improper joinder.

**B. Motion to Quash Subpoena**

Although none of the Defendants cite to a specific rule or rely on any authority as the basis for their motions challenging the validity of Plaintiff's subpoenas to Defendants' ISPs, motions to quash are governed by Rule 45 of the Federal Rules of Civil Procedure. Rule 45 provides that a court must quash or modify a subpoena that (1) fails to allow a reasonable time to comply; (2) requires a person who is neither a party nor a party's officer to travel more than 100 miles; (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (4) subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(i)-(iv). The party seeking to quash the subpoena bears the burden of demonstrating that it falls within one of the Rule 45 categories. *reFX Audio Software,* 2013 WL 3867656 at *3; *Pacific Century Int'l, Ltd. v. Does 1–37,* 282 F.R.D. 189, 193 (N.D.Ill.2012). Ruling on motions to quash lies within the sound discretion of the district court. See *Griffin v. Foley,* 542 F.3d 209, 223 (7th Cir. 2008).

*4 One of the unspecified John Doe Defendants argues that the subpoenas should be quashed, because the person to whom an IP address is assigned may not be the person who actually downloaded TCYK's movie. According to Defendant, an IP address is often associated with a wireless router, not a specific computer. And the name associated with a particular IP address is that of the person who pays the internet bill. Consequently, various people (family members, roommates, opportunistic neighbors, patrons at an internet café) may be using the internet under a single IP address at any given time. Defendant argues that the subpoenas should be quashed on account of the uncertainty this creates and the potential unfairness to an innocent IP addressee.

Construing this pro se Defendant's motion liberally, he seems to argue that the subpoenas impose an undue burden under Rule 45. To the extent that Defendant attempt to advance this argument, he first needs standing to do so. "A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." *Zambezia Film PTY,* 2013 WL 4600385 at *2 (quoting *United States v. Raineri,* 670 F.2d 702, 712 (7th Cir. 1982)). Here, we need not decide whether Defendant has standing to challenge the subpoena, because he has not demonstrated that the subpoena imposes an undue burden on him. The Court agrees

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2014 WL 656786 (N.D.Ill.)
(Cite as: 2014 WL 656786 (N.D.Ill.))

with the position consistently taken by the other Judges in this district—namely, that a subpoena directed at an ISP does not impose an undue burden on a defendant, because it does not require him to do anything. See *reFX Audio Software*, 2013 WL 3867656 at *3; *Reynolds*, 2013 WL 870618 at * 2; *Sunlust Pictures, LLC v. Does 1–75*, 2012 WL 3717768, at *2 (N.D.Ill. Aug. 27, 2012).

To the extent that Defendant is arguing that the information the subpoenas seek is not relevant, and thus prohibited by Rule 26(b)(1), the Court also denies the motion to quash. "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition and location of any documents or tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.* Here, the information sought by the subpoenas is highly relevant to TCYK's claims. Even if the person associated with the IP address is not the person who allegedly downloaded The Company You Keep, obtaining the IP addressee's information is the logical first step in identifying the correct party. Moreover, without the subpoenas TCYK would have no way of prosecuting its copyright infringement claims. For these same reasons, the Court found good cause to grant Plaintiff's request to serve these third-party subpoenas prior to a Rule 26(f) conference. See Court Order Granting Pl. Mot. for Leave to Take Discovery, June 27, 2013[12]. Accordingly, and consistent with the approach taken by the other judges in this district, the Court denies Defendant's motion to quash, to the extent it argues that the information sought is irrelevant. See *e.g., Zambezia Film PTY*, 2013 WL 4600385 at *2; *reFX Audio Software*, 2013 WL 3867656 at *2; *Malibu Media*, 291 F.R.D. at 197.

Finally, the Court denies Defendants' motions to quash to the extent that Defendants contend that they are not the persons who downloaded The Company You Keep at the respective IP address associated with their name. See *e.g., Def.* Babafemi George Mot. to Quash [24] (noting that he is "unable to provide the plaintiff with the requested documents because the defendant was not at home during the time and date in question and had no knowledge of the alleged infringement"). That is a general denial of liability, which is not an appropriate basis for quashing a subpoena. See *Purzel Video GmbH v. Does 1–108*, 2013 WL 6797364, at *4 (Dec. 19, 2013); *Malibu Media*, 291 F.R.D. at 197; *First Time Videos, LLC v. Does 1–76*, 276 F.R.D. 254, 256 (N.D.Ill.2011) (collecting cases). Accordingly, Defendants' motions to quash are denied.

**III. Conclusion**

*5 For the reasons stated above, Defendants' motions to sever for improper joinder and/or quash third-party subpoenas, filed by two unspecified pro se John Does and Defendant Babafemi George [18, 19, and 24] are denied. John Doe 11's motion [21] is denied as moot, because Plaintiff has voluntarily dismissed John Doe 11 from the case without prejudice. See [30 and 41].

N.D.Ill., 2014
TCYK, LLC v. Does 1-44
Not Reported in F.Supp.2d, 2014 WL 656786 (N.D.Ill.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DALLAS BUYERS CLUB, LLC, | ) | |
| | ) | Case No.: 14-cv-2162 |
| Plaintiff, | ) | |
| | ) | Judge Gary Feinerman |
| v. | ) | |
| | ) | |
| DOES 1-36, | ) | |
| | ) | |
| Defendants. | ) | |

**SUPPLEMENTAL DECLARATION OF DANIEL MACEK IN SUPPORT OF
PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f)
CONFERENCE**

1. My name is Daniel Macek. This declaration supplements my prior declaration of April 7, 2014 in this matter and further demonstrates the collaborative and interconnective nature of file sharing using BitTorrent protocol. This declaration is based on my personal knowledge and, if called upon to do so, I will testify that the facts stated herein are true and accurate.

The Collaborative Nature of BitTorrent

2. It is well known that peers within a BitTorrent ecosystem collaborate with each other to distribute pieces of copyrighted works. This is achieved by a user engaging in transactions with other peers within a BitTorrent swarm.

3. There are certain technologies and protocols used by peers to make the above process efficient and effective.

4. BitTorrent clients use two technologies called (1) Distributed Hash Table (DHT) and (2) Peer Exchange.

5. These technologies are built into modern BitTorrent clients and are turned on by default. I have reviewed the data set in Exhibit C to the complaint and confirm that all of the BitTorrent clients belonging to the Does have DHT and Peer Exchange capability.

6.  DHT and Peer Exchange add a significant layer of interconnectivity among peers, with each peer communicating with the others in the swarm to further the dissemination of the file/copyrighted work.

## DHT (DISTRIBUTED HASH TABLE) TECHNOLOGY

7.  DHT enables partial lists of peers to be held by peers within a swarm by announcing the presence of torrents to others within a BitTorrent network.

8.  Peer location information (in the form of IP addresses) is stored by peers participating in a BitTorrent network.

9.  Each peer, equipped with this information, will distribute the information it holds to other peers when it is requested to do so. A user that acquires peer location information via DHT is informed of the location of other peers sharing a file or it may be informed of peers who may know the location of other peers sharing a file so that the user may acquire further peer location information from them.

10.  This is akin to a peer creating and distributing a personalized address book of other peers it has interacted with in the past.

11.  This information allows a peer to effectively connect to other peers without the use of a tracker. In other words, each peer, using this technology, becomes a tracker once it possesses the peer location information.

12.  Peers will continually refresh and update this information to remove old peers. This allows a user to maintain accurate records for distribution to other peers.

13.  The above points represent a basic explanation of DHT. A more detailed explanation may be found within the BitTorrent specifications (see http://www.bittorrent.org/beps/bep_0005.html -- copy attached as Exhibit 1).

## Peer Exchange Technology

14.  Peer Exchange is a protocol used by peers within a BitTorrent swarm.

15.    Like DHT, it allows collaborating peers within a swarm to distribute a copyrighted file more swiftly and efficiently.  Speed, efficiency and robustness of data exchange are achieved through this protocol, as the dependency on a centralized tracker is minimized.

16.    Using Peer Exchange, peers within a swarm exchange peer location information.

17.    Peer Exchange utilizes the knowledge of other peers that a user is connected to by obtaining from them the addresses of peers with whom those other peers are connected.

18.    This technology enables swarms to remain effective, even when trackers fail.  It often uncovers more genuine peers than DHT or a tracker.

Summary

19.    DHT and Peer Exchange allow a user to connect with peers within a BitTorrent network to share information about other peers.

20.    It achieves this through the exchange of location information with the ultimate aim of (1) distributing Plaintiff's copyrighted work and (2) assisting others to do so efficiently and effectively.

21. The Blackjack analogy relied upon by the D.C. Circuit Court of Appeals is inapposite to BitTorrent cases because the analogy fails to account for the heavily interactive and cooperative relationships between the participants of a BitTorrent swarm.  A more appropriate analogy to a BitTorrent case would involve a group of Blackjack players, each of whom is secretly a confederate of the others, engaged in a card-counting scheme.  The team targets a single table, playing a single game, with a single deck of cards.  While members of the team may join and leave the table at different times, and there may be no point where all members of the team are playing at the table simultaneously, the team members still would be sharing information with each other about the composition of the as yet undealt cards in the deck over time in order to gain an unfair advantage over the house. The card-counting Blackjack team is akin to the file sharers at issue in a BitTorrent case.  Just as a card-counting team would meet the requirements of joinder under Rule 20(a)(2) from a technical standpoint in that their actions arise out of the same series of transactions (i.e., the card game at which they all were cheating), so also do the defendants in this BitTorrent case.

3

14-cv-3504

22.    The use of DHT and Peer Exchange creates a complex web of interconnectivity and collaboration among peers.  This makes each peer within a swarm related to each other known peer.  Based on these facts, along with the fact that peers each exchange pieces of the exact same file containing the same copyrighted work with each other, I consider joinder proper, from a technical standpoint, under Rule 20(a)(2).


PURSUANT TO 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 23rd day of June, 2014.


By: _____
        Daniel Macek

4

# EXHIBIT 1

## BitTorrent.org

| | |
|---|---|
| **BEP:** | 5 |
| **Title:** | DHT Protocol |
| **Version:** | 1e703dbf99dca8962addc89a2af451cc199ec697 |
| **Last-Modified:** | Fri Feb 29 00:43:58 2008 -0000 |
| **Author:** | Andrew Loewenstern <drueg@bittorrent.com>, Arvid Norberg <arvid@bittorrent.com> |
| **Status:** | Draft |
| **Type:** | Standards Track |
| **Created:** | 31-Jan-2008 |
| **Post-History:** | 22-March-2011: Add "implied_port" to announce_peer message, to improve NAT support |

BitTorrent uses a "distributed sloppy hash table" (DHT) for storing peer contact information for "trackerless" torrents. In effect, each peer becomes a tracker. The protocol is based on Kademlia [1] and is implemented over UDP.

Please note the terminology used in this document to avoid confusion. A "peer" is a client/server listening on a TCP port that implements the BitTorrent protocol. A "node" is a client/server listening on a UDP port implementing the distributed hash table protocol. The DHT is composed of nodes and stores the location of peers. BitTorrent clients include a DHT node, which is used to contact other nodes in the DHT to get the location of peers to download from using the BitTorrent protocol.

## Overview

Each node has a globally unique identifier known as the "node ID." Node IDs are chosen at random from the same 160-bit space as BitTorrent infohashes [2]. A "distance metric" is used to compare two node IDs or a node ID and an infohash for "closeness." Nodes must maintain a routing table containing the contact information for a small number of other nodes. The routing table becomes more detailed as IDs get closer to the node's own ID. Nodes know about many other nodes in the DHT that have IDs that are "close" to their own but have only a handful of contacts with IDs that are very far away from their own.

In Kademlia, the distance metric is XOR and the result is interpreted as an unsigned integer. $distance(A,B) = |A \, xor \, B|$ Smaller values are closer.

When a node wants to find peers for a torrent, it uses the distance metric to compare the infohash of the torrent with the IDs of the nodes in its own routing table. It then contacts the nodes it knows about with IDs closest to the infohash and asks them for the contact information of peers currently downloading the torrent. If a contacted node knows about peers for the torrent, the peer contact information is returned with the response. Otherwise, the contacted node must respond with the contact information of the nodes in its routing table that are closest to the infohash of the torrent. The original node iteratively queries nodes that are closer to the target infohash until it cannot find any closer nodes. After the search is exhausted, the client then inserts the peer contact information for itself onto the responding nodes with IDs closest to the infohash of the torrent.

The return value for a query for peers includes an opaque value known as the "token." For a node to announce that its controlling peer is downloading a torrent, it must present the token received from the same queried node in a recent query for peers. When a node attempts to "announce" a torrent, the queried node checks the token against the querying node's IP address. This is to prevent malicious hosts from signing up other hosts for torrents. Since the token is merely returned by the querying node to the same node it received the token from, the implementation is not defined. Tokens must be accepted for a reasonable amount of time after they have been distributed. The BitTorrent implementation uses the SHA1 hash of the IP address concatenated onto a secret that changes every five minutes and tokens up to ten minutes old are accepted.

## Routing Table

Every node maintains a routing table of known good nodes. The nodes in the routing table are used as starting points for queries in the DHT. Nodes from the routing table are returned in response to queries from other nodes.

Not all nodes that we learn about are equal. Some are "good" and some are not. Many nodes using the DHT are able to send queries and receive responses, but are not able to respond to queries from other nodes. It is important that each node's routing table must contain only known good nodes. A good node is a node has responded to one of our queries within the last 15 minutes. A node is also good if it has ever responded to one of our queries and has sent us a query within the last 15 minutes. After 15 minutes of inactivity, a node becomes questionable. Nodes become bad when they fail to respond to multiple queries in a row. Nodes that we know are good are given priority over nodes with unknown status.

The routing table covers the entire node ID space from 0 to $2^{160}$. The routing table is subdivided into "buckets" that

each cover a portion of the space. An empty table has one bucket with an ID space range of min=0, max=$2^{160}$. When a node with ID "N" is inserted into the table, it is placed within the bucket that has min &lt;N&lt; max. An empty table has only one bucket so any node must fit within it. Each bucket can only hold K nodes, currently eight, before becoming "full." When a bucket is full of known good nodes, no more nodes may be added unless our own node ID falls within the range of the bucket. In that case, the bucket is replaced by two new buckets each with half the range of the old bucket and the nodes from the old bucket are distributed among the two new ones. For a new table with only one bucket, the full bucket is always split into two new buckets covering the ranges 0..$2^{159}$ and $2^{159}$..$2^{160}$.

When the bucket is full of good nodes, the new node is simply discarded. If any nodes in the bucket are known to have become bad, then one is replaced by the new node. If there are any questionable nodes in the bucket have not been seen in the last 15 minutes, the least recently seen node is pinged. If the pinged node responds then the next least recently seen questionable node is pinged until one fails to respond or all of the nodes in the bucket are known to be good. If a node in the bucket fails to respond to a ping, it is suggested to try once more before discarding the node and replacing it with a new good node. In this way, the table fills with stable long running nodes.

Each bucket should maintain a "last changed" property to indicate how "fresh" the contents are. When a node in a bucket is pinged and it responds, or a node is added to a bucket, or a node in a bucket is replaced with another node, the bucket's last changed property should be updated. Buckets that have not been changed in 15 minutes should be "refreshed." This is done by picking a random ID in the range of the bucket and performing a find_nodes search on it. Nodes that are able to receive queries usually do not need to refresh buckets often. Nodes that are not able to receive queries from other nodes usually will need to refresh all buckets periodically to ensure there are good nodes in their table when the DHT is needed.

Upon inserting the first node into its routing table and when starting up thereafter, the node should attempt to find the closest nodes in the DHT to itself. It does this by issuing find_node messages to closer and closer nodes until it cannot find any closer. The routing table should be saved between invocations of the client software.

## BitTorrent Protocol Extension

The BitTorrent protocol has been extended to exchange node UDP port numbers between peers that are introduced by a tracker. In this way, clients can get their routing tables seeded automatically through the download of regular torrents. Newly installed clients who attempt to download a trackerless torrent on the first try will not have any nodes in their routing table and will need the contacts included in the torrent file.

Peers supporting the DHT set the last bit of the 8-byte reserved flags exchanged in the BitTorrent protocol handshake. Peer receiving a handshake indicating the remote peer supports the DHT should send a PORT message. It begins with byte 0x09 and has a two byte payload containing the UDP port of the DHT node in network byte order. Peers that receive this message should attempt to ping the node on the received port and IP address of the remote peer. If a response to the ping is recieved, the node should attempt to insert the new contact information into their routing table according to the usual rules.

## Torrent File Extensions

A trackerless torrent dictionary does not have an "announce" key. Instead, a trackerless torrent has a "nodes" key. This key should be set to the K closest nodes in the torrent generating client's routing table. Alternatively, the key could be set to a known good node such as one operated by the person generating the torrent. Please do not automatically add "router.bittorrent.com" to torrent files or automatically add this node to clients routing tables.

```
nodes = [["host>", <port>], ["host>", <port>], ...]
nodes = [["127.0.0.1", 6881], ["your.router.node", 4804]]
```

## KRPC Protocol

The KRPC protocol is a simple RPC mechanism consisting of bencoded dictionaries sent over UDP. A single query packet is sent out and a single packet is sent in response. There is no retry. There are three message types: query, response, and error. For the DHT protocol, there are four queries: ping, find_node, get_peers, and announce_peer.

A KRPC message is a single dictionary with two keys common to every message and additional keys depending on the type of message. Every message has a "t" with a string value representing a transaction ID. This transaction ID is generated by the querying node and is echoed in the response, so responses may be correlated with multiple queries to the same node. The transaction ID should be encoded as a short string of binary numbers, typically 2 characters are enough as they cover 2^16 outstanding queries. The other key contained in every KRPC message is "y" with a single character value describing the type of message. The value of the "y" key is one of "q" for query, "r" for response, or "e" for error.

## Contact Encoding

Contact information for peers is encoded as a 6-byte string. Also known as "Compact IP-address/port info" the 4-byte IP address is in network byte order with the 2 byte port in network byte order concatenated onto the end.

Contact information for nodes is encoded as a 26-byte string. Also known as "Compact node info" the 20-byte Node ID in network byte order has the compact IP-address/port info concatenated to the end.

## Queries

Queries, or KRPC message dictionaries with a "y" value of "q", contain two additional keys; "q" and "a". Key "q" has a string value containing the method name of the query. Key "a" has a dictionary value containing named arguments to the query.

## Responses

Responses, or KRPC message dictionaries with a "y" value of "r", contain one additional key "r". The value of "r" is a

dictionary containing named return values. Response messages are sent upon successful completion of a query.

## Errors

Errors, or KRPC message dictionaries with a "y" value of "e", contain one additional key "e". The value of "e" is a list. The first element is an integer representing the error code. The second element is a string containing the error message. Errors are sent when a query cannot be fulfilled. The following table describes the possible error codes:

| Code | Description |
|------|-------------|
| 201 | Generic Error |
| 202 | Server Error |
| 203 | Protocol Error, such as a malformed packet, invalid arguments, or bad token |
| 204 | Method Unknown |

### Example Error Packets:

```
generic error = {"t":"aa", "y":"e", "e":[201, "A Generic Error Ocurred"]}
bencoded = d1:eli201e22:A Generic Error Ocurrede1:t2:aa1:y1:ee
```

## DHT Queries

All queries have an "id" key and value containing the node ID of the querying node. All responses have an "id" key and value containing the node ID of the responding node.

### ping

The most basic query is a ping. "q" = "ping" A ping query has a single argument, "id" the value is a 20-byte string containing the senders node ID in network byte order. The appropriate response to a ping has a single key "id" containing the node ID of the responding node.

```
arguments:  {"id" : "<querying nodes id>"}

response: {"id" : "<queried nodes id>"}
```

### Example Packets

```
ping Query = {"t":"aa", "y":"q", "q":"ping", "a":{"id":"abcdefghij0123456789"}}
bencoded = d1:ad2:id20:abcdefghij0123456789e1:q4:ping1:t2:aa1:y1:qe
Response = {"t":"aa", "y":"r", "r": {"id":"mnopqrstuvwxyz123456"}}
bencoded = d1:rd2:id20:mnopqrstuvwxyz123456e1:t2:aa1:y1:re
```

### find_node

Find node is used to find the contact information for a node given its ID. "q" == "find_node" A find_node query has two arguments, "id" containing the node ID of the querying node, and "target" containing the ID of the node sought by the querier. When a node receives a find_node query, it should respond with a key "nodes" and value of a string containing the compact node info for the target node or the K (8) closest good nodes in its own routing table.

```
arguments:  {"id" : "<querying nodes id>", "target" : "<id of target node>"}

response: {"id" : "<queried nodes id>", "nodes" : "<compact node info>"}
```

### Example Packets

```
find_node Query = {"t":"aa", "y":"q", "q":"find_node", "a": {"id":"abcdefghij0123456789", "target":"mnopqrstuvwxyz123456"}}
bencoded = d1:ad2:id20:abcdefghij0123456789:target20:mnopqrstuvwxyz123456e1:q9:find_node1:t2:aa1:y1:qe
Response = {"t":"aa", "y":"r", "r": {"id":"0123456789abcdefghij", "nodes": "def456..."}}
bencoded = d1:rd2:id20:0123456789abcdefghij5:nodes9:def456...e1:t2:aa1:y1:re
```

### get_peers

Get peers associated with a torrent infohash. "q" = "get_peers" A get_peers query has two arguments, "id" containing the node ID of the querying node, and "info_hash" containing the infohash of the torrent. If the queried node has peers for the infohash, they are returned in a key "values" as a list of strings. Each string containing "compact" format peer information for a single peer. If the queried node has no peers for the infohash, a key "nodes" is returned containing the K nodes in the queried nodes routing table closest to the infohash supplied in the query. In either case a "token" key is also included in the return value. The token value is a required argument for a future announce_peer query. The token value should be a short binary string.

```
arguments:  {"id" : "<querying nodes id>", "info_hash" : "<20-byte infohash of target torrent>"}

response: {"id" : "<queried nodes id>", "token" :"<opaque write token>", "values" : ["<peer 1 info string>", "<peer 2 info string>"]}

or: {"id" : "<queried nodes id>", "token" :"<opaque write token>", "nodes" : "<compact node info>"}
```

### Example Packets:

```
get_peers Query = {"t":"aa", "y":"q", "q":"get_peers", "a": {"id":"abcdefghij0123456789", "info_hash":"mnopqrstuvwxyz123456"}}
bencoded = d1:ad2:id20:abcdefghij0123456789:info_hash20:mnopqrstuvwxyz123456e1:q9:get_peers1:t2:aa1:y1:qe
Response with peers = {"t":"aa", "y":"r", "r": {"id":"abcdefghij0123456789", "token":"aoeusnth", "values": ["axje.u", "idhtnm"]}}
bencoded = d1:rd2:id20:abcdefghij0123456789:5:token8:aoeusnth6:valuesl6:axje.u6:idhtnmee1:t2:aa1:y1:re
```

Response with closest nodes = {"t":"aa", "y":"r", "r": {"id":"abcdefghij0123456789", "token":"aoeusnth", "nodes": "def456..."}}
bencoded = d1:rd2:id20:abcdefghij0123456789:nodes9:def456...5:token8:aoeusnthe1:t2:aa1:y1:re

## announce_peer

Announce that the peer, controlling the querying node, is downloading a torrent on a port. announce_peer has four arguments: "id" containing the node ID of the querying node, "info_hash" containing the infohash of the torrent, "port" containing the port as an integer, and the "token" received in response to a previous get_peers query. The queried node must verify that the token was previously sent to the same IP address as the querying node. Then the queried node should store the IP address of the querying node and the supplied port number under the infohash in its store of peer contact information.

There is an optional argument called implied_port which value is either 0 or 1. If it is present and non-zero, the port argument should be ignored and the source port of the UDP packet should be used as the peer's port instead. This is useful for peers behind a NAT that may not know their external port, and supporting uTP, they accept incoming connections on the same port as the DHT port.

```
arguments:  {"id" : "querying nodes id>",
  "implied_port": <0 or 1>,
  "info_hash" : "<20-byte infohash of target torrent>",
  "port" : <port number>,
  "token" : "<opaque token>")

response: {"id" : "<queried nodes id>")
```

## Example Packets:

```
announce_peers Query - {"t":"aa", "y":"q", "q":"announce_peer", "a": {"id":"abcdefghij0123456789", "implied_port": 1, "info_hash":"mnopqrstuvwxyz
bencoded = d1:ad2:id20:abcdefghij0123456789:info_hash20:<br />
mnopqrstuvwxyz123456:port16881e1:tokens:aoeusnthe1:q1:t2:aa1:y1:qe

Response = {"t":"aa", "y":"r", "r": {"id":"mnopqrstuvwxyz123456"}}
bencoded = d1:rd2:id20:mnopqrstuvwxyz123456e1:t2:aa1:y1:re
```

## References

[1]    Peter Maymounkov, David Mazieres, "Kademlia: A Peer-to-peer Information System Based on the XOR Metric",
       IPTPS 2002. http://www.cs.rice.edu/Conferences/IPTPS02/109.pdf

[2]    Use SHA1 and plenty of entropy to ensure a unique ID.

## Copyright

This document has been placed in the public domain.

# EXHIBIT 5

Not Reported in F.Supp.2d, 2013 WL 6225093 (S.D.Ill.)
(Cite as: 2013 WL 6225093 (S.D.Ill.))

**H**
Only the Westlaw citation is currently available.

United States District Court, S.D. Illinois.
Lightspeed Media Corp., Plaintiff,
v.
Anthony Smith, et al., Defendants.

CIVIL NO. 12–889–GPM
3:12–cv–00889Filed November 27, 2013

John L. Steele, Steele Hansmeier PLLC, Paul A. Duffy, Prenda Law, Inc., Chicago, IL, Kevin T. Hoerner, Becker, Paulson et al., Belleville, IL, for Plaintiff.

Daniel G. Booth, Jason E. Sweet, Booth Sweet LLP, Cambridge, MA, Bart Westcott Huffman, Locke Lord LLP, Austin, TX, Troy A. Bozarth, Heplerbroom LLC, Edwardsville, IL, Andrew G. Toennies, Lashly & Baer PC, St. Louis, MO, John D. Seiver, Davis Wright Tremaine LLP, Washington, DC, for Defendants.

### MEMORANDUM AND ORDER
MURPHY, District Judge:

*1 Currently before the Court are motions to vacate, or in the alternative reconsider the order granting fees and costs to Defendant Anthony Smith filed by Paul Duffy, Paul Hansmeier, and John Steele (Docs.66, 68, 74). Also before the Court are motions for fees and costs filed by Defendants ComCast Cable Communications, LLC ("ComCast") and SBC Internet Services, Inc. d/b/a AT & T Internet Services ("AT & T") (Docs.78, 82), as well as itemizations of fees and costs filed by Smith, ComCast, and AT & T (Docs.90, 97, 98).

The Court initially reserved ruling on these motions (*See* Doc. 96); for the reasons set forth below, the Court now denies the motions to vacate or reconsider filed by Duffy, Hansmeier, and Steele, and grants the motions for attorney fees filed by ComCast and AT & T.

### BACKGROUND
On March 21, 2013, this matter was voluntarily dismissed by Plaintiff Lightspeed Media Corp. (Docs.59, 60). Following the dismissal, the Court granted Defendant Anthony Smith's motion requesting attorney fees and costs because Plaintiff filed and pursued claims against Smith that Plaintiff knew were baseless from the start (Doc. 65). The Court granted Smith his fees and costs under 28 U.S.C. § 1927 to be paid by Plaintiff's counsel: John Steele, Paul Duffy, and Paul Hansmeier (Doc. 65). The Court's order granting Mr. Smith attorney fees was entered on October 30, 2013 (Doc. 65). The very next day, Paul Hansmeier filed a motion to vacate, or in the alternative reconsider, the order (Docs.66, 67) arguing that he should not be liable for Smith's attorney fees. John Steele and Paul Duffy then filed similar motions on November 4, 2013 (Docs.68, 69), and November 7, 2013 (Docs.74, 75), respectively. Defendant Anthony Smith filed a response in opposition to Duffy, Hansmeier, and Steele's motions (Doc. 92).

After the Court granted Smith's request for fees and costs, Defendants ComCast and AT & T then filed motions also requesting fees and costs (Docs.78, 82). Hansmeier filed a response in opposition to ComCast and AT & T's motions (Doc. 86), as did Steele (Doc. 88). Smith filed a reply to Hansmeier and Steele's responses (Doc. 93).

A hearing was held on November 13, 2013 on all of the above motions (Doc. 70). Duffy and Steele appeared at the hearing in person, and Hansmeier appeared by phone (Doc. 96).

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 6225093 (S.D.Ill.)
(Cite as: 2013 WL 6225093 (S.D.Ill.))

## DISCUSSION

### I. MOTIONS TO VACATE, OR IN THE ALTERNATIVE RECONSIDER ORDER GRANTING ATTORNEY FEES TO DEFENDANT ANTHONY SMITH

The Court will first address the motions to vacate, or in the alternative, reconsider its order granting attorney fees and costs to Anthony Smith under 28 U.S.C. § 1927 filed by Plaintiff's current attorney of record, Paul Duffy, and former attorneys of record, Paul Hansmeier and John Steele (Docs.66, 68, 74). Because the motions fail to state any grounds warranting relief under Rule 60(b), the motions to vacate or reconsider are denied.

### A. Legal Standard

Technically, a "Motion to Reconsider" does not exist under the Federal Rules of Civil Procedure. But such motions are routinely filed, and they are generally treated as motions to alter or amend judgment under Rule 59(e), or motions for relief from a judgment or order under Rule 60(b). *See e.g., Mares v. Busby,* 34 F.3d 533, 535 (7th Cir.1994). At issue here is the Court's order granting Smith's request for attorney fees (Doc. 65), which is only an interim order because the Court has not yet determined the amount of attorney fees that Smith is entitled to. *Midlock v. Apple Vacations W., Inc.,* 406 F.3d 453, 456 (7th Cir.2005). Since the order is not a final order and no judgment has been entered, Rule 59(e) is not applicable. Therefore, the motions filed by Duffy, Hansmeier, and Steele must be evaluated under Rule 60(b).

*2 "Relief under Rule 60(b) is an extraordinary remedy that is to be granted only in exceptional circumstances." *Talano v. N.W. Med. Faculty Found., Inc.,* 273 F.3d 757, 762 (7th Cir.2001). Rule 60(b) permits a court to grant relief based on one of six specific grounds listed in the rule. *Talano,* 273 F.3d at 762; FED. R. CIV. P. 60(b). The request for relief "must be shaped to the specific grounds ... listed in Rule 60(b)—they cannot be general pleas for relief."

*United States v. Deutsch,* 981 F.2d 299, 301 (7th Cir.1992).

### B. Paul Duffy's Motion to Vacate or Reconsider (Doc. 74)

The Court turns first to Duffy's motion to vacate or reconsider because it can be easily dismissed as he does not state a proper legal basis for relief under Rule 60(b). In his motion, Duffy argues that the Court should reconsider its order granting attorney fees to Anthony Smith because he took only "five discrete actions" in this matter, none of which multiplied the proceedings or were unreasonable or vexatious (Doc. 75). In the alternative, if Duffy's actions were sanctionable, Smith failed to identify any "excess" expenses directly traceable to Duffy's actions (Doc. 75).

Duffy's motion is not based on any of the grounds specified in Rule 60(b). Instead, Duffy merely takes umbrage with the Court's analysis of the evidence and its ruling, and rehashes old arguments that he made and the Court denied in his response to Anthony Smith's motion for attorney fees (*Compare* Doc. 63 with Docs. 74, 75). Neither of these things warrants relief under Rule 60(b). *Karraker v. Rent–A–Center, Inc.,* 411 F.3d 831, 837 (7th Cir.2005) (Rule 60(b) motion is not the time to rehash previously rejected arguments); *Russell v. Delco Remy Div. of General Motors Corp.,* 51 F.3d 746, 749 (7th Cir.1995) (Rule 60 "was designed to address mistakes attributable to special circumstances and not merely to erroneous applications of law.")

Because Duffy's motion fails to state any grounds for relief within the scope of Rule 60(b), his motion to vacate or reconsider (Doc. 74) is **DENIED.**

### C. Paul Hansmeier and John Steele's Motions to Vacate or Reconsider (Docs.66, 68)

The Court next turns to the motions to vacate or reconsider filed by Hansmeier and Steele. These motions can be considered in tandem because they are

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 6225093 (S.D.Ill.)
(Cite as: 2013 WL 6225093 (S.D.Ill.))

largely identical. Like Duffy, Hansmeier and Steele argue that that the Court should reconsider its order granting attorney fees to Anthony Smith because they took only a small number of "discrete actions" in this matter, none of which multiplied the proceedings or were unreasonable or vexatious (Docs.67, 69). As previously stated, these arguments do not translate into a legal basis warranting relief under Rule 60(b).

Hansmeier and Steele also argue that the Court should vacate its order because it imposed sanctions on them without giving them notice or an opportunity to be heard in violation of their right to due process (Docs.67, 69). Specifically, they claim that they were not apprised of Smith's motion for attorney fees until after the District Court had entered its order imposing sanctions on October 30, 2013 because Smith failed to serve them. Smith's motion for attorney fees was electronically filed on April 5, 2013, and the CM/ECF system sent notice to all attorneys of record (Doc. 61). Hansmeier and Steele claim that since they were no longer attorneys of record (*See* Doc.s 56, 58), they did not receive the notice (Doc. 67, 69).

*3 "[T]he requirements of due process of law are applicable to a proceeding to impose sanctions, entitling a party or attorney to notice and opportunity to respond[.]" *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.,* 886 F.2d 1485, 1494 (7th Cir.1989). Despite their protestations, the Court finds that Hansmeier and Steele both received all the process they were due.

First and foremost, Steele's claim that he never got notice of Smith's motion for fees is baseless. A review of CM/ECF records reveals that notice of Smith's motion for attorney fees (Doc. 61) went to numerous email addresses, including: docket@wefightpiracy.com—an email address used by both Steele and Paul Duffy.[FN1] Therefore, it is irrefutable that Steele had actual notice of Smith's motion for attorney fees prior to the Court's order granting the motion.

FN1. Prior to his termination as counsel for Plaintiff, Steele received electronic notices from the CM/ECF system at three email addresses: (1) jlsteele@wefightpiracy.com, (2) docket@wefightpiracy.com, and (3) nawersal@wefightpiracy.com (*See, e.g.,* Doc. 57). He now receives electronic notices at johnlsteele33140@gmail.com (Doc. 88).

Second, Smith served Paul Duffy, Plaintiff's lead attorney, with his motion for attorney fees; and service on Duffy was effective for all of Plaintiff's counsel, past and present, including Steele and Hansmeier. Rule 5 does not require motions to be served on all counsel of record, but merely requires that the pleadings be served on all parties. *See* FED. R. CIV. P. 5(a)(1). Furthermore, service is not required on each of several counsel appearing on behalf of a party. *Daniel Int'l Corp. v. Fischbach & Moore, Inc.,* 916 F.2d 1061, 1063 (5th Cir.1990). "Service upon one, but not all, of its counsel is effective service." *Id.* (serving "local" counsel and not "lead" counsel complied with Rule 5 because the Rule does not "require service on each of several counsel appearing on behalf of a party"); *Buchanan v. Sherrill,* 51 F.3d 227, 228 (10th Cir.1995) (serving motion for summary judgment only on plaintiff's attorney who had recently entered an appearance and not on attorney who had represented plaintiff from the outset complied with Rule 5 because the rule does not require service on both attorneys of record).

Here, Smith served his motion for attorney fees on Duffy, and that is all he was required to do. He did not have to also personally serve Steele and Hansmeier. This is particularly true since Duffy, Steele, and Hansmeier are all associated with the same law firm: Prenda Law, Inc. The docket sheet indicates Paul Duffy's firm is Prenda Law; Steele listed his firm as Prenda Law on his entry of appearance and his motion to withdraw (Docs.20, 57); and Hansmeier indicated that he was "of counsel" to Prenda Law, Inc. (Doc.

Not Reported in F.Supp.2d, 2013 WL 6225093 (S.D.Ill.)
(Cite as: 2013 WL 6225093 (S.D.Ill.))

50). The Court also takes judicial notice that Steele submitted a declaration in the Central District of California swearing that he was "of counsel with the law firm, Prenda Law, Inc." and that Hansmeier was "also of counsel to the firm." *Ingenuity 13 LLC v. John Doe,* Case No. 12–cv–8333–ODW (C.D.Cal. March 8, 2013), ECF No. 83).

Aside from being from the same firm, there is other evidence suggesting these three men worked in concert with one another. First, Duffy, Steele, and Hansmeier used each other's CM/ECF login information, and/or filed documents on behalf of one another. For example, both Steele and Hansmeier used Duffy's CM/ECF login information to enter their appearances, or Duffy attempted to do so for them (*See* Doc. 11, 15); Hansmeier also used Steele's CM/ECF login information to file his motion to continue, or Steele filed it on Hansmeier's behalf (Doc. 73). Second, the similarities in documents filed by Duffy, Steele, and Hansmeier indicate an ongoing relationship. For example, in the instant motions to vacate/reconsider, the three men use identical formatting from the caption, to the font, and the signature block, and the substance is largely the same (*Compare Docs.* 66, 67, 67–1 *with* Docs. 68, 68–1, 68–2, 69 *with* Docs. 74, 75). Third, the Court takes judicial notice that several other federal courts have found Duffy, Steele, and Hansmeier to be in cahoots. Most notably, Judge Otis Wright in the Central District of California found that Steele, Hansmeier, and Duffy were "starving attorneys" with "shattered law practices" who conspired to use copyright laws to "plunder the citizenry," and he adopted into his findings a chart showing the relationship between these men and others associated with Prenda Law. *Ingenuity 13 LLC v. John Doe,* Case No. 12–cv–8333–ODW, 2013 WL 1898633, at *1–*2, *5 (C.D.Cal. May 6, 2013). *See also AF Holdings, LLC v. John Doe(s),* Case No. 12–CV–1445–JNE–FLN, (D.Minn. November 6, 2013), ECF No. 67 (noting Judge Wright's findings, but stating "[i]t would not be a wise use of the Court's limited resources to *sua sponte* attempt to fully un-

tangle the relationship between Hansmeier, Steele, Duffy, [and others]"); *AF Holdings, LLC v. Navasca,* Case No. 12–cv–02396–EMC, 2013 WL 5701104, at *2 (N.D.Cal. Oct. 16, 2013) (adopting Judge Wright's findings with respect to AF Holdings, Steele, and Hansmeier's "alter ego relationship, their conduct, and their business model"); *AF Holdings, LLC v. Chowdhury,* Case No. 12–cv–12105–JLT (D.Mass. October 22, 2013), ECF No. 34 (finding AF Holdings, LLC was "an alias of its counsel, Prenda Law, Inc., its principals, attorneys John L. Steele, Paul A. Duffy, and Paul R. Hansmeier, and its paralegal, Mark Lutz").

*4 Based on this information, the Court has no doubt that Duffy, Steele, and Hansmeier are closely associated and acted in concert to file and prosecute this frivolous lawsuit. Therefore, Smith's service on Duffy was also effective for Steele and Hansmeier. As such, Steel and Hansmeier had adequate notice of Smith's motion, and the deadline for response papers, but chose to disregard it.

However, assuming arguendo that Steele and Hansmeier did not have notice or an opportunity to be heard before the Court imposed sanctions, the due process violation was subsequently cured when the Court reheard the issue on November 13 at Steele and Hansmeier's request. Steele and Hansmeier had ample notice of the November 13 hearing, and they knew that they could sanctioned and ordered to pay Anthony Smith's attorney fees. The written briefs that Steele and Hansmeier filed in advance of that hearing, and the statements they made at the hearing itself gave them the opportunity to confront the Court's belief that they had engaged in sanctionable conduct and to try to convince the Court that they should not be sanctioned. "So it was essentially a no-harm, no-foul situation because, generally speaking, 'procedural errors are cured by holding a new hearing in compliance with due process requirements.' " *In re Hancock,* 192 F.3d 1083, 1086 (7th Cir.1999), *quoting Batanic v. Immigration and Naturalization Service,* 12 F.3d 662, 667

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 6225093 (S.D.Ill.)
(Cite as: 2013 WL 6225093 (S.D.Ill.))

(7th Cir.1993) (holding imposition of sanctions was a deprivation of due process, however said deprivation was cured when the court stayed the sanctions order and scheduled another hearing). *See also Wright v. CompGeeks.com,* 429 Fed.Appx. 693, 698 (10th Cir.2011); *Powell v. Cadwell,* 42 Fed.Appx. 821, 822 (7th Cir.2002); *In re Rimsat, Ltd.,* 212 F.3d 1039, 1044 (7th Cir.2000).

Because Hansmeier and Steele's motions fail to state any grounds for relief within the scope of Rule 60(b), and they were not deprived of due process with respect to the imposition of sanctions, their motions to vacate or reconsider (Docs.66, 68) are **DENIED.**

## II. MOTIONS FOR ATTORNEY FEES

The Court will next address the motions for attorney fees and costs under § 1927 filed by Defendants ComCast and AT & T (Docs.78, 82). Under 28 U.S.C. § 1927, "any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. The purpose of § 1927 "is to deter frivolous litigation and abusive practices by attorneys, and to ensure that those who create unnecessary costs also bear them." *Kapco Mfg. Co., Inc. v. C & O Enterprises, Inc.,* 886 F.2d 1485, 1491 (7th Cir.1989) (internal citations omitted). While there is no catch-all definition for either 'unreasonably' or 'vexatiously,' the Seventh Circuit has upheld sanctions under this statute when counsel acted recklessly, raised baseless claims despite notice of the frivolous nature of these claims, or otherwise showed indifference to statutes, rules, or court orders. *Jolly Grp., Ltd. v. Medline Indus., Inc.,* 435 F.3d 717, 720 (7th Cir.2006); *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184 (7th Cir.1992).

ComCast and AT & T argue that fees are appropriate here because Plaintiff raised baseless claims against them, despite knowledge those claims were frivolous, in an effort to obtain the discovery that the Illinois Supreme Court had previously thwarted (Docs.78, 82). Furthermore, Plaintiff continued to advance its baseless claims until the Court ruled that no discovery would be forthcoming until the motions to dismiss filed by Defendants were ruled on (Docs.78, 82). Rather than waiting for the Court's ruling, however, Plaintiff dismissed all of its claims (Docs.78, 82).

*5 The Court agrees with ComCast and AT & T. By naming ComCast and AT & T as Defendants without any valid claims in an attempt to make an end run around the Illinois Supreme Court's denial of discovery, Plaintiff unreasonably and vexatiously multiplied the proceedings in this matter. Namely, Defendants' attorneys were forced to respond to and appear for a hearing on Plaintiff's emergency motion for expedited discovery, to file various motions to dismiss, to appear for a scheduling and discovery conference, and to file a motion to stay discovery.

The Court also finds that Duffy, Hansmeier, and Steele exhibited a "serious and studied disregard for the orderly process of justice." *Jolly Grp., Ltd. v. Medline Indus., Inc.,* 435 F.3d 717, 720 (7th Cir.2006), *quoting Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 119 (7th Cir.1994). These men have shown a relentless willingness to lie to the Court on paper and in person, despite being on notice that they were facing sanctions in this Court, being sanctioned by other courts,[FN2] and being referred to state and federal bars,[FN3] the United States Attorney in at least two districts,[FN4] one state Attorney General,[FN5] and the Internal Revenue Service.[FN6] For example, at the November 13 hearing, Hansmeier skirted the Court's direct questions, Steele made feigned protestations, and both flat-out lied about their association with Prenda Law, Inc. in the face of documentary evidence on the record in this case, and their sworn declarations in other cases.[FN7]

FN2. *AF Holdings, LLC v. John Doe(s),* Case No. 12–cv–1445–JNE–FLN, (D.Minn. No-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 6225093 (S.D.Ill.)
(Cite as: 2013 WL 6225093 (S.D.Ill.))

vember 6, 2013), ECF No. 67 (ordering AF Holdings and Prenda Law to repay settlement money and all attorney fees and costs incurred by defendants); *Ingenuity 13 LLC v. John Doe,* Case No. 12–cv–8333–ODW, 2013 WL 1898633, at \*5–6 (C.D.Cal. May 6, 2013) (jointly and severally liable for defendant's attorney fees and costs in the amount of $81,319.72); *AF Holdings, LLC v. Chowdhury,* Case No. 12–cv–12105–JLT (D.Mass. October 22, 2013), ECF No. 34 (jointly and severally liable for defendant's in the amount of $21,393.60, with fees and costs trebled for a total judgment of $64,180.80).

FN3. *AF Holdings, LLC v. John Doe(s),* Case No. 12–cv–1445–JNE–FLN, (D.Minn. November 6, 2013), ECF No. 67; *Ingenuity 13 LLC v. John Doe,* Case No. 12–cv–8333–ODW, 2013 WL 1898633, at \*5 (C.D.Cal. May 6, 2013)

FN4. *AF Holdings, LLC v. John Doe(s),* Case No. 12–cv–1445–JNE–FLN, (D.Minn. November 6, 2013), ECF No. 67; *Ingenuity 13 LLC v. John Doe,* Case No. 12–cv–8333–ODW, 2013 WL 1898633, at \*5 (C.D.Cal. May 6, 2013)

FN5. *AF Holdings, LLC v. John Doe(s),* Case No. 12–cv–1445–JNE–FLN, (D.Minn. November 6, 2013), ECF No. 67

FN6. *Ingenuity 13 LLC v. John Doe,* Case No. 12–cv–8333–ODW, 2013 WL 1898633, at \*5 (C.D.Cal. May 6, 2013)

FN7. Steele submitted a declaration in the Central District of California swearing that he was "of counsel with the law firm, Prenda Law, Inc." and that Hansmeier was "also of counsel to the firm." *Ingenuity 13 LLC v. John Doe,* Case No. 12–cv–8333–ODW (C.D.Cal. March 8, 2013), ECF No. 83).

Accordingly, the imposition of attorneys' fees under § 1927 is appropriate here—from the inception of the claims through the present. *See Overnite Transp. Co. v. Chi. Indus. Tire Co.,* 697 F.2d 789, 794 (7th Cir.1983) (§ 1927 can reach the filing of the complaint where the lawsuit was legally meritless from the outset, and counsel should have known that it was); *Kotsilieris v. Chalmers,* 966 F.2d 1181, 1184–85 (7th Cir.1992) (§ 1927 sanctions appropriate where counsel pursued baseless claim despite receiving notice that claims were frivolous).

### III. ITEMIZATIONS OF FEES AND COSTS

\*6 For the reasons stated above, and in accordance with the Court's previous order (Doc. 65), Defendants have been awarded reasonable attorney fees and costs under 28 U.S.C. § 1927 for all time expended from the filing of the amended complaint and the removal of the case to federal court in August 2012.

Anthony Smith seeks a total of $72,367.00 in attorney fees and costs (Doc. 90). This total includes $72,150.40 in attorney fees for 187.2 hours of work done by Smith's attorneys from the time Smith was served with summons in August 2012 through May 2013 (Doc. 90–1). The hours were billed at a rate of $409.00 per hour for partners Dan Booth and Jason Sweet and $200.00 per hour for (Doc. 90–1). This total also includes $216.20 in costs (Doc. 90–1).

SBC Internet Services, Inc. d/b/a AT & T Internet Services ("AT & T") seeks a total of $119,637.05 in attorney fees and costs (Doc. 97). This total includes $870.29 in costs and $38,987.83 in attorney fees for the law firm of Hepler Broom for approximately 158.7 hours of work from the time the case was removed to federal court in August 2012 through November 2013

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 6225093 (S.D.Ill.)
(Cite as: 2013 WL 6225093 (S.D.Ill.))

(Doc. 97–1). The hours were billed at various billing rates ranging from $295.00 to $110.00 per hour (Doc. 97–1). The total sought by AT & T also includes $864.92 in costs and $80,524.50 in attorney fees for the law firm of Locke Lord, LLP for approximately 215 hours of work from the time the case was removed to federal court in August 2012 through November 2013(Doc. 97–2). The hours were billed at various billing rates ranging from $250 to $555 per hour (Doc. 97–2).

ComCast Cable Communications, LLC seeks a total of $69,021.26 in attorney fees and costs (Doc. 98). This total includes $806.98 in costs and $57,144.28 in attorney fees for the law firm of Davis Wright Tremaine, LLP ("DWT") for approximately 132 hours of work from the time the case was removed to federal court in August 2012 through April 2013 (Doc. 98–1). The hours were billed at various billing rates ranging from $531.00 to $212.50 per hour (Doc. 98–1). This total also includes $11,070.00 in attorney fees for the law firm of Lashley & Baer, P.C. for 36.9 hours of work at a billing rate of $300.00 per hour (Doc. 98–2).

The Court notes that Paul Duffy, Paul Hansmeier, and John Steele had an opportunity to respond, and did respond, to Smith, AT & T, and ComCast's general requests for fees and costs (Docs.63, 66, 68, 74, 86). Duffy, Hansmeier, and Steele have not filed responses to the specific itemizations, but having reviewed the itemizations and declarations in support thereof, the Court finds a response is not necessary because no further information is required for this ruling.

After carefully considering the itemizations of fees and costs and the declarations in support thereof submitted by the attorneys for Smith, AT & T, and ComCast, the Court finds the time spent and the amounts charged by Smith, AT & T, and ComCast to be reasonable. The Court has also carefully considered the interrelationship between Duffy, Hansmeier, and Steele. The Court finds, that these men acted in con-

cert throughout the entirety of the proceedings in this matter, share total responsibility for their actions, and are jointly and severally liable for the fees and costs of Defendants.

### CONCLUSION

*7 The motions to vacate, or in the alternative, to reconsider the order granting Anthony Smith's motion for attorney fees filed by Paul Duffy (Doc. 74), Paul Hansmeier (Doc. 66), and John Steele (Doc. 68) are **DENIED.**

The motions for attorney fees and costs filed by Defendants ComCast Cable Communications, LLC (Doc. 78) and SBC Internet Services, Inc. d/b/a AT & T Internet Services (Doc. 82) are **GRANTED.**

It is **ORDERED** that pursuant to 28 U.S.C § 1927, Paul Duffy, Paul Hansmeier, and John Steele are jointly and severally liable, and shall pay within 14 days of this order, attorney fees and costs to Defendant Anthony Smith in the amount of $72,367.00, to AT & T in the amount of $119,637.05, and to ComCast in the amount of $69,021.26 for a total judgment of $261,025.11, with interest as provided by law.

**IT IS SO ORDERED.**

S.D.Ill., 2013
Lightspeed Media Corp. v. Smith
Not Reported in F.Supp.2d, 2013 WL 6225093 (S.D.Ill.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 6

Westlaw.

Slip Copy, 2013 WL 3270663 (N.D.Ill.)
**(Cite as: 2013 WL 3270663 (N.D.Ill.))**

C

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
GUAVA, LLC, Plaintiff,
v.
DOES 1–5, Defendants.

No. 1:12–cv–8000.
June 27, 2013.

Paul A. Duffy, Prenda Law, Chicago, IL, for Plaintiff.

Erin Kathryn Russell, The Russell Firm, Chicago, IL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*
JOHN W. DARRAH, District Judge.

*\*1 Plaintiff Guava, LLC filed a Complaint against John Doe Defendants 1–5 (the "Doe Defendants") on October 5, 2012. In its Complaint, Guava alleged four counts against the Doe Defendants: (I) computer fraud and abuse; (II) civil conspiracy; (III) conversion arising from unlawful computer-based breaches; and (IV) negligence arising from unlawful computer-based breaches. (*See* Compl.) Guava filed a Motion for Early Discovery on October 17, 2012. On December 5, 2012, the motion was denied without prejudice with leave to re-file; furthermore, the parties were ordered to exchange Rule 26(a)(1) initial disclosures by January 4, 2013. Guava has filed an Amended *Ex Parte* Application for Leave to Take Expedited Discovery. Defendant John Doe 1 has filed an Objection to Guava's Motion for Early Discovery, and the matter is ripe for ruling.

### BACKGROUND

### *The Instant Complaint*
According to its Complaint, Guava is the owner of password-protected websites, which were allegedly hacked by the unknown Doe Defendants and their alleged co-conspirators, using hacked usernames and passwords. (Compl.¶¶ 1, 18.) Guava identifies itself only as a "limited liability company" that owns and operates "protected computer systems," but **does** not provide any information about what types of websites it operates or any additional business information. (Compl.¶ 2.) Guava states that it has identified the Doe Defendants and their co-conspirators only by unique Internet Protocol ("IP") addresses that correspond to the date and time at which the hacking activity occurred. (Compl.¶¶ 3, 20.) An IP address is a specific identifying number that Internet Service Providers ("ISPs") assign to each subscriber of its services; the ISP connects a subscriber's router to the internet and allows a subscriber to receive or transmit data. (*Id.*); *see also First Time Videos, LLC v. Does 1–500,* 276 F.R.D. 241, 245 (N.D.Ill.2011).

According to Guava, the ISPs typically keep subscribers' personal information only for a short, temporary time before they erase it. In its present motion, Guava seeks expedited discovery to serve expedited discovery on the ISPs of the IP addresses associated with the Doe Defendants and their co-conspirators.

### *Prior and Concurrent Procedural History*
Without identifying himself, Defendant John Doe 1 ("Defendant") has filed an objection to Guava's motion. Defendant urges that Guava's motion be considered in connection with a previous suit filed by Guava in the Circuit Court of Cook County in the matter, *Guava, LLC v. Skyler Case,* 2012–L–007363 ("*Guava 1*"). (Def.'s Objection at 1.) Tellingly, Guava, who is the same party and is represented by the same counsel, Prenda Law, as in the matter of *Guava*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 3270663 (N.D.Ill.)
(Cite as: 2013 WL 3270663 (N.D.Ill.))

*I,* does not discuss or dispute Defendant's discussion of *Guava I.*

In *Guava I,* Guava stated the same allegations and averred the same four counts as those in the instant Complaint. Defendant was one of the John Doe defendants served via subpoena in that case and was represented by the same defense counsel. (*Id.*) According to Defendant, during the pretrial period in *Guava I,* the presiding judge, the Honorable Sanjay Tailor, expressed doubts as to the legal sufficiency of Guava's claims, specifically with respect to the claim of civil conspiracy. (*Id.* at 2.) Additionally, Judge Tailor questioned counsel for Guava and one of the defendants, Skyler Case, as to whether they had a collusive arrangement in place because of unusual litigation practices between the parties. (*Id.*) In particular, those parties had entered an agreed order that permitted a broad net of discovery via subpoenas to numerous John Doe targets from a list of over 300 ISPs. Furthermore, defendant Skyler Case had filed an answer in which he admitted both the existence of and his participation in the conspiracy alleged by Guava. (*Id.* at 1–2.)

*2 On October 4, 2012, Judge Tailor entered an order, in which he stayed all subpoenas already issued by Guava, ordered that Guava cease issuing any new subpoenas thereafter, and required Guava to notify all subpoenaed ISPs of the court's order. (Def.'s Objection, Exh. A.) Judge Tailor also scheduled a hearing for ruling on Defendant's and other John Does' motions to quash Guava's subpoenas. However, on the next day, October 5, 2012, Guava filed a notice that it was withdrawing the subpoenas for all the defendants who had objected, so that Guava could pursue those objecting defendants in another venue. (Def.'s Objection, Exh. B.) Guava concurrently filed the instant Complaint in this Court against the Doe Defendants that same day.

Following Judge Tailor's Order from *Guava I,* Guava also filed suits, with Prenda Law as counsel, in

Alabama, Arizona, Connecticut, Georgia, Massachusetts, and Washington D.C. against the same Doe Defendants listed in this suit. (Def.'s Objection at 3.) In each lawsuit, Guava sought the identities of the Doe Defendants through the same methodology utilized in this suit: filing a motion for expedited discovery to serve subpoenas on relevant ISPs to obtain the personal account information of the Doe Defendants. (*Id.*) Defendant has received a subpoena notification for a case filed in the Middle District of Georgia, named *Guava LLC v. John Doe,* Civil Action No. 5:12–cv–00398–HL, which was issued from the United States District Court for the District of Minnesota. (Def.'s Objection, Exh. D.) Furthermore, as discussed below, counsel for Guava has filed numerous other similar suits against unknown defendants and sought expedited discovery in those cases, as well.

## LEGAL STANDARD

The Federal Rules of Civil Procedure allow parties to seek discovery of "any nonprivileged matter that is relevant to any party's claim or defense ...." Fed.R.Civ.P. 26(b)(1). A district court has "extremely broad discretion in controlling discovery." *Weeks v. Samsung Heavy Indus. Co.,* 126 F.3d 926, 943 (7th Cir.1997). Expedited discovery is permissible in certain circumstances, but it is "not the norm." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor,* 194 F.R.D. 618, 623 (N.D.Ill.2000).

A plaintiff seeking expedited discovery bears the burden to make a *prima facie* showing of the need for expedited discovery. *Merrill Lynch,* 194 F.R.D. at 623. Furthermore, the courts "must also protect defendants from unfair expedited discovery." *Id.* Therefore, courts will employ a "good cause" standard in determining whether to authorize expedited discovery. *Hard Drive Prods., Inc. v. Doe,* 283 F.R.D. 409, 410 (N.D.Ill.2012). There may be good cause if "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* (quoting *Hard Drive Prods, Inc. v. Doe,* No. S–11–3074 KJM CKD, 2012

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 3270663 (N.D.Ill.)
(Cite as: 2013 WL 3270663 (N.D.Ill.))

WL 90412, at *1 (E .D. Cal. Jan. 11, 2012) (internal citations and quotation omitted). The court evaluates "the entirety of the record to date and the *reasonableness* of the request in light of all of the surrounding circumstances ...." *Merrill Lynch,* 194 F.R.D. at 624 (emphasis in original); *see also Ibarra v. City of Chi.,* 816 F.Supp.2d 541, 554 (N.D.Ill.2011).

## ANALYSIS

*3 The aggressive tactics of Guava's counsel, Prenda Law, in litigating John Doe lawsuits have been widely reported and acknowledged by courts, including those in Illinois and California. In *Pacific Century Int'l, Ltd. v. Does 1–37,* 282 F.R.D. 189, 193 (N.D.Ill.2012), Judge Holderman, addressing plaintiff's subpoenas on defendants' ISPs, observed that Prenda Law had, as of February 2012, "filed at least 118 such lawsuits against over 15,000 John **Does** in the last year and a half alone." *See also Hard Drive Prods, Inc. v. Does 1–90,* No. C 11–03825 HRL, 2012 WL 1094653, *1 fn. 1 (N.D.Cal. Mar.30, 2012) (finding that the plaintiff, represented by Prenda Law, had filed nineteen cases in the Northern District of California in 2011, and that Prenda Law had filed a significant number of other cases in that district on behalf of similar plaintiffs).

Courts have expressed strong concerns that Prenda Law's aggressive tactics are a means to improperly leverage settlements. *See, e.g., Sunlust Pictures, LLC v. Does 1–75,* No. 12–cv1546, 2012 WL 3717768, at *5 (N.D.Ill. Aug.27, 2012) ("Judges within this district have recognized that plaintiffs in these types of cases might unfairly threaten to disclose defendants' identities in order to improperly leverage settlement negotiations."). In *MCGIP, LLC v. Does 1–149,* No. 11 C 2331, 2011 WL 4352110, at 4n.5 (N.D.Cal. Sept. 16, 2011), the district court described these litigating tactics:

(1) a plaintiff sues anywhere from a few to thousands of **Doe** defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements—a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*See also Pacific Century Int'l, Ltd.,* 282 F.R.D. at 193 (quoting *MCGIP, LLC,* 2011 WL 4352110). In *Hard Drive Productions,* 2012 WL 1094653 at *3, Prenda Law admitted that it never served a single defendant in any of the infringement John Doe cases where the court granted early discovery. The *Hard Drive Productions* court further confirmed this admission by Prenda Law through its own research of cases filed in the district. *Id.* at *3 fn. 4. Thus, it appears that once Prenda Law obtains the identities of the IP subscribers, its focus is not on serving those defendants but, rather, on pursuing settlements.

Most recently, Judge Otis D. Wright II, in the Central District Court of California, accused Prenda Law, and in particular, Guava's present counsel, Paul Duffy, of bad-faith practice and imposed both monetary sanctions totaling $81,319.72, as well as non-monetary sanctions. *See Ingenuity 13 LLC v. John Doe,* No. 2:12–cv–8333 ODW (JCx), 2013 WL 1898633 (C.D.Cal. May 6, 2013). The *Ingenuity* court made the following findings of fact with respect to Prenda Law's general business and legal practice, including in part:

*4 1. Steele, Hansmeier, and Duffy ("Principals") are attorneys with shattered law practices. Seeking easy money, they conspired to operate this enterprise and formed the [plaintiff] entities ... for the sole purpose of litigating copyrightinfringement

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 3270663 (N.D.Ill.)
(Cite as: 2013 WL 3270663 (N.D.Ill.))

lawsuits. They created these entities to shield the Principals from potential liability and to give an appearance of legitimacy.

2. [Plaintiff entities] have no assets other than several copyrights to pornographic movies. There are no official owners or officers for these two offshore entities, but the Principals are the de facto owners and officers.

3. The Principals started their copyright-enforcement crusade in about 2010, through Prenda Law, which was also owned and controlled by the Principals. Their litigation strategy consisted of monitoring **BitTorrent** download activity of their copyrighted pornographic movies, recording IP addresses of the computers downloading the movies, filing suit in federal court to subpoena Internet Service Providers ("ISPs") for the identity of the subscribers to these IP addresses, and sending cease-and-desist letters to the subscribers, offering to settle each copyright infringement claim for about $4,000.

4. This nationwide strategy was highly successful because of statutory copyright damages, the pornographic subject matter, and the high cost of litigation. Most defendants settled with the Principals, resulting in proceeds of millions of dollars due to the numerosity of defendants. These settlement funds resided in the Principals' accounts and not in accounts belonging to [plaintiff entities]. No taxes have been paid on this income.

5. For defendants that refused to settle, the Principals engaged in vexatious litigation designed to coerce settlement. These lawsuits were filed using boilerplate complaints based on a modicum of evidence, calculated to maximize settlement profits by minimizing costs and effort.

6. The Principals have shown little desire to proceed

in these lawsuits when faced with a determined defendant. Instead of litigating, they dismiss the case. When pressed for discovery, the Principals offer only disinformation-even to the Court.

...

11. Plaintiffs have demonstrated their willingness to deceive not just this Court, but other courts where they have appeared. Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies. But this deception was calculated so that the Court would grant Plaintiffs' *early-discovery requests,* thereby allowing Plaintiffs to identify defendants and exact settlement proceeds from them. With these granted requests, Plaintiffs borrow the authority of the Court to pressure settlement.

*Id.* at *2–3 (emphasis added). The *Ingenuity* court stated that Prenda Law's litigation strategy was "anticipat[ing] that the Court would blindly approve their early-discovery requests, thereby opening the door to more settlement proceeds." *Id.* at *4. Furthermore, the *Ingenuity* court remarked that Prenda Law's attorneys "suffer from a form of moral turpitude unbecoming of an officer of the court," to an extent that warranted referring Prenda Law to the United States Attorney for the Central District of California and the Criminal Investigation Division of the Internal Revenue Service. *Id.* at *5.

*5 Against this backdrop, Guava's need for expedited discovery and the risk of harm from such discovery must be balanced and evaluated.

*Guava's Need for Expedited Discovery*
Guava contends that there is a need for expedited discovery to issue subpoenas to the ISPs so that Guava may identify the responding Defendant as well as all other **Doe Defendants**. However, Guava is vague in

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 3270663 (N.D.Ill.)
(Cite as: 2013 WL 3270663 (N.D.Ill.))

explaining the underlying purpose of the expedited discovery it seeks and fails to draw a clear connection between the process of issuing the subpoenas and identifying and naming the infringing parties. Guava appears more concerned with obtaining the identities of the Doe Defendants than it is with providing proper notice through service of process: "Guava ... requests ... immediate discovery ... to determine the identities of the Doe Defendants and their co-conspirators" (Pl.'s Appl. at 1); "Guava has a need for expedited discovery of the identities of Doe Defendants and their co-conspirators ...," (*Id.* at 5); "[T]he present lawsuit simply cannot proceed without discovering the identities of the Defendants and their co-conspirators." (*Id* . at 6.)

Indeed, Guava makes only a passing mention of a need to provide the Doe Defendants with notice of the suit. (*See id.* at 6.) Considering Prenda Law's admission in *Hard Drive Prods., Inc.,* 2012 WL 1094653 at *3, that it has never "served a single defendant," this raises concerns that Guava's true intent is to leverage settlement demands. *See Ingenuity,* 2013 WL 1898633 at *2 ("[Prenda Law] subpoena[es] Internet Service Providers ("ISPs") for the identity of the subscribers to these IP addresses, and send[s] cease-and-desist letters to the subscribers, offering to settle each copyright infringement claim for about $4,000.").

Guava's request is also overly broad. The expedited discovery will lead to the discovery of the account subscribers but not necessarily the actual infringers, as any number of people could be using the IP address to hack into Guava's protected websites. *See, e.g., Hard Drive Prods.,* 2012 WL 1094653 at *3 (citation omitted) ("The named ISP subscriber may or may not be the infringer, as Guava acknowledges by saying that it may need to take further discovery even after it locates the subscribers whose IP addresses appeared in the swarm.").

Guava also has not properly supported its contention that the ISPs will erase the account subscribers'

information. Guava has not presented any evidence of the specific practices of the ISPs associated with the Doe Defendants' IP addresses. *See, e.g., Quad Intl., Inc. v. Does 1–6,* No. 2:12–cv–2631 LKK KJN, 2013 WL 142865, at *3 fn. 6 (finding that Guava's forensic investigator made unsupported and overgeneralized declarations about the short lengths of time that various ISPs preserve subscribers' account information). Guava has therefore failed to make a *prima facie* showing of its need for expedited discovery.

### *Balancing the Administration of Justice and Risk of Harm*

*6 Furthermore, considering the administration of justice and the risk of prejudice to the Doe Defendants weighs against a finding of a good cause for the expedited discovery. *See Merrill Lynch,* 194 F.R.D. at 623–24. As discussed above, there is a real concern that Prenda Law seeks to use expedited discovery as a means to improperly leverage settlements. For this reason, the administration of justice weighs against granting Plaintiff's request.

### *Personal Jurisdiction*

Defendant argues that Plaintiff has failed to sufficiently allege that personal jurisdiction exists over the majority of Defendants and, therefore, Plaintiff has failed to carry its burden of establishing personal jurisdiction. Plaintiff responds this argument is premature and that personal jurisdiction is an affirmative defense that can be raised only after a party is named and served as a defendant.

Courts that have addressed similar cases have held that such challenges to personal jurisdiction are premature until a party has been named as a defendant. *See, e.g., First Time Videos, LLC v. Does 1–500,* 276 F.R.D. 241, 251 (N.D.Ill.2011) (personal jurisdiction argument was premature but would be relevant once defendants were named as parties); *Safety Point Productions, LLC v. Does 1–57,* No. 3:12–CV–601, 2013 WL 1398585, at *1 (E.D.Tenn. Apr.5, 2013) (following *First Time Videos, LLC* ); *Canal St. Films*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 3270663 (N.D.Ill.)
**(Cite as: 2013 WL 3270663 (N.D.Ill.))**

*v. Does 1–22,* No. 13–cv–999, 2013 WL 1775063, at *2n1 (M.D.Pa. Apr.25, 2013) (holding that plaintiff's factual assertion based on IP address as to John **Doe** defendants' location established personal jurisdiction for purposes of expedited discovery motion but that issue would be reexamined upon a contrary showing by a defendant). In this case, Plaintiff has alleged that it has traced the IP address of each Defendant to a point of origin in Illinois. (Compl.¶ 5.) This allegation is sufficient for personal jurisdiction for purposes of Plaintiff's motion; however, this issue may be revisited once the Defendants are named as parties in this action.

## CONCLUSION

For the foregoing reasons, Guava's Amended *Ex Parte* Application for Leave to Take Expedited Discovery [10] is hereby denied.

N.D.Ill.,2013.
Guava, LLC v. Does 1-5
Slip Copy, 2013 WL 3270663 (N.D.Ill.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 7

Westlaw

Not Reported in F.Supp.2d, 2013 WL 6797364 (N.D.Ill.)
(Cite as: 2013 WL 6797364 (N.D.Ill.))

C

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
Purzel Video GmbH, Plaintiff,
v.
Does 1–108, Defendants.

Case No. 13 C 0792
1:13–cv–00792Filed December 19, 2013

Kenneth Patrick Danzinger, Simmons Browder
Gianaris Angelides & Barnerd LLC, Alton, IL, Patrick
J. Keating, Chicago, IL, Paul A. Lesko, Simmons
Browder Gianaris Angelides & Barnerd LLC, Alton,
IL, for Plaintiff.

Jonathan Lucas Allen Phillips, Shay Kepple Phillips,
Ltd., Peoria, IL, Erin Kathryn Russell, The Russell
Firm, Charles Lee Mudd, Jr., Liz Brodzinski, Stepha-
nie Margaret Solera, Mudd Law Offices, Chicago, IL,
for Defendants.

## MEMORANDUM OPINION & ORDER

JOAN B. GOTTSCHALL United States District
Judge

*1 Plaintiff Purzel Video GmbH ("Purzel")
brings a three-count complaint for copyright in-
fringement, contributory copyright infringement, and
civil conspiracy against 108 unnamed "John Doe"
defendants.[FN1] Purzel alleges that the Doe defendants
used the BitTorrent software protocol to unlawfully
transfer a copyrighted adult motion picture, to which
Purzel holds the exclusive rights, in violation of the
United States Copyright Act, 17 U.S.C. § 101, et seq.
Purzel alleges that all of the defendants participated in
the same BitTorrent "swarm" between August 2012
and January 2013.

FN1. Pursuant to Federal Rule of Civil Pro-
cedure 41(a)(1)(A)(i), Purzel has voluntarily
dismissed with prejudice Does 55, 78, 79, 85,
90, 91, 101, 102, and 106. Purzel has dis-
missed Does 1, 4–6, 9, 11, 12, 15, 16, 19, 22,
24–27, 30, 31, 34, 37, 38, 40–42, 64, 67, and
73–75 without prejudice.

Now before the court are numerous motions by
the Doe defendants to quash the subpoenas issued by
Purzel to their Internet Service Providers ("ISPs") and
to sever and dismiss the individual Doe defendants
from this action, as well as Purzel's motion to compel
compliance with the nonparty subpoena issued to SBC
Internet Services, LLC d/b/a AT & T Internet Services
("AT & T"). For the reasons explained below, the
court rules as follows. The defendants' motions to
quash are denied, the motions to sever are denied
without prejudice, and count III of the complaint (the
civil conspiracy count) is dismissed. The defendants
will be allowed to proceed anonymously in this liti-
gation. Finally, Purzel's motion to compel AT & T's
compliance with the subpoena is granted.

## I. BACKGROUND

At the time the complaint was filed, the Doe de-
fendants were known to Purzel only by the Internet
Protocol ("IP") addresses assigned by their ISPs and
by the date and time at which the alleged infringement
was observed. Purzel alleges that each of the defend-
ants reside in Illinois. Purzel has issued subpoenas to
the ISPs seeking information sufficient to identify the
subscriber associated with each IP address. At this
early stage in the litigation, Purzel considers these
subscribers to be the Doe defendants, although it
acknowledges that they may prove not to be the actual
infringers of Purzel's copyright.[FN2]

FN2. In this order, the court also refers to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 6797364 (N.D.Ill.)
(Cite as: 2013 WL 6797364 (N.D.Ill.))

Doe defendants and ISP subscribers interchangeably for simplicity's sake, but it recognizes that at least some of the subscribers may not be the proper defendants in this action.

Some of the subscribers have been notified by their ISP that their information has been subpoenaed. A subset of this group has moved to quash the subpoena and/or requested that the court sever and dismiss them from this case. The following motions by Doe defendants are currently before the court:

• Motion to Quash, Sever, and Dismiss, and Motion to Proceed Anonymously [17] by **Doe 56**, based on improper joinder and Purzel's inability to identify the actual downloader of copyrighted material based on the identity of the subscriber. **Doe 56** contends that s/he did not download the copyrighted film, that the subpoena is an improper attempt to extort a settlement, and that the complaint fails to state a claim of civil conspiracy.

**\*2** • Motion to Quash, Sever, and Dismiss, and Motion to Proceed Anonymously [20] by **Doe 103**. **Doe 103** raises the same arguments as **Doe 56**.

• Motion to Quash, Sever, and Proceed Anonymously [23] by **Doe 101**, based on improper joinder and Purzel's inability to identify the actual downloader based on the identity of the subscriber.

• Motion to Quash and Sever [48] by **Doe 48**, based on improper joinder and the First Amendment's protection of anonymous speech and association.

Also before the court is Purzel's motion to compel AT & T to produce documents sought through a nonparty subpoena. According to Purzel, forty-one of the **Doe** defendants utilized AT & T as their ISP. Purzel issued a subpoena to AT & T on February 26, 2013, seeking the production of the subscribers' iden-

tities. After AT & T objected, Purzel issued a new subpoena on April 30, 2013. AT & T again objected to the subpoena, necessitating the motion to compel.

## II. THE DOE DEFENDANTS' MOTIONS

As an initial matter, **Doe 101**'s motion [23] is denied as moot because Purzel has voluntarily dismissed **Doe 101** from this action with prejudice. The issues raised in the remaining motions to quash and sever have been considered at length in the opinions of other courts in this district, and this court's discussion is therefore brief.

### A. The BitTorrent Software Protocol

Purzel alleges that the **Doe** defendants each used the **BitTorrent** software protocol to download and distribute its copyrighted motion picture. Many fellow district courts have described the **BitTorrent** protocol in detail. *See, e.g., TCKY, LLC v. Does 1–87,* No. 13 C 3845, 2013 WL 3465186 (N.D.Ill. July 10, 2013); *Malibu Media, LLC v. John Does 1–25,* No. 12 C 9655 (N.D.Ill. Apr. 24, 2013); *Malibu Media, LLC v. John Does 1–6,* 291 F.R.D. 191 (N.D.Ill.2013); *Malibu Media, LLC v. Reynolds,* No. 12 C 6672, 2013 WL 870618 (N.D.Ill. Mar. 7, 2013). To summarize briefly, the **BitTorrent** protocol breaks up large digital files into smaller pieces. Participants in a **BitTorrent** file-sharing instance (a "swarm") download these individual pieces from other peer participants. When an individual piece has been downloaded, the protocol permits a participant to make that piece available for peers to download. When a participant has downloaded copies of all of the pieces that made up the original file, the software assembles a copy of the file from the constituent pieces. After his or her own copy is assembled, the user may elect to leave the **BitTorrent** software running, which makes pieces of the file available for new peers to download. A **BitTorrent** user may leave the swarm at any time, before or after completing her download, ending her participation in both downloading and sharing. A user may also rejoin the swarm at a later time to complete her download or to continue sharing pieces with other

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 6797364 (N.D.Ill.)
(Cite as: 2013 WL 6797364 (N.D.Ill.))

peers. Thus, while a participant in the swarm is downloading the file, and possibly even afterwards, that participant may also be acting as a source for the download of portions of the file by other peers in the swarm. In this case, the complaint alleges that each of the **Doe** defendants participated in the same **Bit-Torrent** swarm to download and distribute Purzel's copyrighted motion picture.

**B. Motions to Quash**

*3 The **Doe** defendants argue that the subpoena should be quashed because an IP address does not identify an individual infringing downloader, and because their privacy interests and First Amendment rights would be violated if their ISP provided their names and contact information to Purzel. The issues raised in the motions to quash have been addressed by this court in previous orders. *See, e.g., Purzel Video GmbH v. Does 1–84,* No. 13 C 2501, 2013 WL 4478903 (N.D.Ill. Aug. 16, 2013); *Bicycle Peddler, LLC v. Does 1–99,* No. 13 C 2375, 2013 WL 4080196 (N.D.Ill. Aug. 13, 2013).

Federal Rule of Civil Procedure 45(a) allows the issuance of subpoenas to produce documents in a person or entity's custody or control. The rule requires a court to quash or modify a subpoena if it: "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter ...; or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3)(A). The party moving to quash bears the burden of showing that the subpoena falls into one of these impermissible categories. *Pac. Century Int'l, Ltd. v. Does 1–37,* 282 F.R.D. 189, 193 (N.D.Ill.2012) (citing *Williams v. Blagojevich,* No. 05 C 4673, 2008 WL 68680, at *3 (N.D.Ill. Jan. 2, 2008)). In assessing whether a subpoena imposes an undue burden, the court considers whether the "burden of compliance with it would exceed the benefit of production of the material sought." *Nw. Mem'l Hosp. v. Ashcroft,* 362 F.3d 923, 927 (7th Cir.2004).

A plaintiff alleging copyright infringement is entitled to the information sought through the subpoenas, and the subpoenas impose no undue burden on the **Doe** defendant, who is not the party who must comply with the subpoena. *See, e.g., Malibu Media, LLC v. Reynolds,* 2013 WL 870618, at *6. Several **Doe** defendants argue that the subpoena should be quashed because they did not download the movie in question, and someone else could have used their IP address to do so. But the fact that the customer associated with the IP address may not be the actual infringer is not a basis to quash the subpoena. As Judge Gettleman recently explained in *reFX Audio Software,*

[E]ven if defendants have standing, there is no merit to the challenge to the subpoenas. [The] argument that the subpoena should be quashed because the information sought will not itself identify the actual infringer demonstrates a lack of understanding of the basic scope of discovery under the federal rules. "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed.R.Civ.P. 26(b)(1).... Even if the customer associated with the IP address is not necessarily the person who illegally download[ed] plaintiff's software, the customer's name is the first step in identifying the proper defendant.

*reFX Audio Software, Inc. v. Does 1–111,* No. 13 C 1795, 2013 WL 3867656, at *2 (N.D.Ill. July 23, 2013).

**Doe** 48 further argues that the subpoena should be quashed because the First Amendment protects his or her right to engage in anonymous speech on the internet. But the court finds that the **Doe** defendants' right to anonymous speech does not outweigh Purzel's

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 6797364 (N.D.Ill.)
(Cite as: 2013 WL 6797364 (N.D.Ill.))

interest in protecting its copyright. Although the defendants do have a right to express themselves anonymously on the internet, those speech rights are limited and are outweighed by Purzel's need for the subpoenaed information. In *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 248–49 (N.D.Ill.2011), Judge Castillo rejected an argument similar to that raised here, explaining that the plaintiff copyright holder had made "a concrete showing of a prima facie claim of actionable harm" by alleging the infringement of its valid copyright, had specifically requested information likely to allow it to identify the defendants, and had no other way to identify the infringers. *Id.* (citing *Sony Music Entm't Inc. v. Does 1–40*, 326 F.Supp.2d 556, 564–65 (S.D.N.Y.2004)). Furthermore, the **Doe** defendants' expectation of privacy was limited because they had provided their subscriber information to their ISPs. *Id.* at 249.

*4 The other arguments offered by the **Doe** defendants in support of their motions to quash the subpoena essentially amount to a denial of liability—they contend that they were not the infringing parties. Such arguments go to the merits of the action and are "not relevant as to the validity or enforceability of a subpoena, but rather should be presented and contested once parties are brought properly into the suit." *Hard Drive Prods. v. Does 1–48*, No. 11 C 9062, 2012 WL 2196038, at *4 (N.D. Ill. June 14, 2012).

Because the subpoenas will yield information relevant to Purzel's claims, and because the requirements of Rule 45 are satisfied, the court denies the motions to quash. The court will, however, modify the subpoena to the extent they command information other than the names and geographic addresses of the **Doe** defendants. The defendants' telephone numbers and email addresses need not be provided. The court will also require Purzel to refrain from publishing the **Doe** defendants' identities without further leave of the court, as **Does** 56 and 103 request in their motions. Numerous courts have deemed it prudent to allow defendants to proceed by pseudonym during prelimi-

nary stages of copyright infringement proceedings, given the "substantial possibility that the names turned over by ISPs will not accurately identify the individuals who actually downloaded or shared the copyrighted material." *TCYK, LLC v. Does 1–87*, 2013 WL 3465186, at *4. Accordingly, Purzel must identify the defendants in all filings with the court only by **Doe** number or IP address. Furthermore, any communication by Purzel to a defendant suggesting that the defendant can or will be named in this action shall constitute a violation of this court's order and grounds for dismissal of the action against that defendant pursuant to Federal Rule of Civil Procedure 41(b).

**C. Permissive Joinder (Rule 20)**

The **Doe** defendants also argue that it is inappropriate to join, in a single suit, many anonymous defendants who have allegedly participated in the same **BitTorrent** swarm. Under Federal Rule of Civil Procedure 20(a)(2), persons may be joined "in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Joinder is strongly encouraged. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). The **Doe** defendants argue, however, that the requirements for joinder pursuant to Rule 20(a)(2) are not satisfied because they did not participate in the same transaction or series of transactions, nor do their cases share common questions of law or fact.

District courts across the nation are split as to whether and when participation in **BitTorrent** swarm can constitute a "transaction, occurrence, or series of transactions or occurrences" under Rule 20. Some district courts have held that alleging any participation by defendants in the same **BitTorrent** swarm is enough to satisfy the requirement that the claims arise out of a "series of transactions or occurrences." Other courts have held that proper joinder depends upon

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 6797364 (N.D.Ill.)
(Cite as: 2013 WL 6797364 (N.D.Ill.))

allegations that defendants were present in the same swarm at the same time, participated in a swarm in close temporal proximity, or shared data directly with each other. *See Malibu Media, LLC v. John Does 1–6,* 291 F.R.D. at 203 (collecting cases).

*5 This court is persuaded by Judge Castillo's opinion in *Malibu Media, LLC v. John Does 1–6,* which reasons that all that Rule 20 requires "is a logical relationship between the separate causes of action," not a precondition of acting "in concert" or "temporal distance or temporal overlap." *Id.* at 204. Judge Castillo noted that in **BitTorrent** cases, "[t]he shared operative facts are not solely that each **Doe** Defendant used **BitTorrent**, but that 'each **Doe** Defendant downloaded the same Torrent file that was created by the same initial seeder, intending to: 1) utilize other users' computers to download pieces of the same [copyrighted works], and 2) allow his ... own computer to be used in the infringement by other peers and Defendants in the same swarm.' " *Id.* at 202 (quoting *Patrick Collins, Inc. v. Does 1–21,* 282 F.R.D. 161, 165 (E.D.Mich.2012)). Similarly, Judge Tharp has emphasized that "**BitTorrent** requires a cooperative endeavor among those who use the protocol. Every member of a swarm joins that cooperative endeavor knowing that, in addition to downloading the file, they will also facilitate the distribution of that identical file to all other members of the swarm." *TCYK, LLC v. John Does 1–87,* 2013 WL 3465186, at *4. The court agrees with Judges Castillo and Tharp that " 'it is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file—could not constitute a 'series of transactions or occurrences' for purposes of Rule 20(a).' " *Id.* (quoting *Digital Sin, Inc. v. Does 1–176,* 279 F.R.D. 239, 244 (S.D.N.Y.2012)). *See also Bicycle Peddler, LLC v. Does 1–12,* No. 13 C 2372, 2013 WL 3455849, at *3–4 (N.D.Ill. July 9, 2013).

The complaint in this case alleges that the **Doe** defendants interacted with one another indirectly through participation in the same **BitTorrent** swarm. The copy of the motion picture that each defendant allegedly downloaded came from the same source or seed file. Based on these allegations, the claims against the defendants arise out of the same transaction or occurrence for the purposes of Rule 20(a).

Furthermore, Rule 20(a)(2)(B)'s requirement that the claims involve shared questions of law or fact common to all the defendants is also satisfied. Purzel has asserted the same claim against all of the **Doe** defendants. The claims against each defendant rest on the question of whether transferring the motion picture through a **BitTorrent** swarm infringed upon Purzel's copyright, in violation of the Copyright Act. *See Malibu Media, LLC v. John Does 1–6,* 291 F.R.D. at 205.

**D. Discretionary Severance (Rule 21)**

Even though Purzel has satisfied the requirements for permissive joinder under Rule 20(a), the court has broad discretion to sever a party at any time. *See Sunlust Pictures, LLC v. Does 1–75,* No. 12 C 1546, 2012 WL 3717768, at *3 (N.D.Ill. Aug. 27, 2012). Federal Rule of Civil Procedure 21 provides that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Rule 21 gives the court discretion to sever any claim and proceed with it separately if doing so will increase judicial economy and avoid prejudice to the litigants. *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.,* 754 F.2d 738, 743 (7th Cir.1985).

The motions to quash and sever demonstrate that the defendants may have individualized legal and factual defenses. Other courts have expressed concern that joinder of large numbers of defendants in **BitTorrent**-related copyright infringement lawsuits will impede just, speedy, and inexpensive resolution of the cases. *See, e.g., Malibu Media, LLC. v. Reynolds,*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 6797364 (N.D.Ill.)
(Cite as: 2013 WL 6797364 (N.D.Ill.))

2013 WL 870618, at *14 (noting that "each defendant is likely to assert a unique defense"); *Third Degree Films v. Does 1–47,* 286 F.R.D. 188, 196 (D.Mass.2012) ("The Court simply cannot see how it 'promote[s] trial convenience' to hold forty-seven mini-trials and ask one jury to make findings as to each of them."); *Patrick Collins, Inc. v. Does 1–38,* No. 12–10756–NMG, 2013 WL 1175245, at *11 (D.Mass. Mar. 19, 2013) (finding that joinder would create "significant logistical difficulties" where 34 Doe defendants remained). The court also notes that the Local Rules of the Central District of California state that a complaint may include no more than ten "Doe or fictitiously named parties." C.D. Cal. L.R. 19–1.

*6 At this stage in the proceedings, however, these concerns are largely hypothetical. In the court's experience with similar cases, logistical nightmares have yet to arise. Indeed, at least at the early stages of the proceedings, the defendants have raised similar legal arguments, and addressing these in the context of one suit has streamlined the court's work. Severing the defendants would require the court to address the same factual and legal issues in multiple cases. *See Malibu Media, LLC v. John Does 1–6,* 291 F.R.D. at 205. Joinder is encouraged, *Gibbs,* 383 U.S. at 724, and joinder at this stage of the litigation is more efficient than requiring Purzel to file many separate cases in order to obtain the discovery required to identify those responsible for downloading and distributing its motion picture. Moreover, although the court acknowledges that naming large numbers of Doe defendants in a single action deprives the federal courts of filing fees, the Northern District of Illinois has yet to adopt a Local Rule, like that adopted by the Central District of California, limiting the number of Doe defendants in a single action.

The court therefore denies, without prejudice, the Doe defendants' motions to sever and dismiss. This ruling does not foreclose a future challenge to joinder by Doe defendants who have been identified and served. *See id.* ("At this stage of the litigation, it appears that joinder will be manageable.... If joinder becomes unwieldy at a later stage of the litigation, however, the Court may sever ... pursuant to Federal Rule of Civil Procedure 21.").

## III. THE CONSPIRACY CLAIM

In count III of the complaint, Purzel brings a common-law claim of civil conspiracy based upon the underlying act of copyright infringement. Does 56 and 103 argue that Purzel has not pleaded the required elements of a civil conspiracy claim. The court construes their motions as motions to dismiss count III pursuant to Federal Rule of Civil Procedure 12(b)(6).

The complaint does not specify whether the civil conspiracy claim is brought pursuant to Illinois or federal law, but the court interprets it as a state law claim, as Illinois recognizes a common-law cause of action for civil conspiracy. In Illinois, a civil conspiracy is defined as " 'a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means.' " *McClure v. Owens Corning Fiberglas Corp.,* 720 N.E.2d 242, 258 (Ill.1999) (quoting *Buckner v. Atl. Plant Maint., Inc.,* 694 N.E.2d 565, 571 (Ill.1998)). A plaintiff must allege facts establishing both (1) an agreement to accomplish such a goal and (2) a tortious act committed in furtherance of that agreement. *Id.* Here, Does 56 and 103 contend that Purzel has failed to plead the existence of any agreement between the Doe defendants.

The court need not decide whether the complaint adequately alleges an agreement. Even assuming that the pleading is adequate in that respect, the civil conspiracy claim is not viable. The Copyright Act preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a). In this case, the act alleged to be in furtherance of the alleged conspiracy is copyright infringement. The civil conspiracy claim in count III seeks to vindicate

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 6797364 (N.D.Ill.)
(Cite as: 2013 WL 6797364 (N.D.Ill.))

the same rights as the direct copyright infringement claim in count I and the contributory copyright infringement claim in count II.

Because a state-law civil conspiracy claim for copyright infringement is not qualitatively different from a federal copyright infringement claim, it is preempted by the Copyright Act. *See Do It Best Corp. v. Passport Software, Inc.,* No. 01 C 7674, 2005 WL 743083, at *14 (N.D.Ill. Mar. 31, 2005); *Higher Gear Grp., Inc. v. Rockenbach Chevrolet Sales, Inc.,* 223 F.Supp.2d 953, 956, 960 (N.D.Ill.2002) (dismissing civil conspiracy claim as preempted by the Copyright Act); *cf. Stereo Optical Co. v. Judy,* No. 08 C 2512, 2008 WL 4185689, at *5 (N.D.Ill. Sept. 8, 2008) (allowing a civil conspiracy claim to proceed only as to claims distinct from a copyright infringement cause of action). *See also Two Palms Software, Inc. v. Worldwide Freight Mgmt., LLC,* 780 F.Supp.2d 916, 922 (E.D.Mo.2011) ("[T]he majority of courts that have considered this issue have held that civil conspiracy claims are preempted under the Copyright Act."). The court therefore dismisses count III of the complaint.

## IV. MOTION TO COMPEL AT & T'S COMPLIANCE WITH THE SUBPOENA

*7 AT & T has filed an opposition to Purzel's motion to compel its compliance with the subpoena. AT & T presents two general lines of argument. First, it essentially repeats the **Doe** defendants' arguments that joinder of multiple **Doe** defendants in the same suit, solely on the basis of their participation in the same **BitTorrent** swarm, is improper under Rule 20, and that the identification of the defendants by their IP addresses is too imprecise and threatens the interests of innocent subscribers. The court has addressed the joinder argument above, with respect to the motions to quash and sever brought by the **Doe** defendants, and it adheres to that reasoning. The court recognizes that many district courts have come to a contrary conclusion on the issues of joinder and severance, and it reiterates that the denial of the motions to sever is

without prejudice, should problems of case manageability become real and not simply hypothetical.

As to the possible lack of identity between the IP subscriber and the alleged infringer, the information sought through the subpoena is relevant to Purzel's claims, as it is a necessary step to identifying the proper defendants. Federal Rule of Civil Procedure 26(b)(1) allows a party to "obtain discovery regarding any nonprivileged matter that is relevant to the claim or defense of any party—including the ... identity and location of persons who know of any discoverable matter." The information sought need not be admissible as long as it "appears reasonably calculated to lead to the discovery of admissible information." Fed.R.Civ.P. 26(b)(1). Here, the subscriber's identity is necessary in order for Purzel to identify the person who has allegedly infringed its copyright, and there is no less burdensome approach to obtaining that information than to subpoena it from the ISP. *See, e.g., Malibu Media v. John Does 1–49,* No. 12 C 6676, 2013 WL 4501443, at *2 (N.D.Ill. Aug. 22, 2013) (Dow, J.) ("It is not a wild assumption on Plaintiff's part that the subscriber may be the alleged infringer or may lead to the alleged infringer. Without connecting the IP address to a person, Plaintiff would have no way of prosecuting infringement of its claimed copyright.").

AT & T also emphasizes, as the individual defendants have, the potential for coercive tactics on Purzel's part that might extract settlements from innocent parties, especially given the subject-matter of the copyrighted material at issue in this case. AT & T points out that Purzel has sent letters to **Doe** defendants in other cases threatening to name them publicly if they do not satisfy Purzel's settlement demands. The court expects, however, that by allowing the defendants to proceed anonymously in this action and limiting the information provided by AT & T to subscribers' names and geographical addresses, that coercion will be limited, and defendants will be more likely to present any potentially meritorious defenses they may

Not Reported in F.Supp.2d, 2013 WL 6797364 (N.D.Ill.)
(Cite as: 2013 WL 6797364 (N.D.Ill.))

have. As previously stated, should Purzel threaten to name a defendant publicly, the court will dismiss the action against that defendant as a sanction for the violation of the court's order.

AT & T further argues that the subpoena places an undue burden on it, and should be denied pursuant to Federal Rule of Civil Procedure 45. As stated above, Rule 45 provides that the court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter ...; or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3)(A). The court must determine whether the "burden of compliance with it would exceed the benefit of production of the material sought." *Nw. Mem'l Hosp.,* 362 F.3d at 927.

AT & T argues that it is unduly burdened by the subpoena for the following reasons:

> The process of performing an IP lookup can be complicated and time-intensive, especially when concerns for accuracy and quality control measures are taken into account. And the IP lookup process is only one step. In these cases, the lookup would typically be followed by notices to subscribers, responding to subscriber inquiries, monitoring the responses and various deadlines, and monitoring the progress and outcome of motions in various courts. And all of this is for naught if the allegations, joinder of multiple defendants, or other fundamental aspects of the underlying lawsuit or the discovery sought are found to be insufficient and/or improper. The handling of subpoenas is even more burdensome in connection with the often-careless, increasingly unsuccessful, "factory" approach to litigation and subpoenas pursued by Plaintiff and its attorneys here.

*8 (Opp. to Mot. to Compel 11, ECF No. 63–1

(emphasis in original).) AT & T also complains that Purzel has issued improper subpoenas and reissued or withdrawn subpoenas, and otherwise conducted its litigation in a sloppy fashion. (*Id.* at 11 n.14.)

Obviously, responding to a subpoena seeking information for dozens of subscribers is more difficult than satisfying a subpoena for a single subscriber. But it is not clear to the court that responding to a multiple-subscriber subpoena is actually more burdensome than responding to dozens of individual subpoenas, which is what AT & T would be required to do were the court to require Purzel to pursue claims against the **Doe** defendants individually. Furthermore, to the extent that looking up subscriber information and responding to subscriber inquiries is costly to AT & T, Purzel has pointed out that in similar cases, AT & T has charged Purzel a fee per subscriber look-up, which presumably offsets at least some of that expense. (*See* Mot. to Compel Ex. G (Nov. 30, 2012 letter), ECF No. 45–7.)

AT & T also argues that Purzel has not established good cause for the discovery sought. In fact this appears to be the crux of AT & T's argument: that "*any burden whatsoever* " is "undue" because of the nature of this litigation. (*Id.* at 11 (emphasis in original).) The court disagrees. As explained above, the information sought by Purzel is relevant and discoverable under Rule 26. In fact, it is essential to Purzel's case. *See reFX Audio Software Inc. v. Does 1–141,* No. 13–cv–940, 2013 WL 5835704, at *2 (N.D.Ill. Oct. 28, 2013) (Bucklo, J.) ("I find that the link between the copyrighted material and the alleged infringement is sufficient to withstand a good cause attack.").

Two courts in this district have denied motions to compel AT & T's compliance with similar subpoenas.[FN3] One court denied the motion because it concluded that joinder was improper. *See id.* For the reasons set out above, this court has reached a different conclusion on that issue. The other court denied the motion because it found that the subpoena placed

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 6797364 (N.D.Ill.)
(Cite as: 2013 WL 6797364 (N.D.Ill.))

an undue burden on AT & T. *reFX Audio Software Inc. v. Does 1–115,* Order Dec. 12, 2013, at 2, No. 13 C 1794 (N.D.Ill.) (Darrah, J.) ("AT & T has persuasively demonstrated the burden of accurately identifying the subscriber information for numerous unnamed defendants as well as monitoring the responses to the subpoena, including whether subscribers file motions to oppose the subpoena."). But the order considered only the burden responding to the subpoena imposed on AT & T; it did not address the plaintiff's need for the information sought through the subpoena.

> FN3. Similar motions to compel are currently pending in at least two other cases in this district.

Under Seventh Circuit case law, the court cannot consider only AT & T's burden. It must weigh the relevant interests and hardships of both parties. *Nw. Mem'l Hosp.,* 362 F.3d at 928. Here, given that Purzel simply cannot proceed with its claims against alleged infringers without information identifying AT & T's subscribers, the balance tilts in favor of granting the motion to compel AT & T's compliance with the subpoena. As previously stated, the subpoena is modified so as to require AT & T to provide only the subscriber's name and geographical address, and Purzel may not threaten to publicly name the subscriber should the subscriber fail to agree to a quick settlement of Purzel's claim.

*9 AT & T requests, in the alternative, that the court certify the issues presented in Purzel's motion to compel for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). Section 1292(b) states that when a district court judge believes that an order for an interlocutory appeal involves a controlling question of law, regarding which there is a substantial ground for difference of opinion, and that an immediate appeal from the order could materially advance the ultimate termination of the litigation, the district judge may certify the request for an appeal. The appellate court may

then permit the appeal at its discretion. *See* 28 U.S.C. § 1292(b).

The court declines to certify the motion to compel for an interlocutory appeal for several reasons. First, although district courts have differed strongly in their approaches to **BitTorrent** litigation, whether to require a party to comply with a subpoena is committed to the discretion of the district judge. *Nw. Mem'l Hosp.,* 362 F.3d at 928. Second, the controlling questions at issue here are not "pure" questions of law, which "the court of appeals could decide quickly and cleanly without having to study the record." *Ahrenholz v. Bd. Of Trs.,* 219 F.3d 674, 676–77 (7th Cir.2000). Rather, they are highly fact-dependent. And finally, an immediate appeal will not materially advance the termination of the litigation. It would instead cause considerable delay. In sum, the court **does** not believe that exceptional circumstances exist that would justify an interlocutory appeal in this case.

## V. PURZEL'S NOTICE OF AFFILIATES

The Northern District of Illinois' Local Rule 3.2 requires "[a]ny nongovernmental party, other than an individual or sole proprietorship," to "file a statement identifying all its publicly held affiliates." L.R. 3.2 (N.D.Ill.) "Affiliates" is defined, for the purposes of the rule as "any member" when the party is a "general partnership, joint venture, LLC, LLLP, or LLP." *Id.* This notice of affiliates must be filed "with the complaint or answer, or upon filing a motion, response, or petition, whichever occurs first." *Id.*

On January 31, 2013, Purzel filed along with its complaint "Plaintiff's Corporate Disclosure Statement Pursuant to Federal Rule of Civil Procedure 7.1 and Northern District of Illinois Local Rule 3.2." (ECF No. 3.) In this filing, Purzel advised the court only that "Purzel Video GmbH is not the subsidiary of any parent corporation, nor **does** any corporation hold 5% or more of Plaintiff's stock." (*Id.*)

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 6797364 (N.D.Ill.)
**(Cite as: 2013 WL 6797364 (N.D.Ill.))**

This notice was improper. A GmbH is a German LLC. Local Rule 3.2 is clear that in the case of LLCs, affiliates include "any member." A proper notice of affiliates for an LLC should disclose any member of the company. *Malibu Media, LLC v. John Does 1–6,* 291 F.R.D. at 208. Purzel must file an amended notice of affiliates that identifies its members.

### VI. CONCLUSION

The court resolves the motions pending in this case as follows. The motion to quash brought by **Doe** 101 is denied as moot. The remaining **Doe** defendants' motions to quash are denied. The **Doe** defendants' motions to sever are denied without prejudice. Count III of the complaint is dismissed. Purzel's motion to compel AT & T's compliance with the subpoena is granted, and the court denies AT & T's request to certify the issues presented for immediate appeal. The subpoenas issued to the ISPs are modified to command production only of the **Doe** defendants' names and geographic addresses. For the time being, the defendants may proceed anonymously in this litigation, and Purzel shall not publish the **Doe** defendants' identities without further leave of the court; it must identify them only by IP address or **Doe** number in any filing with the court. Finally, Purzel is ordered to file an amended notice of affiliates that identifies its members, in compliance with Local Rule 3.2, within fourteen days of this order.

N.D.Ill., 2013
Purzel Video GmbH v. Does 1-108
Not Reported in F.Supp.2d, 2013 WL 6797364 (N.D.Ill.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 8

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

▷

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
MALIBU MEDIA, LLC, Plaintiff,
v.
David J. REYNOLDS, Felix Stanek, Gregory Blake
and John Does 2–8, 10, 11, 14, and 15, Defendants.

No. 12 C 6672.
March 7, 2013.

Mary K. Schulz, Schulz Law, P.C., Geneva, IL, Paul
Joseph Nicoletti, Nicoletti & Associates, PLLC,
Bloomfield Hills, MI, for Plaintiff.

Erin Kathryn Russell The Russell Firm Chicago, IL,
for Defendants.

David J. Reynolds Grayslake, IL, pro se.

### MEMORANDUM OPINION AND ORDER
VIRGINIA M. KENDALL, District Judge.

*1 Plaintiff Malibu Media, LLC ("Malibu Media"), a California film company that owns copyrights to a large number of pornographic films, filed this suit against David J. Reynolds, Felix Stanek, Gregory Blake, and eleven other anonymous defendants known to Malibu Media only by their alleged Internet Protocol ("IP") address (collectively, the "Defendants").[FN1] Malibu Media alleges that the Defendants committed direct and contributory infringement by copying and distributing a website containing fifteen federally registered copyrighted movies owned by Malibu Media in violation of the United States Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.* One of the unidentified defendants, John Doe 15

("Doe 15"), moves for an Order to Show Cause for why Malibu Media's Complaint should not be dismissed for lack of standing. Doe 15 also moves to quash a subpoena served by Malibu Media upon Doe 15's Internet Service Provider, sever based on improper joinder, and proceed anonymously through the dispositive motion phase of this case. For the reasons stated herein, Doe 15's Motion to Quash and Motion to Show Cause are denied. Doe 15's Motion to Proceed Anonymously is granted. Because the Court, on its own motion, severs all remaining Defendants in this case with the exception of Doe 15, Doe 15's Motion to Sever is denied as moot.

FN1. On February 14, 2013, Malibu Media voluntarily dismissed Does 2–8, 10, 13, and 14 (Dkt.Nos.44, 47–48.) The only remaining defendants are David J. Reynolds, Felix Stanek, Gregory·Blake, Doe 11, and Doe 15.

### BACKGROUND
Malibu Media alleges that the Defendants were all users of "BitTorrent," a file sharing protocol (or set of computer rules) commonly used for distributing and sharing data on the Internet. According to Malibu Media each of the Defendants used the BitTorrent protocol to copy and distribute, without authorization, a torrent file containing fifteen of Malibu Media's registered works (the "Works"). Investigators retained by Malibu Media identified fifteen IP addresses, listed in Exhibit A of Malibu Media's Amended Complaint, that are alleged to have used the BitTorrent protocol to reproduce or distribute the Works. The individuals using these IP addresses are alleged to have engaged in infringing activity on different dates between June 9, 2012 and July 28, 2012 (Pl.Ex.A, Dkt. No. 24–1, p. 1.)

BitTorrent is a peer-to-peer file sharing system used to transfer files over the Internet. The BitTorrent

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

protocol's popularity stems from its ability to distribute large files without imposing a heavy burden on the source computer and network. Before **BitTorrent**, users seeking to download data through peer-to-peer file sharing networks relied on the single-source technique, which required a user to form a one-to-one connection with a host computer for the purpose of downloading a file from that host. While the single-source method may have been adequate for transferring relatively small amounts of data, it proved cumbersome for users seeking to transfer larger data files. This is because the single source method requires one host computer and network to shoulder the entire burden of uploading a file to a particular user. The **BitTorrent** protocol overcomes this limitation by allowing users to join a "swarm" of host computers to download and upload fractions, or "pieces," of large files from each other simultaneously, resulting in a reduced load on any one computer. While use of the **BitTorrent** protocol itself is not illegal, many of its users use it to unlawfully download and distribute copyrighted works.

*2 In order to join a swarm and use the **Bit-Torrent** protocol, a user must first download a **BitTorrent** "Client Program," a software program that serves as the user's interface during the process of uploading and downloading data. Individuals who join a swarm to download and distribute a particular file are called "peers." A swarm is composed of two types of peers: "leechers" and "seeds." "A leecher is a peer in the process of acquiring a file. A seed is a peer that already has a complete copy of the file and that remains in the torrent to serve the leechers. Every torrent requires at least one seed." Annemarie Bridy, *Is Online Copyright Enforcement Scaleable?*, 13 Vand. J. Ent. & Tech. L. 695, 700 (2011). When a seed user decides to distribute a new file, he or she uses the Client Program to create a "torrent descriptor file." The Client Program then takes the target computer file, also known as the "Initial Seed," and divides it into segments called "pieces." Once the initial seed is divided into pieces, the Client Program assigns each

piece a unique alphanumeric identifier (a "hash identifier") and records each piece's hash identifier within the torrent descriptor file. After the Initial Seed is created and uploaded to a torrent site, other peers may begin to download and upload pieces of the computer file to which the torrent is linked. **BitTorrent's** groundbreaking feature—its ability to allow users to pull small pieces of a sought-after file from several host computers—ensures that no single host is burdened with the task of uploading the entire file to a particular user. In order to protect the integrity of each piece and to ensure that any modification to a piece can be reliably detected, the hash identifier for a particular piece is compared to the hash identifier recorded in the torrent descriptor file for that piece every time it is downloaded by another user. Thus the hash identifier works like an electronic fingerprint, identifying the source and origin of the piece and verifying that the piece is authentic, error-free, and uncorrupted.

In order to download a file using the **BitTorrent** protocol, a peer user must access a "torrent site," which indexes torrent files currently available for copying and distribution. As a peer receives pieces of the seed file, that peer automatically begins to upload those pieces to other peers in the swarm. In this way, **BitTorrent's** architecture resolves the free-rider problem that plagued older file-sharing networks such as Napster, Kazaa, and Limewire. Unlike its predecessors, which allowed users to download the content they desired without ever having to upload content to other peers, **BitTorrent** forces every downloader to also be an uploader of the transferred file, "making it architecturally impossible for any peer on the network to take without giving." *Id.* at 700–01; *see also Call of the Wild Movie, LLC v. Does 1–1062*, 770 F.Supp.2d 332, 343 (D.D.C.2011). The **BitTorrent** protocol does not entirely avoid the free-rider problem, however, because a peer is only forced to "pay it forward" by uploading to other users *while he or she remains connected to the swarm*. A peer may still avoid the burden of uploading to other peers by disconnecting from the swarm after obtaining a complete copy of the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

desired file.

*3 Once a peer user has received every piece of the file, the **BitTorrent** Client Program rearranges the various pieces into their correct order, resulting in a file identical to the initial seed. This file becomes an additional seed within the same swarm, and remains available to other peers as long as the user that is in possession of the file remains connected to the swarm through the Client Program. The presence of the additional seed file also increases the speed, efficiency, and reliability of downloading activity for future peers entering the swarm. *See Digital Sin, Inc. v. Does 1–27,* No. 12 Civ. 3873(JMF), 2012 WL 203 6035, at *1 (S.D.N.Y. June 6, 2012). Therefore, users derive a benefit from the interconnected architecture of the **BitTorrent** protocol even though they generally do not communicate with one another and will not have information about other users in their swarm other than their IP addresses. However, if a peer leaves the swarm after obtaining the seed file by closing the Client Program, changing the Client Program's settings to turn off automatic uploading, disconnecting from the Internet, or turning off his computer, peers who subsequently enter the swarm do not benefit from the earlier peer's activity.

## DISCUSSION

As the **BitTorrent** protocol allows users to share information anonymously, Malibu Media knows the eleven anonymous defendants only by their IP addresses. These IP addresses were assigned to the Defendants by their respective Internet Service Providers. On September 5, 2012, Malibu Media filed a motion for early discovery seeking leave to serve third party subpoenas pursuant to Rule 45 upon the unidentified Defendants' Internet Service Providers prior to a Rule 26(f) conference so that it may learn the **Doe** Defendants' true identities. **Doe** 15, one of the yet-to-be identified defendants in this action, argues the following in response to Malibu Media's motion for early discovery: (1) Malibu Media lacks standing to bring this action; (2) the subpoena seeking his identity should be quashed because it would impose an undue burden on Doe 15; (3) **Doe** 15 has been improperly joined in this lawsuit and should be severed from the case; and (4) **Doe** 15 should be permitted to proceed anonymously through the dispositive motion phase of the proceedings because his privacy interests outweigh the public's interest in knowing his identity.

## I. Standing

In order to acquire standing to pursue a claim for copyright infringement, a plaintiff must show the ownership of a valid copyright. *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *HyperQuest, Inc. v. N'Site Solutions, Inc.,* 632 F.3d 377, 381 (7th Cir.2011) ("The Copyright Act restricts the set of people who are entitled to bring a civil action for infringement to those who qualify as '[t]he legal or beneficial owner of an exclusive right under a copyright ....' ") (quoting 17 U.S.C. § 501(b)). Under the Copyright Act, copyright ownership "vests initially in the author or authors of the work." *Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 737, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) (quoting 17 U.S.C. § 201(a)). The author is "the party who actually creates the work, that is, the person who translates the idea into a fixed, tangible expression entitled to copyright protection." *Id; see also* 17 U.S.C. § 102. When a copyrighted work is classified as a "work for hire," the "employer or other person for whom the work was prepared is considered the author." 17 U.S.C. §§ 101, 201(b); *see also Billy–Bob Teeth, Inc. v. Novelty, Inc.,* 329 F.3d 586, 591 (7th Cir.2003).

*4 The Works at issue in this case were registered with the United States Copyright Office as "works for hire" under 17 U.S.C. § 201(b). According to **Doe**, these copyright registrations are defective because Malibu Media did not exist as an entity when any of the Works were created, thereby making it impossible for the works to be "made for hire" by Malibu Media. **Doe** maintains that as a result of this defect, Malibu Media lacks Article III standing in this action and

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

argues that the subpoena seeking his personal identifiers should therefore be quashed. Malibu Media **does** not dispute that the Works were registered with the Copyright Office as "works for hire," but explains that this designation was made by mistake. According to Malibu Media, each of the Works was created by Brigham Field ("Field"), Malibu Media's owner, and assigned to Malibu Media when Field formed the company in February of 2011. By the time Malibu Media decided to register its copyrights for the Works with the United States Copyright Office, it had created a number of additional films, and therefore possessed copyrights to movies produced both before and after it came into existence. Instead of registering the films under two separate classifications, Malibu Media accidentally registered *all* of its films as "works for hire,"—a classification that in fact should only have been applied to films created after Malibu Media was formed. Malibu Media states that it has since filed notices of correction with the United States Copyright Office to amend this classification.

The error in Malibu Media's registration with the United States Copyright Office **does** not deprive it of standing to enforce its copyrights. The Seventh Circuit has refused to invalidate copyrights based on challenges from alleged third-party infringers where the copyright at issue was mistakenly registered as a "work for hire" before the plaintiff entity existed and there is no dispute between the copyright owner and the transferee about the status of the copyright. *See Billy–Bob Teeth, Inc. v. Novelty, Inc., 329 F.3d 586, 591 (7th Cir.2003).* In *Billy–Bob Teeth,* the plaintiff mistakenly registered his copyright as a "work for hire" to a corporation that did not exist when the work was created. *Id.* at 589. The district court determined that because the work predated the plaintiff's existence, the plaintiff could not enforce a copyright registered as a "work made for hire." *Id.* at 590. On appeal, the Seventh Circuit agreed that the plaintiff could not claim that the work was made for hire because, among other things, the corporation was not formed until one year after the work was authored. *Id.* at 591.

However, the court found that the error on the registration was not fatal to the plaintiff's case. *See id .* (citing *Urantia Foundation v. Maaherra,* 114 F.3d 955, 963 (9th Cir.1997) ("[C]ase law is overwhelming that inadvertent mistakes on registration certificates do not ... bar infringement actions, unless the alleged infringer has relied to its detriment on the mistake, or the claimant intended to defraud the Copyright Office by making the misstatement."); *Data Gen. Corp. v. Grumman Sys. Support Corp.,* 36 F.3d 1147 (1st Cir.1994); *Whimsicality, Inc. v. Rubie's Costume, Co.,* 891 F.2d 452 (2d Cir.1989)).

**\*5** The facts here are strikingly similar. Field, like the plaintiff in *Billy–Bob Teeth,* registered his copyrights as "works for hire" to an entity that was not formed until after the work was authored. There is no dispute between Field and Malibu Media regarding the ownership of the copyrights, and Doe 15 **does** not refute that Field assigned all of his copyrights to Malibu Media, which then registered those copyrights with the United States Copyright Office. Based on these facts, the Court finds that the technical defect in Malibu Media's registration **does** not deprive it of standing to enforce its copyrights. *See Billy–Bob Teeth,* 329 F.3d at 592–93 ("[W]here there is no dispute between the copyright owner and the transferee about the status of the copyright, 'it would be unusual and unwarranted to permit a third-party infringer to invoke section 204(a) to avoid suit for copyright infringement.' ") (quoting *Imperial Residential Design, Inc. v. Palms Development Group, Inc.,* 70 F.3d 96, 99 (11th Cir.1995)). Accordingly, **Doe** 15's Motion to Show Cause is denied.

**II. Motion to Quash**
Federal Rule of Civil Procedure 45(a) permits the issuance of subpoenas to produce documents and other tangible things in the custody or control of a person. Fed.R.Civ.P. 45(a). Under Rule 45, a court must quash or modify a subpoena if it (1) fails to allow a reasonable time to comply; (2) requires a person who is neither a party nor a party's officer to travel more

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

than 100 miles; (3) requires disclosure of privileged or other matter, if no exception or waiver applies; or (4) subjects a person to undue burden. Fed.R.Civ.P. 45(c)(3)(A)(i)-(iv). The party seeking to quash a subpoena under Rule 45(c)(3)(A) bears the burden of demonstrating that the information sought subjects a person to undue burden. As with other discovery issues, deciding whether to grant a motion to quash lies within the sound discretion of the district court. *See, e.g., Sullivan v. Gurtner Plumbing, Inc.,* No. 11–cv–6261, 2012 WL 896159, at *1 (N.D.Ill. Mar.13, 2012) (citing *United States v. Ashman,* 979 F.2d 469, 495 (7th Cir.1992)).

Here, **Doe** 15 seeks to quash a subpoena issued to Comcast Cable ("Comcast"), **Doe** 15's Internet Service Provider and a nonparty in this case. As a general rule, **Doe** 15 lacks standing to quash a subpoena issued to a nonparty unless he has a claim of privilege attached to the information sought or unless it implicates his privacy interests. *See United States v. Raineri,* 670 F.2d 702, 712 (7th Cir.1982) ("A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests."). District courts in this circuit are divided on the issue of whether a **Doe** defendant accused of copyright infringement has standing to object to a subpoena issued to his Internet Service Provider. *Compare Sunlust Pictures, LLC v. Does 1–75,* No. 12 C 1546, 2012 WL 3717768, at *2 (N.D.Ill. Aug.27, 2012) (Tharp, J.) ( **Doe** defendant had standing to object to the issuance of a subpoena upon his Internet Service Provider because he possessed "at least a minimal privacy interest in the information requested by the subpoena ...."), *and Malibu Media, LLC v. John Does 1–14,* No. 12–CV–263, 2012 WL 6115653, at *2 (N.D.Ind. Dec. 10, 2012) (same), *with Third Degree Films, Inc. v. Does 1–2010,* No. 4:11 MC 2, 2011 WL 4759283, at *2 (N.D.Ind. Oct.6, 2011) ("A **Doe** defendant lacks standing to move to quash a subpoena on the ground of undue burden when the subpoena is directed to the ISP rather than to him.").

*6 The Court need not decide the issue here, however, because even if Doe 15 has standing to object to the subpoena, he has not demonstrated that its issuance will cause him undue burden. In determining whether a subpoena imposes an undue burden, the Court must ask whether "the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it." *Nw. Mem. 'l Hosp. v. Ashcroft,* 362 F.3d 923, 927 (7th Cir.2004). In this case,

Malibu Media served several subpoenas, including the subpoena implicating **Doe** 15, to the putative Defendants' Internet Service Providers. Because **Doe** 15 is not the party directed to respond to the subpoena and no action is required of him, he cannot maintain that the subpoena creates an undue burden on him. *See, e.g., Malibu Media, LLC v. John Does 1–14,* No. 1:12–CV263, 2012 WL 6115653, at *2 (N.D.Ind. Dec.10, 2012) ("[A]ny argument that this subpoena imposes an undue burden on Doe No. 12 fails because, as courts have consistently recognized, a subpoena directed at an ISP does not require the defendant to produce anything"); *Sunlust Pictures,* 2012 WL 3717768, at *2 ("The subpoena does not impose an undue burden on **Doe** because he is not the party directed to respond to it.); *Hard Drive Productions, Inc. v. Does 1–48,* No. 11–962, 2012 WL 2196038, at *3 (N.D.Ill. June 14, 2012) ("[T]he subpoenas do not burden [the anonymous defendant] because they do not require any action of [him]."); *First Time Videos, LLC v. Does 1–18,* No. 4:11–cv–69–SEB–WGH, 2011 WL 4079177, at *1 (S.D.Ind. Sept.13, 2011) ("[T]he issuance of a subpoena to the Internet Service Provider of putative defendants does not create an undue burden on the putative defendants because they are not required to produce anything."); *First Time Videos, LLC v. Does 1–500,* 276 F.R.D. 241, 250 (N.D.Ill.2011) (Castillo, J.) ("The subpoena's served on Doe Defendants' ISPs do not subject the Doe Defendant to an undue burden; if anyone may move to quash these subpoenas on the basis of an undue burden, it is the ISPs themselves, as they are compelled to

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

produce information under the subpoena."); *Voltage Pictures, LLC v. Does 1–5,000,* 818 F.Supp.2d 28, 36 (D.D.C.2011) (finding Doe defendant lacked standing to quash as subpoena on the ground of undue burden when the subpoena is directed to the Internet Service Provider rather than to him because the subpoena requires the Internet Service Provider, not the Doe Defendant, to produce information). Doe 15's Motion to Quash is therefore denied.

**III. Motion to Proceed Anonymously**

Doe 15 also moves, in the event that is Motion to Quash is denied, to proceed anonymously and for the entry of a protective order prohibiting the publication of his name through the dispositive motion phase of this case. Doe 15 argues that allowing his identity to be revealed publicly at this stage in the proceedings would enable Malibu Media to leverage Doe 15's fear of being embarrassed (for being named a defendant in a case involving illegally obtained pornography) to obtain settlement. Malibu Media has indicated to the Court that while it opposes a blanket protective order prohibiting *Malibu Media* from receiving Doe 15's identity, it does not object to allowing Doe 15 to remain anonymous through the end of discovery. However, even where a motion to proceed anonymously is unopposed, the court must make "an independent determination of the appropriateness" of the plaintiff's motion to conceal his name. *Doe v. City of Chicago,* 360 F.3d 667, 669 (7th Cir.2004) (finding error where district court judge did not make an independent determination of the plaintiff's unopposed motion to proceed anonymously).

*7 Courts have recognized that anonymous litigation may be permitted in "matters of a sensitive and highly personal nature such as birth control, abortion, homosexuality or the welfare rights of illegitimate children or abandoned families." *South Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707, 712–13 (5th Cir.1979). In this specific context, this Court is not the first to recognize that claims against mass defendants and motions to dis-

cover defendants' identities may be used to shame defendants into settlement agreements where they may otherwise have a meritorious defense. *See Sunlust Pictures,* 2012 WL 3717768, at *5 ("Judges within this district have recognized that plaintiffs in these types of cases might unfairly threaten to disclose defendants' identities in order to improperly leverage settlement negotiations.") (citing *Hard Drive Productions,* 2012 WL 2196038, at *6. Another court has described the "common arc" of plaintiffs' litigating tactics in such cases:

(1) a plaintiff sues anywhere from a few to thousands of Doe defendants for copyright infringement in one action; (2) the plaintiff seeks leave to take early discovery; (3) once the plaintiff obtains the identities of the IP subscribers through early discovery, it serves the subscribers with a settlement demand; (4) the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle. Thus, these mass copyright infringement cases have emerged as a strong tool for leveraging settlements-a tool whose efficiency is largely derived from the plaintiffs' success in avoiding the filing fees for multiple suits and gaining early access en masse to the identities of alleged infringers.

*MCGIP, LLC v. Does 1–149,* No. 11 C 2331, 2011 WL 4352110, at *4 n. 5 (N.D.Cal. Sep.16, 2011).

On the other hand, the fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners. *See Patrick Collins, Inc. v. John Does 1–9,* No. 12–CV–3161, 2012 WL 4321718, at *5 (C.D.Ill. Sep.18, 2012). It would be unfair to deprive owners of copyrights to pornographic material the same protections as owners of other copyrighted work. *See id; Malibu Media, LLC v. John Does 1–14,* No. 12–CV–263, 2012 WL 6019259 (N.D.Ind.2012) (finding that "the potential for embarrassment ... does not outweigh Plaintiff's statutory right to protect its property interest in its copyright").

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

Court must also consider the harm to the public interest in allowing **Doe** 15 to remain anonymous. *See Doe v. Smith,* 429 F.3d 706, 710 (7th Cir.2005) ("The public has an interest in knowing what the judicial system is doing, an interest frustrated when any part of litigation is conducted in secret.")

In this case, the harm to the public interest is minimal. **Doe** 15 **does** not request that the case move forward under seal, nor **does** he move for a blanket protective order barring disclosure of his identity for the duration of this litigation. Instead, **Doe** 15 asks that he be permitted to proceed under a pseudonym through the filing of dispositive motions in this case. This is especially appropriate where, as here, there is an increasing amount of uncertainty as to whether the IP address identified by Malibu Media's investigators actually reflects activity performed by the subscriber to that address. *See, e.g., Digital Sin v. Does 1–176,* 279 F.R.D. 239, 242 (S.D.N.Y.2012) (issuing protective order requiring that any information regarding **Doe** defendants be treated as confidential after expressing "concern [ ] about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those individuals who downloaded [copyrighted pornography]"); *see also In re BitTorrent Adult Film Copyright Infringement Cases,* No. 11–3995, 2012 WL 1570765, *3 (E.D.N.Y. May 1, 2012) (recognizing that due to the wide use of wireless routers, "the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time"). Furthermore, unlike cases where courts have disapproved of allowing a party to proceed anonymously, *see Doe v. City of Chicago,* 360 F.3d at 669; *Doe v. Blue Cross & Blue Shield United States of Wisconsin,* 112 F.3d 869, 872 (7th Cir.1997), it is the Defendant in this case who seeks the Court's leave to proceed anonymously, not the plaintiff. Under such circumstances, the Court is less concerned about parties seeking access to federal courts without revealing

their identity. *See Sunlust Pictures,* 2012 WL 3717768, at *6 (allowing **Doe** defendant who allegedly downloaded pornography illegally using **Bit-Torrent** to proceed anonymously, noting that "because **Doe** (as a defendant) has not purposely availed himself of the courts, the public's interest in knowing his identity is weaker"). Additionally, while Malibu Media **does** not express its view toward allowing **Doe** 15 to proceed anonymously through the dispositive motion phase of these proceedings, it **does** not object to allowing **Doe** 15 to remain anonymous through the end of discovery. Lastly, Malibu Media will not be unfairly prejudiced because it will know **Doe** 15's true identity and will be able to investigate whether its claims have merit. The only consequence for Malibu Media is that it will be deprived the leverage to force **Doe** 15 into settlement by publicly disclosing his identity.

*8 Upon balancing the potential embarrassment to **Doe** 15 and the possibility that Malibu Media could use inappropriate litigation tactics to "coerce" a settlement, against the public's interest in knowing **Doe** 15's true identity and the risk of unfair prejudice to Malibu Media, the Court finds that allowing **Doe** to proceed by pseudonym is, at least at this stage of the proceedings, appropriate. The Court may revisit this issue if Malibu Media's claims survive dispositive motions.

**IV. Motion to Sever for Improper Joinder**
    **Doe** 15 also moves to be severed from this case, arguing that he was improperly joined as a defendant because Malibu Media's allegations against him involve acts that are unrelated to the allegations against the other defendants in this case. A plaintiff may join two or more defendants in a single action under Federal Rule of Civil Procedure 20 if two independent requirements are satisfied: (1) the claims against the defendants must be asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there must be a "question of law or fact common to all defendants."

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

*See* Fed.R.Civ.P. 20(a)(2). The purpose of the rule is "to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits," 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1652. "[T]he impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Although "transaction or occurrence" is not defined in Rule 20(a), courts interpret the term as "comprehend[ing] a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Lozada v. City of Chicago,* No. 10 C 1019, 2010 WL 3487952 at *2 (N.D.Ill. Aug.30, 2010) (Aspen, J.) (quoting *Mosley v. Gen. Motors Corp.,* 497 F.2d 1330, 1333 (8th Cir.1974) ("[A]ll 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.")); *see also Dean v. City of Chicago,* No. 09 C 1190, 2009 WL 2848865, at *2 (N.D.Ill. Aug.31, 2009) (Kennelly, J.) (also citing *Mosley* ). In addition to the requirements of Rule 20, the Court may also consider "other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness." *Chavez v. Illinois State Police,* 251 F.3d 612, 632 (7th Cir.2001) (quoting *Desert Empore Bank v. Ins. Co. of N. Am.,* 623 F.2d 1371, 1375 (9th Cir.1980)). For example, courts may consider "factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved." *See SBO Pictures, Inc. v. Does 1–57,* No. 12–22, 2012 WL 1415523, at *2 (D.Md. Apr.20, 2012). This Court has wide discretion in deciding whether to sever a party for improper joinder. *See Chavez,* 251 F.3d at 632 (citing *Intercon Research Associates, Ltd. v. Dresser Indus., Inc.,* 696 F.2d 53, 56 (7th Cir.1982)).

*9 In copyright infringement cases involving peer-to-peer file-sharing systems that predate the **BitTorrent** protocol, numerous courts have found that "the alleged use of the same peer-topeer network by a group of Doe defendants to commit copyright infringement is insufficient to sustain the permissive joinder." *Hard Drive Prods., Inc. v. Does 1–188,* 809 F.Supp.2d 1150, 1156–59, 2011 WL 3740473, at *7–9 (N.D.Cal. Aug.23, 2011) (analyzing pre-**BitTorrent** peerto-peer case law); *see also IO Group, Inc. v. Does 1–19,* No. C 10–03851 SI, 2010 WL 5071605, at *3 (N.D.Cal. Dec.7, 2010) (collecting pre-**BitTorrent** case law). However, as explained above, the architecture of the **BitTorrent** file sharing system necessitates a degree of cooperation that did not exist in older incarnations of peer-to-peer file-sharing networks. Here, Malibu Media relies on the **BitTorrent** protocol's unique design to support its position that joinder is proper, arguing that by joining the same swarm to download a copy of the Works, the Defendants engaged in copyright infringement through a common series of transactions.

Due to the recent proliferation suits involving the **BitTorrent** protocol, courts across the country have been asked to consider whether downloading and uploading pieces of the exact same digital copy of a work through the **BitTorrent** protocol means that the defendants' actions are transactionally-related for the purposes of Rule 20(a)(2). *See SBO Pictures,* 2012 WL 1415523, at *2 (collecting cases). These courts have recognized that because a **BitTorrent** swarm forms around a specific copy of a file and not the copyrighted work itself, a plaintiff bringing a copyright infringement suit based on the alleged illegal use of **BitTorrent** must allege not only that the defendants downloaded the same copyrighted work, but that they did so by participating in the same **BitTorrent** swarm. *See, e.g., Hard Drive Prods. v. Does 1–53,* No. C–11–2330 EDL, 2011 WL 2837399, at *1 (N.D.Cal. July 14, 2011) ("Since a swarm develops around an originally seeded file, it appears that two or more different files of the same copyrighted work could potentially seed two or more different swarms.");

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

*Pacific Cent. Intern. Ltd. v. Does 1–101,* No.
C–11–02533 (DMR), 2011 WL 2690142, at *3
(N.D.Cal. July 8, 2011) ("**BitTorrent** users may up-
load different initial files of a given work, which re-
sults in the creation of distinct swarms.").

The issue before the Court in this case, however,
takes the inquiry a step further. Here, the Court is
asked to determine whether anonymous participation
in the same **BitTorrent** swarm, without a showing
that the Defendants accessed the swarm at the same
time, is sufficient to allow for joinder under Rule
20(a)(2). To date, no Circuit Court of Appeals has
addressed the issue. A number of district
courts—within this District and across the coun-
try—have been faced with this question and reached
different conclusions. *See Pacific Century Int'l v.
Does 1–31,* No. 11–9064, 2012 WL 2129003, at *2
(N.D.Ill. June 12, 2012) (recognizing a split of au-
thority and collecting cases). On the one hand, the
**BitTorrent** protocol, by virtue of its design, entails a
degree of cooperative activity that did not exist in
previous peer-to-peer file-sharing systems. Relying on
**BitTorrent's** architecture, some courts have con-
cluded that **Doe** defendants' infringing activities arise
from the same series of transactions or occurrences if
the illegally downloaded torrent file's unique hash
identifier links each **Doe** defendant to the same Initial
Seed and swarm. *See, e.g., Digital Sin, Inc. v. Does
1–176,* 279 F.R.D. 239, 244, at *5 (S.D.N.Y.2012)
("[I]t is difficult to see how the sharing and down-
loading ... as a part of a chain or 'swarm' of connec-
tivity designed to illegally copy and share the exact
same copyrighted file ... could not constitute a 'series
of transactions or occurrences' for the purposes of
Rule 20(a)."); *Pacific Century Int'l v. Does 1–31,* 2012
WL 2129003, at *2 (N.D.Ill. June 12, 2012)
(Leinenweber, J.) (joinder appropriate where plaintiff
alleged that various "anonymous defendants partici-
pated in the same swarm (at varying times spanning
just over one month)"); *Patrick Collins, Inc. v. John
Does 1–21,* 282 F.R.D. 161, 168–169
(E.D.Mich.2012) (holding that "the law of joinder

does not have as a precondition that there be temporal
distance or temporal overlap; it is enough that the
alleged **BitTorrent** infringers participated in the same
series of uploads and downloads in the same swarm,"
adding that "the technology underlying **BitTorrent**
[makes] it different from other file sharing methods,
for joinder purposes"); *First Videos, LLC v. Does
1–76,* 276 F.R.D. 254, 257 (N.D.Ill.2011) (Castillo, J.)
(the fact that "the downloading is alleged to have
taken place over the space of more than a month ...
do[es] not make joinder inappropriate" considering
"[t]he nature of the **BitTorrent** distribution protocol
necessitates a concerted action by many people in
order to disseminate files...."); *Hard Drive Prods., Inc.
v. Does 1–55,* No. 11 C 2798, 2011 WL 4889094, at
*5 (N.D.Ill. Oct.12, 2011) (Darrah, J.) (plaintiff's
allegation that Doe defendants infringed its copyrights
"through **BitTorrent**-the nature of which necessitates
a concerted action by many people in order to dis-
seminate files—is sufficient to satisfy Rule 20(a)").

**\*10** Other courts have determined that participa-
tion in a common swarm is a necessary, but insuffi-
cient condition to support joinder under Rule 20(a).
These courts have found joinder improper absent a
showing that the **Doe** defendants were present in the
same swarm *at the same time. See, e.g., Sunlust Pic-
tures, LLC v. Does 1–75,* No. 12 C 1546, 2012 WL
3717768, at *4 (N.D.Ill. Aug.27, 2012) (Tharp, J.)
(finding joinder appropriate where plaintiff alleged
that the defendants participated in the swarm at the
same time, and observing that "[t]he courts that have
denied joinder in the **BitTorrent** context have gener-
ally done so because the plaintiff failed to allege that
the defendants simultaneously participated in a single
swarm or that the defendants distributed files directly
among themselves"); *Digital Sins, Inc. v. Does 1–245,*
No. 11–8170, 2012 WL 1744838, *2 (S.D.N.Y. May
15, 2012) (finding joinder improper where complaint
"allege[d] that separate defendants shared access to a
file containing a pornographic film in separate and
isolated incidents over the course of 59 days," rea-
soning that such allegations merely asserted that the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

defendants "committed the same type of violation in the same way" and thus did not satisfy the requirements of permissive joiner) (internal quotations omitted); *In re BitTorrent Adult Film Copyright Infringement Cases*, No. 11–3995, 2012 WL 1570765, *11 (E.D.N.Y. May 1, 2012) (finding that plaintiff's assertion that defendants were acting in concert "rests on a thin reed" where the dates of downloading provided in plaintiff's complaint were weeks or months apart); *SBO Pictures, Inc. v. Does 1–57*, No. 12–22, 2012 WL 1415523, at *2 (D.Md. Apr.20, 2012) (denying joinder where downloads and uploads occurred over a threemonth period, stating that "the better-reasoned decisions have held that where a plaintiff has not plead that any defendant shared file pieces directly with one another, the first prong of permissive joinder is not satisfied"); *Cinetel Films, Inc. v. Does 1–1, 052*, No. JFM 8:11–cv02438, 2012 WL 1142272, at *6 (D.Md. Apr.4, 2012) (stating that "even if the IP addresses at issue in this motion all came from a single swarm, there is no evidence to suggest that each of the addresses acted in concert with all the others" because "the alleged infringement was committed by unrelated defendants, through independent actions, and at different times and locations," and adding that "[a] majority of courts have specifically held that the properties of BitTorrent are insufficient to support joinder"); *Third Degree Films, Inc. v. Does 1–131*, 280 F.R.D. 493, 496–97 (D.Ariz.2012) (joinder of an entire swarm that lasted many months improper because some participants may never overlap one another); *Raw Films, Ltd. v. Does 1–32*, No. 1:11–CV–2939–TWT, 2011 WL 6840590, at *2 (N.D.Ga. Dec.29, 2011) (Defendants not engaged in a common series of transactions as required by Rule 20 where plaintiff's complaint alleged that some Doe defendants were in the swarm over four months apart, finding that "differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert."); *Liberty Media Holdings, LLC v. Bit-Torrent Swarm*, 277 F.R.D. 669, 671–72 (S.D.Fla.2011) (finding joinder improper after "[a]

close examination of Defendants' activity reveal[ed] that Defendants, subject to one exception, used Bit-Torrent on different days and at different times over a two-month period," explaining that "[m]erely participating in a BitTorrent swarm does not equate to participating in the same 'transaction, occurrence, or series of transactions or occurrences' "); *On The Cheap, LLC v. Does 1–5011*, 280 F.R.D. 500, 502 ("Most recent decisions on this issue have concluded that the use of the BitTorrent protocol does not distinguish these cases from earlier rulings in P2P cases in which courts found that joining multiple Doe defendants was improper since downloading the same file did not mean that each of the defendants were engaged in the same transaction or occurrence."); *MCGIP, LLC v. Does 1–149*, No. 11–2331, 2011 WL 4352110, at *3 (N.D.Cal. Sep.16, 2011) (misjoinder where plaintiff "failed to show that any of the 149 Doe defendants actually exchanged any piece of the seed file with one another"); *Hard Drive Products, Inc. v. Does 1–188*, 809 F.Supp.2d 1150, 1164 (N.D.Cal.2011) (misjoinder where plaintiff conceded that "while the Doe Defendants may have participated in the same swarm, they may not have been physically present in the same swarm on the exact same day and time"); *Boy Racer, Inc. v. Does 1–60*, No. 11–1738, 2011 WL 3652521, at *4 (N.D.Cal. Aug.19, 2011) (severing defendants where "[p]laintiff [did] not plead facts showing that any particular defendant illegally shared plaintiff's work with any other particular defendant"); *CP Productions, Inc. v. Does 1–300*, No. 10 C 6255, 2011 WL 737761, at *1 n. 2 (N.D.Ill. Feb.24, 2011) (Shadur, J.) ("It would constitute a real stretch of the normal meaning of language for [the plaintiff] to call Rule 20(a)(2)(A) into play as the asserted predicate for lumping its separate asserted claims into a single lawsuit.").

*11 The latter line of cases reflects a more complete understanding of the mechanics of the Bit-Torrent protocol. Despite its cooperative design, the BitTorrent protocol's architecture alone does not compel the conclusion that anonymous defendants

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

who download copies of the same file from the same swarm are engaged in a common transaction or series of transactions for the purposes of Rule 20(a)(2). Where a swarm continues to exist for an extended period of time, it is improbable that defendants entering a swarm weeks or months apart will actually exchange pieces of data. Furthermore, it is impossible for defendants who are not in a swarm coextensively to exchange any pieces of a file. A recently published Note in the Michigan Law Review explains by way of example:

[I]magine a swarm developed around a file seeded by A. On Day 1, B, C, and D enter that swarm with A and help each other acquire the file by exchanging pieces of the file with one another. Their exchange can fairly be called the same "series of transactions" for the purposes of Rule 20. Now, after the exchange, assume all four stay plugged into the swarm through Day 2, uploading pieces of the file to any other users who enter into the swarm. On Day 3, B, C, and D disconnect. The next day, E, F, and G enter the swarm with A. Since the swarm develops around the file, E, F, and G are part of the same swarm that A, B, and C were in. However, now the file exchange is occurring between A, E, F, and G. By contrast, B, C, and D have no involvement with the second exchange because they left the swarm. Given that B, C, and D were not and could not be sources for E, F, and G, the former group's acquisition of the file was a wholly separate series of transactions from the latter's. Instead, the only link between the parties is that they used the same peer-to-peer network to copy and reproduce a plaintiff's video.

Sean B. Karunaratne, Note, *The Case Against Combating BitTorrent Piracy Through Mass John Doe Copyright Infringement Lawsuits,* 111 Mich. L.Rev. 283, 295 (Nov.2012); *see also Third Degree Films,* 280 F.R.D. at 498 (finding joinder requirements not met based on "the fact that a particular swarm, including the swarm at issue in this case, can

last for many months. During those months, the initial participants may never overlap with later participants").

The Court recognizes that this example paints a relatively simplified picture of the activity in a **BitTorrent** swarm, which in reality can involve thousands of users, dozens of seed files, and span for several months. Nevertheless, the example is instructive here. Exhibit A to Malibu Media's Amended Complaint—a chart listing the John Doe Defendants, their IP addresses, and "hit date"—indicates that the Defendants accessed the swarm at different dates and times between June 9, 2012 and July 28, 2012. (Dkt. No. 24–1.) **Doe 15,** the movant in this case, is alleged to have been part of the swarm on June 11, 2012 at 2:53 a.m. (*Id.*) He was preceded most recently in the swarm by **Doe 4,** who is alleged to have been present in the swarm on June 9, 2012 and followed by **Doe 8,** who appears to have accessed the swarm on June 13, 2012.[FN2] (*Id.*) It is undisputed that any pieces of the Works downloaded or uploaded by **Doe 15** were derived from the same Initial Seed as the pieces downloaded by **Does 4** and **8.** There is no indication, however, that **Doe 4,** or the **Does** that preceded him, remained in the swarm long enough to exchange pieces of the Works with **Doe 15.** Nor has Malibu Media demonstrated that **Doe 15** remained in the swarm long enough to exchange data with **Doe 8,** or with **Doe** Defendants who joined the swarm after **Doe 8.** If **Doe 4** left the swarm after obtaining the file, and **Doe 15** did the same, **Doe 15** would not have exchanged any data with either defendant despite having obtained the same seed file from the same swarm. Therefore, even assuming that **Doe 15** was an actual infringer, entered the same swarm and downloaded the same seed file, Malibu Media has failed to demonstrate **Doe 15** exchanged any piece of the seed file with any other defendant in this case.

FN2. The purpose here is to illustrate by way of example the tenuous connection between **Doe** defendants who are joined in a suit by

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

virtue of their presence in the same swarm. The Court recognizes that **Does 4 and 8** have since been voluntarily dismissed from this action.

**\*12** The Court also recognizes that it has previously held in a similar case that disputes related to joinder are premature at this stage of the proceedings. *See MGCIP v. Does 1–316,* No. 10 C 6677, 2011 WL 2292958, at \*2 (N.D.Ill. June 9, 2011). While a case decided a mere eighteen months ago might constitute "recent" case law in many other contexts, this particular area of law and the federal judiciaries understanding of the implications of joinder in such cases has developed significantly over the past eighteen months. This Court's own research reveals that prior to its decision in *MGCIP,* seven courts in this country had addressed whether it is appropriate to allow joinder of defendants who participate in the same **BitTorrent** swarm. Since then, 186 district and magistrate courts have addressed the issue. Through scores of proceedings, and with the help of undoubtedly thousands of pages of briefing on the issue, courts now have a more complete understanding of the mechanics of the **BitTorrent** protocol and its implications relating to joinder under Rule 20. Courts have also had the opportunity to witness the development and lifecycle of dozens of **BitTorrent** proceedings and appreciate more fully the complications that can arise as a result of mass joinder once such cases reach the more detailed phase of discovery. As evidenced by the cases cited above, courts throughout the country—on both sides of the swarm joinder debate—are in agreement that it is not only appropriate, but prudent to address the issue of joinder before litigation of this type is permitted to proceed to further.

Malibu Media argues that because the Defendants here downloaded the same torrent file, as evidenced by the file's unique hash identifier, it can demonstrate "with mathematical certainty" that the Defendants committed the infringing acts through the same transaction or series of transactions. Relying on *Pat-*

*rick Collins, Inc. v. John Does 1–21,* 282 F.R.D. 161, 168–169 (E.D.Mich.2012), Malibu Media submits there are only four possible ways Doe 15 could have acquired the file: (1) the Defendants connected to and transferred a piece of the Works from the initial seeder; (2) the Defendants connected to and transferred a piece of the Works from a seeder who downloaded the completed file from the initial seeder or from other peers; (3) the Defendant connected to and transferred a piece of the Works from other Defendants who downloaded from the initial seeder or from other peers; or (4) the Defendant connected to and transferred a piece of the Works from other peers who downloaded from other Defendants, other peers, other seeders, or the initial seeder.

Even assuming these four possibilities compose the entire universe of ways in which a Doe defendant could obtain a copyrighted work from a particular swarm, it **does** not follow that **Doe** defendants participating in the same swarm actually exchange any pieces of data with one another. If **Doe** 15 connected to the swarm on June 11, 2012 and downloaded a piece of the Works from other peers who downloaded from other Defendants, **Doe** 15 would have been engaged in a series of transactions—downloads and uploads—with peers, other Defendants, and seeders who were simultaneously present in the swarm. He could not fairly be said to have engaged in a transaction or series of transactions with peers who entered the swarm and left days, weeks, or months before his arrival. Furthermore, without showing that **Doe** 15 remained in the swarm after his June 11 "hit date," Malibu Media cannot maintain that **Doe** 15 acted in concert with Defendants that arrived subsequently by contributing to the chain of data distribution. Once a **BitTorrent** user disconnects from a swarm, any subsequent activity in that swarm is independent of the activity that took place during his presence. Malibu Media points to no facts alleging that the **Doe** Defendants who joined the swarm after **Doe** 15 obtained any pieces of the file from **Doe** 15, or from another peer who obtained the file from **Doe** 15. The only

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

nonconjectural link between Defendants who access a swarm at different times is their mutual reliance on the Initial Seeder's upload of the file; they do not rely on each other, nor do they necessarily pave the way for later participants to obtain the file. For example, had Doe 15 never entered the swarm on June 11, 2012, the remaining Does would still have been able to download the Works as alleged so long as someone possessing the Initial Seed or a complete copy remained in the swarm.

*13 Malibu Media nevertheless argues that even if most of the Defendants' hit dates do not overlap with one another, the parties should be joined because the BitTorrent protocol allows for continuous seeding and distributing of copyrighted material weeks after a peer's initial download. Again Malibu Media relies on the analysis from *Patrick Collins v. John Does 1–21,* where the district court allowed joinder in a factually similar scenario, explaining:

> [I]t is not that an infringer would wait six weeks to receive the movie, it is that the infringer receives the Movie in a few hours and then leaves his or her computer on with the Client Program uploading the Movie to other peers for six weeks. Because the Client Program's default setting (unless disabled) is to begin uploading a piece as soon as it is received and verified against the expected Hash, it is not difficult to believe that a Defendant who downloaded the Movie on day one, would have uploaded the Movie to another Defendant or peer six weeks later.

*Patrick Collins,* 282 F.R.D. at 168.

All this means is that each putative defendant, having been active in the swarm at some point in time, is a *possible* source that *may* be able to distribute copyrighted material. The mere capability of a defendant to upload to other defendants after his or her hit date by leaving the Client Program running is insufficient to support the assumption that such transactions are related. *See, e.g., Hard Drive Productions,* 809 F.Supp.2d at 1164–65 (denying joinder and rejecting plaintiff's argument that Doe defendants' use of the same BitTorrent swarm makes each defendant a "possible" source that "may" be responsible for distributing the copyrighted file to the other defendants). *Patrick Collins* also suggests that Doe defendants who participate in the same BitTorrent swarm are transactionally-related for the purposes of Rule 20 because activity is "traceable back to a specific initial seed through a series of transactions." 282 F.R.D. at 168. The Court finds it difficult to imagine how such a tenuous connection would suffice in any other context. If multiple defendants, without knowledge of one another and without relying on one another, were to physically travel to the same place at different times and dates to purchase a particular piece of copyrighted material from various individuals, who themselves are unaware of one another but could theoretically trace their possession of the copyrighted material back to the same "original bootlegger" through varying degrees of separation, it is unquestionable that joinder would be improper. Without a showing that the Doe defendants actually exchanged pieces of the Works with one another, relied on each others' activity, or otherwise paved the way for each others' success in the swarm, all that is alleged is that the Defendants went to the same place at different times to engage in the same unlawful activity. While the law of joinder does not necessarily require temporal overlap or specific knowledge of other defendants, it does require more than mere allegations that two or more unrelated defendants stole the same product in the same way without ever interacting with one another. *See, e.g., LaFace Records, LLC v. Does 1–38,* 2008 WL 544992, at *7 (E.D.N.C. Feb.27, 2008) ("[M]erely committing the same type of violation in the same way does not link defendants together for the purposes of joinder"); *see also Liberty Media Holdings,* 277 F.R.D. at 672 ("Under the BitTorrent protocol, it is not necessary that each of the [ Doe Defendants] participated in or contributed to the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

downloading of each other's copies of the work at issue.... Any 'pieces' of the work copied or uploaded by any individual **Doe** may have gone to any other **Doe** or to any of the potentially thousands who participated in a given swarm.") (quoting *Hard Drive Productions, Inc.,* 809 F.Supp.2d at 1163); *Raw Films, Ltd. v. Does 1–32,* No. 3:11cv532–JAG, 2011 WL 6182025, at *2 (E.D.Va. Oct.5, 2011) ("The mere allegation that the defendants have used the same peer-to-peer network to copy and reproduce the Work—which occurred on different days and times over a span of three months—is insufficient to meet the standards of joinder set forth in Rule 20."). Therefore, the Court finds that in order to join multiple anonymous defendants in a single suit for copyright infringement based on the alleged use of the Bit-Torrent protocol, a plaintiff must either (1) establish that the defendants were simultaneously present in the same swarm, or (2) show that they accessed the swarm in close temporal proximity (within hours of one another, not days or weeks) such that it can plausibly be inferred that the defendants may have downloaded and uploaded content through the same series of transactions.

*14 Of course there is no guarantee that peers simultaneously present in a swarm will actually exchange data. In swarms containing thousands of peers and dozens of seed files, two peers may, theoretically, be active in the swarm at the same time without ever relying on one another to obtain a piece of the desired file. However, given the interconnected nature of data transfers that take place among peers who are present in a swarm *at the same time,* it would be reasonable to infer that such peers, at the very least, engaged in the same series of transactions for the purposes of Rule 20(a)(2). In this case, Malibu Media has plead no facts alleging that **Doe 15** was simultaneously present in the swarm with any of the remaining **Doe Defendants** in this case, nor has it shown that **Doe 15's** "hit date" was in close temporal proximity to another **Doe Defendant.** Accordingly, the Court finds that any infringing acts by **Doe 15** are not part of the same "transaction, oc-

currence, or series of transactions or occurrences" under Rule 20(a)(2).

Because Malibu Media cannot satisfy the first prong of the permissive joinder test—i.e., that the infringement arises "out of the same transaction, occurrence, or series of transactions or occurrences"—the Court need not address the second prong of the permissive joinder test to evaluate whether any question of law or fact is common to all the Defendants. The Court therefore finds that joinder of **Doe 15** is improper under Rule 20. The Court therefore finds that joinder of **Doe 15** as a defendant under Rule 20 is improper.

**VI. All Remaining Defendants with the Exception of Doe 15 are Severed from the Case**

Federal Rule of Civil Procedure 21 provides: "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed.R.Civ.P. 21. Besides **Doe 15,** the Court notes that not a single defendant is alleged to have been present in the swarm at the same time as another defendant, and only two of the defendants originally sued in this case— **Doe 3** and **Doe 16**—appear to have accessed the swarm within the same 24–hour time frame. (Ex. A, Dkt. No. 24–1). Accordingly, Malibu Media has not demonstrated that *any* two defendants engaged in infringing activity as part of a common transaction, occurrence, or series of transactions or occurrences. Furthermore, it is unlikely that judicial economy will be achieved by trying what are, in essence, fourteen separate cases simultaneously. Each defendant is likely to assert a unique defense based on his or her situation, and will likely have to present evidence of that defense separately and independently. *See, e.g., Digital Sins,* 2012 WL 1744838, *2 ("Trying 245 separate cases in which each of the 245 different defendants would assert his own separate defenses under a single umbrella is unmanageable."). As another district court has recognized when assessing a similar mass litigation strategy to enforce copyrights on illegally downloaded music

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

files:

**\*15** [ ]Subscriber John **Doe** 1 could be an innocent parent whose internet access was abused by her minor child, while John **Doe** 2 might share a computer with a roommate who infringed Plaintiff' works. John **Does** 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed ... Wholesale litigation of these claims is inappropriate, at least with respect to the vast majority (if not all) of Defendants.

*BMG Music v. Does 1–203,* Civ. A. 04–650, 2004 WL 953888, at \*1 (E.D.Pa. Apr.2, 2004); *see also VPR Internationale v. Does 1–1017,* No. 11–2068, 2011 WL 8179128, at \*2 (C.D.Ill. Apr.29, 2011) ("Where an IP address might actually identify an individual subscriber and address[,] the correlation is still far from perfect.... The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.").

Other courts have similarly recognized that the individualized issues related to each **Doe** defendant's defense would wash away any judicial economy that may have been achieved through a plaintiff's mass-litigation strategy. *See, e.g., In re BitTorrent Adult Film Copyright Infringement Cases,* 2012 WL 1570765, \*12 (individualized determinations pertaining to **Doe** defendants who "raised a panoply of individual defenses .... far outweigh[ed] the common questions in terms of discovery, evidence, and effort required.... Thus, swarm joinder complicates [copyright infringement cases based on the use of Bit-Torrent], resulting in a waste of judicial resources"); *Liberty Media Holdings,* 277 F.R.D. at 672 ("Plaintiff has already requested on two separate occasions an extension to hold a joint scheduling conference. Such delay is directly attributable to the joinder of Defendants in this action."); *Pacific Century Int'l. Ltd. v.*

*Does,* No. C–11–02533 (DMR), 2011 WL 5117424, at \*3 (N.D.Cal. Oct.27, 2011) ("It is likely that Defendants would assert different factual and legal defenses, and would identify different witnesses. Case management and trial ... would be inefficient, chaotic, and expensive."). Courts have also recognized that such mass litigation might place a heavy burden on the Defendants during discovery. *See Pacific Century,* 2011 WL 5117424, at \*3 (observing that in cases against multiple **Doe** defendants, "each Defendant would have the right to be present at every other Defendant's depositions—a thoroughly unmanageable and expensive ordeal," and that *pro se* Defendants who do not e-file would be "required to serve every other Defendant with a copy of their pleadings and other submissions through the pendency of the action at substantial cost"). While maintaining a single case would benefit Malibu Media by allowing it to sue multiple defendants with just one filing fee and set of pleadings, this is not a proper basis for joinder. *See Digital Sins, Inc.,* 2012 WL 1744838, \*2 ("The only economy that litigating these cases as a single action would achieve is an economy to the plaintiff—the economy of not having to pay a separate filing fee for each action brought. However, the desire to avoid paying statutorily mandated filing fees affords no bases for joinder."); *In re BitTorrent Adult Film Copyright Infringement Cases,* 2012 WL 1570765, \*12 (finding that in four consolidated copyrighted cases involving the **BitTorrent** protocol, plaintiffs "improperly avoided more than $25,000 in filing fees by employing [their] swarm joinder theory"). The fact that plaintiffs typically file such cases hoping to quickly enter settlement agreements **does** not change the Court's determination of whether joinder is appropriate. The fact remains that if Malibu Media's claims against the various **Doe** defendants were to move forward into more detailed discovery and to trial, this case would impose significant procedural inefficiencies and burdens on both the Court and on almost every party in the case.

**\*16** As nearly every defendant in this case en-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)
(Cite as: 2013 WL 870618 (N.D.Ill.))

gaged in a separate series of transactions when downloading the Works and mass litigation against several defendants would prove unmanageable at trial and unfairly burdensome on the Defendants, the Court severs Malibu Media's claims against all defendants with the exception of **Doe 15.** *See, e.g., Digital Sins,* 2012 WL 1744838, *2 (severing claims against all defendants except John Doe 1 after determining that joinder was improper in a **BitTorrent** case). While courts in this situation generally sever all defendants with the exception of the first, *see, e.g., Digital Sins, Inc.,* 2012 WL 1744838, at *2, Rule 21 **does** not impose a requirement that the severing court retain the first named defendant over all others. *See* Fed.R.Civ.P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop *a* party. The court may also sever any claim against *a* party.") (emphasis added). Having decided several issues pertaining to **Doe 15,** including **Doe 15's** Motion to Show Cause, Motion to Quash, and Motion to Proceed Anonymously, the Court finds, in the interest of judicial economy, that it is appropriate to retain **Doe 15** rather than Defendant David J. Reynolds, the first-named defendant in this case. *See Sunlust Pictures,* 2012 WL 3717768, at *3 ("A court may, on motion or on its own, add or drop a party or sever *any* claim against *any* party at any time.") (citing Fed.R.Civ.P. 21) (emphasis added); *Walgreens Co. v. Networks–USA V, Inc.,* No. 12 C 1317, 2012 WL 6591810, at * 1 (N.D.Ill.Dec.17, 2012) (St.Eve, J.) ("It is well-settled that a district court has broad discretion under Rule 21.") (citing *Chavez v. Illinois State Police,* 251 F.3d 612, 632 (7th Cir.2001) (appellate court "accord[s] wide discretion to a district court's decision concerning the joinder of parties")).

### CONCLUSION

For the reasons stated, **Doe 15's** Motion to Quash and Motion to Show Cause based on a lack of standing are denied. **Doe 15's** Motion to Proceed Anonymously is granted. Any publicly filed documents referencing **Doe 15** should refer to **Doe 15** by his "John Doe" identifier rather than his real name. Pursuant to

Fed.R.Civ.P. 21, all remaining defendants are severed from this case with the exception of **Doe 15.** The clerk is ordered to sever the claims against Defendants David J. Reynolds, Felix Stanek, Gregory Blake, and John Doe 11 from this case, to treat the claims against those defendants as separate actions, and to assign a separate docket number to each action. Malibu Media is directed to file separate amended complaints containing only its claims against each individual defendant. As the remaining defendants have been severed from this case pursuant to Fed.R.Civ.P. 21 and **Doe 15** is the only remaining defendant in this case, **Doe 15's** Motion to Sever is denied as moot.

N.D.Ill.,2013.
Malibu Media, LLC v. Reynolds
Not Reported in F.Supp.2d, 2013 WL 870618 (N.D.Ill.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 9

Westlaw.

Not Reported in F.Supp.2d, 2014 WL 1228383 (N.D.Ill.)
(Cite as: 2014 WL 1228383 (N.D.Ill.))

Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.
Malibu Media, LLC, Plaintiff,
v.
John Doe subscriber assigned IP address
98.228.213.184, Defendant.

No. 13 C 8484
1:13–cv–08484Signed March 24, 2014

Mary K. Schulz, Schulz Law, P.C., Geneva, IL, for
Plaintiff.

Jonathan Lucas Allen Phillips, Shay Kepple Phillips,
Ltd., Peoria, IL, for Defendant.

### OPINION AND ORDER

SARA L. ELLIS, United States District Judge

*1 This case is one of many copyright **infringement** actions brought by Malibu Media, LLC ("Malibu Media"), a creator and distributor of adult films, alleging that individuals have used BitTorrent to **infringe** its copyrights. After filing the complaint, Malibu Media sought leave to serve a third party subpoena on defendant John Doe's **internet** service provider ("ISP"), Comcast Cable ("Comcast"), prior to holding a Rule 26(f) conference. Doc. 5. The Court granted the motion on December 17, 2013. Doc. 9. Doe now seeks to vacate the Court's order granting early discovery, to quash the subpoena, and to have the Court order Malibu Media to show cause why it and its counsel should not be sanctioned for their conduct in seeking early discovery. Because the Court does not find its prior order to have been improper or that Doe has raised a valid basis to quash the subpoena, the Court denies Doe's motion [12].

### BACKGROUND

In its complaint, Malibu Media alleges that between December 2012 and November 2013 Doe used BitTorrent, a software protocol that allows users to distribute data, including movie files, through peer-to-peer networks, to download, copy, and distribute forty-five of Malibu Media's copyrighted movies without authorization. Malibu Media alleges that it discovered this by using an investigator, IPP International UG ("IPP"), to establish a direct TCP/IP connection with Doe's IP address and then download bits of each of these forty-five movies. IPP then verified that these downloads corresponded with Malibu Media's copyrighted works.

The complaint only identifies Doe by an IP address, which Malibu Media has been able to trace to a physical address in the Northern District of Illinois. In order to determine Doe's identity and serve Doe with the complaint, Malibu Media sought leave to serve a third party subpoena on Comcast, Doe's ISP, prior to holding a Rule 26(f) conference. That subpoena, which was for the limited purpose of prosecuting this case, sought to discover Doe's name, address, telephone number, and email address. Malibu Media's motion was accompanied by a supporting memorandum and several declarations. One of those declarations was from Tobias Fieser, an IPP employee, who stated that computer(s) using Doe's IP address transmitted the movies identified in the complaint. The Court granted Malibu Media's motion to take discovery prior to the Rule 26(f) conference. Doe subsequently filed an appearance, asking the Court to vacate its order and moving to quash the subpoena issued to Comcast.

### ANALYSIS

**I. Motion to Vacate and Quash**

The Court may quash a subpoena if it "(i) fails to allow a reasonable time to comply; (ii) requires a

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2014 WL 1228383 (N.D.Ill.)
(Cite as: 2014 WL 1228383 (N.D.Ill.))

person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed.R.Civ.P. 45(d)(3)(A). The party moving to quash bears the burden of meeting the requirements of Rule 45. *See Pacific Century Int'l, Ltd. v. Does 1–7,* 282 F.R.D. 189, 193 (N.D.Ill.2012) (citing *Williams v. Blagojevich,* No. 05 C 4673, 2008 WL 68680, at *4 (N.D.Ill. Jan. 2, 2008)). Whether to quash a subpoena is within the Court's sound discretion. *United States v. Ashman,* 979 F.2d 469, 495 (7th Cir.1992).

*2 Although neither party raises the issue, as an initial matter, the Court notes that it is questionable whether Doe has standing to object to the subpoena served on Comcast. To have standing to quash the subpoena, the information sought must be privileged or the subpoena must implicate Doe's "legitimate interests." *Malibu Media, LLC v. John Does 1–21,* No. 12 C 9656, 2013 WL 2458290, at *2 (N.D. Ill. June 6, 2013). The Seventh Circuit has not yet addressed the issue of whether a Doe defendant in a BitTorrent case has standing to challenge a subpoena issued to his or her ISP, and the district courts in this Circuit are split. *Compare TCYK, LLC v. Does 1–87,* No. 13 C 3845, 2013 WL 5567772, at *2 (N.D.Ill. Oct. 9, 2013) (defendants have "at least a minimal privacy interest" in the requested information); *Sunlust Pictures, LLC v. Does 1–75,* No. 12 C 1546, 2012 WL 3717768, at *2 (N.D.Ill. Aug. 27, 2012) (Doe had standing based on "privacy interest in the information requested"), *with Hard Drive Prods. v. Does 1–48,* No. 11 CV 9062, 2012 WL 2196038, at *4 (N.D. Ill. June 24, 2012) (Doe defendants did not have standing "because internet subscribers must convey their identity and other information to an ISP in order to establish an account" and thus "do not have a reasonable expectation of privacy in their subscriber information").

The Court need not decide whether Doe has standing, however, because Doe has not demonstrated that the subpoena should be quashed. Essentially, Doe

argues that the subpoena should be quashed because Malibu Media did not present all relevant facts to the Court when requesting its issuance. Specifically, Doe contends that Malibu Media should have notified the Court of the following: (1) that its investigator, IPP, was being compensated pursuant to a contingency fee arrangement and is not a licensed private detective in Illinois; (2) that IPP is hiding its actual name and connection with another company, Guardaley, from the Court, Doe, and other defendants Malibu Media has sued; (3) that Fieser does not actually monitor the BitTorrent network as represented in his declaration and that instead a different individual, Michael Patzer, performs that task; and (4) whether Malibu Media had a *prima facie* case of copyright infringement. Taking the last argument first, Malibu Media specifically set forth in its memorandum in support of its motion for leave to serve the third party subpoena that it has a *prima facie* claim for copyright infringement. *See* Doc. 6 at 5–6. And although Doe argues that Malibu Media should have informed the Court of how much of each file Doe had downloaded or shared, the specificity Doe requests is not required at the pleading stage. *See Malibu Media, LLC v. Doe,* No. 13–C–0213, 2013 WL 5876192, at *2 (E.D.Wis. Oct. 31, 2013) (denying motion to quash subpoena because it was plausible at pleading stage that "a user who has a piece of a file constituting a movie on his computer also has the remaining pieces"). If Doe is contesting whether he actually downloaded entire files, such arguments go to the merits of the action and are "not relevant as to the validity or enforceability of a subpoena, but rather should be presented and contested once parties are brought properly into the suit." *First Time Videos, LLC v. Does 1–500,* 276 F.R.D. 241, 251 (N.D.Ill.2011).

Doe's other three arguments relate to what Doe considers to be illegality and obfuscation surrounding Malibu Media's investigative methods. Doe maintains that because of these problems, the Court should not have considered Fieser's declaration. In response to Doe's motion, Malibu Media provides declarations

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2014 WL 1228383 (N.D.Ill.)
(Cite as: 2014 WL 1228383 (N.D.Ill.))

that IPP is paid only for data collection services, that IPP has not been compensated for any work related to this specific case, and that Malibu Media has never paid nor offered to pay Fieser anything for his testimony. But even if Fieser or IPP were compensated on a contingency basis or otherwise for testimony, in violation of the rules of professional conduct applicable in this Court or 18 U.S.C. § 201(c)(2), which prohibits paying fact witnesses for their testimony, this does not make evidence obtained in violation of those rules inadmissible but rather only goes to the weight to be accorded to it. *United States v. Dawson,* 425 F.3d 389, 394 (7th Cir.2005); *Tagatz v. Marquette Univ.,* 861 F.2d 1040, 1042 (7th Cir.1988); *Valentino v. Proviso Twp.,* No. 01 C 557, 2003 WL 21510329, at *3 (N.D. Ill. June 26, 2003). The Court is not convinced that the fact that Malibu Media pays IPP for its services would have changed the decision to grant the subpoena. Thus, Malibu Media's failure to apprise the Court of this fact does not warrant quashing the subpoena.

*3 Doe also argues that IPP is an unlicensed private investigator and thus that its actions in Illinois are illegal. This, Doe contends, should preclude the Court from relying on the Fieser declaration to allow early discovery. Malibu Media responds that IPP is not subject to the Illinois Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004, 225 Ill. Comp. Stat. 447/5–3 *et seq.* Doe is asking the Court to determine what constitutes the unlicensed practice of private investigation, but that is a determination left to the Illinois Department of Financial and Professional Regulation. *See* 225 Ill. Comp. Stat. 447/50–15 (setting forth the role of the Department in overseeing and enforcing the act); *Thompson v. Gordon,* 851 N.E.2d 1231, 1237, 221 Ill.2d 414, 303 Ill.Dec. 806 (2006). Thus, the Court need not further address this issue here, although this does not preclude Doe from raising the defense on the merits. *See Malibu Media, LLC v. Weiheong Koh,* No. 13–10515, 2013 WL 5853480, at *2 (E.D.Mich. Oct. 30, 2013) (refusing to strike af-

firmative defense regarding whether Michigan's professional investigator licensure act was violated); *cf. Arista Records LLC v. Does 1–27,* 584 F.Supp.2d 240, 257–58 (D.Me.2008) (refusing to quash subpoena based on argument that declaration was obtained through unlicensed investigations). *But see Capitol Records Inc. v. Thomas–Rasset,* No. 06–1497 (MJD/RLE), 2009 WL 1664468, at *2 (D. Minn. June 11, 2009) (Minnesota Private Detectives Act did not apply to plaintiff's investigator that did not operate in Minnesota and merely monitored incoming internet traffic sent by a computer in Minnesota). At this stage, the Court sees no need to further delve into the arrangement between Malibu Media and its investigators to determine whether the subpoena issued to Comcast should be quashed. To the extent Doe's arguments go to the reliability or accuracy of Malibu Media's method of identifying Doe's IP address and BitTorrent activity or the role various individuals or companies played in doing so, they should be raised in mounting a defense to the suit instead of here. *See TCYK, LLC,* 2013 WL 5567772, at *3 (N.D.Ill. Oct. 9, 2013).

Additionally, Doe briefly argues that Malibu Media did not apprise the Court that up to 30% of those identified as defendants in BitTorrent cases may be innocent and thus that the subpoena may not identify the correct infringer. But this is not a reason to quash the subpoena, for even if the person associated with Doe's IP address did not download the files at issue in this suit, obtaining that person's information "is the logical first step in identifying the correct party." *TCYK, LLC v. Does 1–44,* No. 13–cv–3825, 2014 WL 656786, at *4 (N.D.Ill. Feb. 20, 2014); *see also reFX Audio Software, Inc. v. Does 1–111,* No. 13 C 1795, 2013 WL 3867656, at *2 (N.D.Ill. July 23, 2013) ("[The] argument that the subpoena should be quashed because the information sought will not itself identify the actual infringer demonstrates a lack of understanding of the basic scope of discovery under the federal rules .... Relevant information need not be admissible at trial if the discovery appears reasonably

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2014 WL 1228383 (N.D.Ill.)
(Cite as: 2014 WL 1228383 (N.D.Ill.))

calculated to lead to the discovery of admissible evidence.").

Finally, Doe cannot argue that the subpoena directed at Comcast imposes an undue burden on Doe, for it does not require Doe to do anything. *See, e.g., TCYK, LLC,* 2014 WL 656786, at *4; *Purzel Video GmbH v. Does 1–84,* No. 13 C 2501, 2013 WL 4478903, at *3 (N.D.Ill. Aug. 16, 2013); *reFX Audio Software, Inc.,* 2013 WL 3867656, at *3; *Malibu Media, LLC v. Reynolds,* No. 12 C 6672, 2013 WL 870618, at *6 (N.D.Ill. Mar. 7, 2013); *Sunlust,* 2012 WL 3717768, at *2. Nor is Doe's disagreement with Malibu Media's litigation tactics a reason to vacate the Court's order and quash the subpoena. Attempting to besmirch Malibu Media's reputation "does little to support Defendant's argument that [Malibu Media] did not establish good cause for the expedited discovery." *Zambezia Film Pty, Ltd. v. Does 1–65,* No. 13 C 1321, 2013 WL 4600385, at *2 (N.D.Ill. Aug. 29, 2013).

As even Doe recognizes, a motion for early discovery is the only manner by which Malibu Media can determine the identity of alleged infringers. Doc. 20 at 2 n.1. Quashing the subpoena would effectively prevent Malibu Media from seeking any remedy for the alleged copyright violations. Allowing the subpoena to stand, however, still provides "Doe Defendants a full opportunity to deny their liability and to raise any other defenses at the appropriate time if they are named as defendants." *First Time Videos,* 276 F.R.D. at 251. But because Doe's counsel has filed an appearance, in this instance, Doe could agree to accept service of the complaint without the need for Comcast to comply with the subpoena. *See Malibu Media, LLC,* 2013 WL 5876192, at *3. The parties should discuss this option before Malibu Media proceeds with obtaining the information requested in the subpoena from Comcast. If Doe refuses to accept service, however, Malibu Media may proceed in enforcing the subpoena on Comcast.

**II. Doe's Request for an Order for Malibu Media**

**to Show Cause Why It Should Not Be Sanctioned**

*4 Doe has also included in his motion a request that this Court order Malibu Media to show cause why it and its counsel should not be sanctioned pursuant to 19 U.S.C. § 1927 and the Court's inherent authority for its conduct in seeking early discovery. But because the Court does not find it appropriate to vacate its prior order and quash the subpoena issued to Comcast, Doe's request is denied.

**CONCLUSION**

For the foregoing reasons, Defendant John Doe's motion to vacate the Court's order granting early discovery, to quash the subpoena, and to have the Court order Malibu Media to show cause why it and its counsel should not be sanctioned [12] is denied.

N.D.Ill., 2014
Malibu Media, LLC v. Doe
Not Reported in F.Supp.2d, 2014 WL 1228383 (N.D.Ill.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 10

Westlaw.

Slip Copy, 2013 WL 3867656 (N.D.Ill.)
(Cite as: 2013 WL 3867656 (N.D.Ill.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
REFX AUDIO SOFTWARE, INC., Plaintiff,
v.
DOES 1–111, Defendants.

No. 13 C 1795.
July 23, 2013.

Patrick J. Keating, Chicago, IL, Paul A. Lesko, Simmons Browder Gianaris Angelides & Barnerd LLC, Alton, IL, for Plaintiff.

Michael Jeffrey Gunderson, Gunderson & Tharp, LLC, Howard B. Rockman, Howard B. Rockman, P.C., Chicago, IL, for Defendants.

### *MEMORANDUM OPINION AND ORDER*
ROBERT W. GETTLEMAN, District Judge.

*1 Plaintiff reFX Audio Software, Inc., a Canadian corporation that produces, markets, and sells sound mixing software and owns the copyright to a ROM Synthesizer–Plug–In Software program (the "Software"), has sued 111 anonymous defendants (Does 1–111) known to plaintiff only by their alleged use of internet protocol ("IP") addresses. Plaintiff alleges that defendants have committed direct and contributory copyright infringement under the under the Copyright Act of 1976 as amended, 17 U.S.C. § 101 *et seq.*, and civil conspiracy, by copying, distributing, and sharing the Software. After filing suit, plaintiff sought and was granted leave to serve third-party subpoenas on defendants' internet service providers ("ISP") to determine the names associated with the IP addresses. Does 51, 68, 97 and 101 ("defend-

ants") have now moved to quash those subpoenas, each arguing that they had been improperly joined under Fed.R.Civ.P. 20. Doe 51 also argues that the information sought is not relevant or necessary to the pending action and that the subpoena is unduly burdensome under Fed.R.Civ.P. 45(c)(3) (A)(IV).[FN1] Those motions are denied.

FN1. Doe 51's motion contains an alternative request for a protective order.

### BACKGROUND
This is one of an ever increasing number of cases filed by the instant plaintiff and others against unnamed defendants who allegedly illegally downloaded the plaintiffs' copyrighted works using the BitTorrent Protocol. A brief description of BitTorrent and its use to download movies and other copyrighted works can be found in this court's order in *Malibu Media, LLC v. John Does 1–25*, No. 12–cv–9655 (N.D. Ill. April 24, 2013) ("*Does 1–25* "), as well as in Judge Castillo's opinion in *Malibu Media, LLC v. John Does 1–6*, 2013 WL 2150679 (N.D.Ill. May 17, 2013) ("*Does 1–6* ") and Judge Kendall's opinion in *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 (N.D.Ill. March 7, 2013).

### DISCUSSION
Defendant Doe 51 first contends that the subpoenas to the third-party ISP should be quashed because compliance will not result in the identification of the alleged infringers. According to defendant, obtaining the name and contact information for the person to whom an ISP sends its monthly bill bears no rational relationship to the person or entity that might have actually accessed plaintiff's software.

Fed.R.Civ.P. 45(a) permits the issuance of subpoenas to produce documents and tangible things in a person's custody or control. The rule requires a court to quash or modify a subpoena if it: (1) fails to allow a

Slip Copy, 2013 WL 3867656 (N.D.Ill.)
(Cite as: 2013 WL 3867656 (N.D.Ill.))

reasonable time for compliance; (2) requires a person who is neither a party nor a party's officer to travel more than 100 miles; (3) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (4) subjects a person to undue burden. Fed.R.Civ.P. 45(c)(3)(A) (I–V). The party seeking to quash bears the burden of demonstrating that the subpoena falls within one of these categories.

As an initial matter, the court notes that defendants seek to quash subpoenas served to non-party ISPs. As a general rule, a party lacks standing to quash a subpoena issued to a nonparty unless the party has a claim of privilege attached to the information sought or unless the subpoena implicates the parties' legitimate privacy interests. *See Hard Drive Productions v. Does 1–48*, 2012 WL 2196038 at *3 (N.D.Ill. June 14, 2012). The district courts in this circuit are divided on the issue of whether an anonymous defendant accused of copyright infringement has standing to object to a subpoena issued to his ISP. *See Reynolds*, 2013 WL 870618 at *5 (comparing cases). Those cases that find standing do so on the basis that the party has "at least a minimal privacy interest in the information requested by the subpoenas...." *Sunlust Pictures, LLC v. Does 1–75*, 2012 WL 3717768 at *2 (N.D.Ill. August 27, 2012). Those cases that hold that the parties lack standing generally conclude that "because internet subscribers must convey their identity and other information to an ISP in order to establish an account, they do not have a reasonable expectation of privacy in their subscriber information." *Hard Drive Productions*, 2012 WL 2196038 at *4. Nor can a party rely on the First Amendment to remain anonymous "because the First Amendment does not protect copyright infringement and to the extent anonymity is used to mask copyright infringement or to facilitate infringement by other persons, it is unprotected." *Id.* (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110,118 (2d Cir.2012)).

*2 As this court noted in *Does 1–25*, it agrees generally that defendants lack standing to challenge

the instant third-party subpoenas. As in *Does 1–25*, however, it need not reach the issue because even if defendants have standing, there is no merit to the challenge to the subpoenas. Doe 51's argument that the subpoena should be quashed because the information sought will not itself identify the actual infringer demonstrates a lack of understanding of the basic scope of discovery under the federal rules. "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed.R.Civ.P. 26(b)(1). Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. *Id.*

Identifying the customers associated with the IP addresses of which plaintiff is aware is relevant to its claims. Even if the customer associated with the IP address is not necessarily the person who illegally download plaintiff's software, the customer's name is the first step in identifying the proper defendant. Consequently, Doe 51's motion to quash the subpoena as seeking irrelevant information is denied.

Next, all defendants argue that the subpoena should be quashed because the Doe defendants have been improperly joined under Fed.R.Civ.P. 20. As noted by this court in *Does 1–25*, there has been a plethora of litigation on the issue of joining as defendants persons who allegedly participated in a single BitTorrent "swarm" to illegally download copyrighted works. There is a split of authority on this issue. *See Does 1–6*, 2013 WL 2150679 at *7–14. This court agrees with Judge Castillo's comprehensive and well-reasoned opinion in *Does 1–6*, in which he concludes that "although there are compelling arguments on both sides, the Court finds that the alleged conduct of each Doe defendant shares an aggregate of operative facts that give rise to [the plaintiff's] claims of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 3867656 (N.D.Ill.)
(Cite as: 2013 WL 3867656 (N.D.Ill.))

infringement against each Doe defendant, such that the 'logical relationship' test is satisfied at this early stage of the litigation. In other words, [the plaintiff] has sufficiently pleaded that its claims arise out of the same 'transaction, occurrence, or series of transactions or occurrences'.... The shared operative facts are not solely that each Doe defendant used BitTorrent but that 'each Doe defendant downloaded the same Torrent file that was created by the same initial seeder, intending to: (1) utilize other users' computers to download pieces of the same [Copyrighted Works], and to allow his ... own computer to be used in the infringement by other peers and defendants in the same swarm.' " *Id.* At *11 (quoting *Patrick Collins, Inc. v. Does 1–21,* 282 F.R.D. 161, 165 (E.D.Mich.2012)).

*3 As this court noted in *Malibu* and Judge Castillo noted in *Does 1–6,*

It is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly with each other or as part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file—could *not* constitute a 'series of transactions or occurrences' for purposes of Rule 20(a). [ *Digital Sin, Inc. v. Does 1–176,* 279 F.R.D. 239, 244 (S.D.N.Y.2012) ].

For the reasons described in *Does 1–6,* the argument that joinder is proper only if defendants participated in the same swarm at the same time is also rejected. This argument ignores the fact that permissive joinder under Rule 20(a) does not require that defendants act in concert with each other, *see United States v. Miss.,* 380 U.S. 128, 143, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965), nor does it "have as a precondition that there be temporal distance or temporal overlap." *Patrick Collins v. Does 1–21,* 282 F.R.D. at 167. All that is required is a logical relationship between the separate causes of action. *Does 1–6,* 2012 WL 2150679 at *13 (citing *In re EMC Corp.,* 677 F.3d

1351, 1358 (Fed.Cir.2012)). To require plaintiffs to establish that the joined defendants shared information directly with each other construes Rule 20 too narrowly. Rule 20 is satisfied if defendants indirectly interact with one another through participation in a single swarm. "[I]t is important to consider that while a peer directly uploads to only a small number of peers, those peers in turn upload pieces to other peers that later join the swarm. Thus, a defendant's 'generation' of peers—peers that a defendant likely directly uploaded to—helped pass on pieces of the [plaintiff's software] to the next 'generation' of active peers." *Third Degree Films v. Does 1–36,* 2012 WL 2522151 at *9 (E.D.Mich. May 29, 2012). Consequently, the court concludes that plaintiff has sufficiently alleged proper joinder among all defendants. *See also Bicycle Peddler, LLC v. Does 1–12,* 2013 WL 3455849 (N.D.Ill. July 9, 2013) (Tharp, J.).[FN2]

FN2. Even if joinder of all defendants is not proper, improper joinder is not grounds to quash the third party subpoenas under Fed.R.Civ.P. 45.

Next, defendants argue that the subpoenas should be quashed because compliance would be unduly burdensome. Defendants' misunderstand Rule 45(c)(3)(A)(IV)'s "unduly burdensome" requirement. The burden to which Rule 45 refers is the burden on the responding or subpoenaed party or entity, not a third party. The instant subpoenas do not compel defendants to produce any information and thus do not burden them in any manner. *Does 1–6,* 2013 WL 2150679 at *4; *Sunlust Pictures LLC,* 2012 WL 3717768 at *2.

### CONCLUSION

For the reasons described above, all motions to quash the third-party subpoenas and/or for protective orders (Docs. 19, 22, 27 and 30) are denied.

N.D.Ill.,2013.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 3867656 (N.D.Ill.)
**(Cite as: 2013 WL 3867656 (N.D.Ill.))**

reFX Audio Software, Inc. v. Does 1-111
Slip Copy, 2013 WL 3867656 (N.D.Ill.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 11

Westlaw.

Slip Copy, 2013 WL 4805021 (N.D.Ill.)
(Cite as: 2013 WL 4805021 (N.D.Ill.))

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
The THOMPSONS FILM, LLC, Plaintiff,
v.
DOES 1–60, Defendants.

No. 13 C 2368.
Sept. 6, 2013.

Michael A. Hierl, Todd Sheldon Parkhurst, Hughes Socol Piers Resnick & Dym Ltd., Chicago, IL, for Plaintiff.

### ORDER
JOAN B. GOTTSCHALL, District Judge.

*1 Two Doe defendants have moved to quash or vacate the subpoena issued by Plaintiff to their Internet Service Providers ("ISPs"). Motions [16] and [17] are denied. Plaintiff, however, is entitled only to the IP account holders' names and mailing addresses. Plaintiff shall not publish the Doe defendants' identities without leave of the court, and no Doe defendants shall be named in any amended complaint or other pleadings filed with the court.

### STATEMENT
Plaintiff The Thompsons Film LLC brings a complaint for copyright infringement and contributory copyright infringement against sixty unnamed "John Doe" defendants. Plaintiff alleges that the defendants used the BitTorrent protocol to unlawfully transfer the copyrighted motion picture "The Thompsons" (a film about a vampire family on the run from the law), to which Plaintiff holds the exclusive rights, in violation of the United States Copyright Act, 17 U.S.C. §

101, *et seq.* Now before the court are two motions by Doe defendants ( Doe # s unknown) to quash the subpoenas issued to their ISPs and to sever and dismiss them from this action. For the following reasons, the motions are denied.

### I. BACKGROUND
Plaintiff alleges that the Doe defendants used the BitTorrent protocol to download and distribute its copyrighted motion picture. A description of the protocol can be found in numerous orders of other courts in this district. *See, e.g., TCKY, LLC v. Does 1–87,* No. 13 C 3845, 2013 WL 3465186 (N.D.Ill. July 10, 2013); *Malibu Media, LLC v. John Does 1–25,* No. 12 C 9655 (N.D.Ill. Apr. 24, 2013); *Malibu Media, LLC v. John Does 1–6,* No. 12 C 8903, 2013 WL 2150679 (N.D.Ill. May 17, 2013).

To summarize briefly, the BitTorrent software protocol breaks up large digital files into smaller pieces. Participants in a BitTorrent file-sharing instance (a "swarm") download these individual pieces from other peer participants. When an individual piece has been downloaded, the protocol permits a participant to make that piece available for peers to download. When a participant has downloaded copies of all of the pieces that made up the original file, the software assembles a copy of the file from the constituent pieces. After his or her own copy is assembled, the user may elect to leave the BitTorrent software running, which makes pieces of the file available for new peers to download. A BitTorrent user may leave the swarm at any time, before or after completing her download, ending her participation in both downloading and sharing. A user may also rejoin the swarm at a later time to complete her download or to continue sharing pieces with other peers. Thus, while a participant in the swarm is downloading the file, and possibly even afterwards, that participant may also be acting as a source for the download of portions of the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4805021 (N.D.Ill.)
(Cite as: 2013 WL 4805021 (N.D.Ill.))

file by other peers in the swarm. In this case, the complaint alleges that each of the **Doe** defendants participated in the same **BitTorrent** swarm, using the same seed file, to download and distribute Plaintiff's copyrighted motion picture.

**\*2** At this time, the **Doe** defendants are known to Plaintiff only by the Internet Protocol ("IP") addresses assigned by their ISPs and by the date and time at which the infringing activity was observed. Plaintiff alleges that each of the **Doe** defendants has an IP address based in Illinois. Plaintiff has issued subpoenas to the ISPs seeking information sufficient to identify each **Doe** defendant's name and contact information. The **Does** moving to quash were notified by Comcast Corporation of the subpoena and ask the court to prevent Comcast from providing their personal information to Plaintiff. (*See* Motion to Quash, ECF No. 16.)

### II. ANALYSIS

The issues raised in the motions to quash have been considered at length in the opinions of other courts in this district, as well as by this court in previous orders. *See, e.g., Purzel Video GmbH v. Does 1–84,* No. 13 C 2501, 2013 WL 4478903 (N.D.Ill. Aug.16, 2013); *Bicycle Peddler, LLC v. Does 1–99,* No. 13 C 2375, 2013 WL 4080196 (N.D.Ill. Aug.13, 2013). The court's discussion is therefore brief.

Federal Rule of Civil Procedure 45(a) allows the issuance of subpoenas to produce documents in a person's custody or control. A court must quash or modify a subpoena if it: (1) fails to allow a reasonable time for compliance; (2) "requires a person who is neither a party nor a party's officer to travel more than 100 miles"; (3) "requires disclosure of privileged or other protected matter, if no exception or waiver applies"; or (4) "subjects a person to undue burden." Fed.R.Civ.P. 45(c)(3)(A) (i-iv). A party moving to quash bears the burden of demonstrating that the subpoena falls within one of these categories. To evaluate whether a subpoena imposes an undue bur-

den, the court asks whether "the burden of compliance with [the subpoena] would exceed the benefit of production of the material." *Nw. Mem. 'l Hosp. v. Ashcroft,* 362 F.3d 923, 927 (7th Cir.2004).

A plaintiff alleging copyright infringement is entitled to the information sought through the subpoenas. Furthermore, the subpoenas impose no undue burden on the **Doe** defendants, who are not the party who must comply with the subpoena. One of the **Doe** defendants argues that the subpoena should be quashed because he or she did not download the movie, and someone else could have used his or her IP address to do so. But the fact that the customer associated with the IP address may not be the actual infringer is not a basis to quash the subpoena. As Judge Gettleman recently explained in *reFX Audio Software,*

> "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed.R.Civ.P. 26(b)(1).... Even if the customer associated with the IP address is not necessarily the person who illegally download[ed] plaintiff's software, the customer's name is the first step in identifying the proper defendant.

**\*3** *Id.* at \*2. Insofar as IP address holders may contend that they were not the infringing parties, such arguments go to the merits of the action and are "not relevant as to the validity or enforceability of a subpoena, but rather should be presented and contested once parties are brought properly into the suit." *Hard Drive Prods. v. Does 1–48,* No. 11 C 9062, 2012 WL 2196038, at \*4 (N.D. Ill. June 14, 2012).

### III. CONCLUSION

The court denies the motions to quash and vacate the subpoenas. It will, however, allow the **Doe** de-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4805021 (N.D.Ill.)
(Cite as: 2013 WL 4805021 (N.D.Ill.))

fendants to proceed anonymously. Other courts have deemed it prudent to allow defendants to proceed by pseudonym in copyright infringement proceedings, given the "substantial possibility that the names turned over by ISPs will not accurately identify the individuals who actually downloaded or shared the copyrighted material." *TCYK, LLC v. Does 1–87,* No. 13 C 3845, 2013 WL 3465186, at *4 (N.D.Ill. July 10, 2013). Therefore, Plaintiff may not publish the defendants' identities without leave of the court. No defendants shall be named in any amended complaint or other pleadings filed with the court; they shall instead be identified by **Doe** # or IP address.

To further limit any potential for harassment, the court also holds that the identity and mailing address of the account holder are the only pieces of information that are discoverable. Plaintiff not entitled to the telephone number or email address of the account holders and should not use these means to make contact with them. Moreover, Plaintiff must communicate with **Doe** defendants through counsel if they have legal representation.

N.D.Ill.,2013.
Thompsons Film, LLC v. Does 1-60
Slip Copy, 2013 WL 4805021 (N.D.Ill.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 12

Westlaw.

Slip Copy, 2013 WL 4501443 (N.D.Ill.)
(Cite as: 2013 WL 4501443 (N.D.Ill.))

C

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
MALIBU MEDIA, LLC, Plaintiff,
v.
JOHN DOES 1–49, Defendants.

No. 12–cv–6676.
Aug. 22, 2013.

Paul Joseph Nicoletti, Nicoletti & Associates, PLLC, Bloomfield Hills, MI, Mary K. Schulz, Schulz Law, P.C., Geneva, IL, for Plaintiff.

Alan L. Garrow, Nealis & Garrow, Batavia, IL, for Defendants.

**MEMORANDUM OPINION AND ORDER**
ROBERT M. DOW, JR., District Judge.

*1 In its complaint, Plaintiff Malibu Media alleges copyright infringement and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501 against Doe Defendants 1–49. Soon after Plaintiff filed its complaint, it sought leave to serve third party subpoenas on Comcast prior to the Rule 26(f) conference. The Court granted Plaintiff's motion. Since then, Plaintiff has voluntarily dismissed its claims against all Defendants other than Does 1, 29, 34, and 35. Before the Court are the remaining Defendants' motions to quash the subpoenas, dismiss or sever for misjoinder, to dismiss for failure to make a prima facie showing of copyright infringement, and, if those motions are denied, Doe Defendant 1 asks the Court to limit the scope of the subpoena and for a protective order preventing the disclosure of any information obtained though the subpoenas [12, 14, 16,

20]. For the reasons stated below, the motions to quash, sever, dismiss, and to limit the scope of the subpoenas are denied [12, 14, 16, 20], except that Doe Defendant 1's motion for a protective order is granted.

**I. Background**

Plaintiff claims that it is the owner of the copyright for a film called Young & Hot and that Defendants used computer software called BitTorrent to illegally copy and distribute its film. In an opinion issued last month, Judge Tharp provided a succinct description of how BitTorrent works:

> BitTorrent is a software protocol that facilitates the practice of peer-to-peer file sharing used to distribute large amounts of data over the internet. To share information using BitTorrent, an initial file-provider (the "seeder") elects to share an initial file, called a "seed," with a torrent network. The file to be distributed is divided into segments called "pieces." Other users ("peers") intentionally connect to the seed file to download it. As each peer receives a new piece of the file, the peer also immediately becomes a source of that piece for other peers, relieving the original seeder from having to send that piece to every peer requesting a copy. This is the key difference between BitTorrent and earlier peer-to-peer file sharing systems: "BitTorrent makes file sharing a cooperative endeavor." Sean B. Karunaratne, *The Case Against Combating Bit-Torrent Piracy through Mass John Doe Copyright Infringement Lawsuits,* 111 Mich. L.Rev. 283, 290 (2012) (hereinafter, *The Case Against Mass Joinder* ). It is "architecturally impossible for any peer on the network to take without giving." *Id.* at 288.

> After a peer completely downloads the file, it continues to transmit pieces of the file to other users until it disconnects from BitTorrent. As additional peers request and receive pieces of the same file,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4501443 (N.D.Ill.)
(Cite as: 2013 WL 4501443 (N.D.Ill.))

each user becomes a part of the network from which the file can be downloaded. As more users join the network, the speed and efficiency of downloads increases. The group of seeders and peers uploading and downloading the identical file are called a "swarm." While connected to the swarm, users continuously download pieces of the file until they have obtained a complete file and continuously upload pieces of the file to other users in the swarm. Even after a user exits the swarm, the identical file pieces that the user downloaded from other users and then shared with peers continue to circulate throughout the swarm. **BitTorrent** swarms can survive continuously for months or even years.

*2 *TCYK, LLC v. Does 1–87*, 2013 WL 3465186, at *1 (N.D.Ill. July 10, 2013).

Here, Plaintiff alleges that Defendants were part of the same swarm, downloading and uploading the film at various times between June 6 and July 25, 2012. Plaintiff's allegations are based on the fact that its investigator was able to download a piece of an identical copy of Young & Hot from each Defendant's IP address. Because of the way **BitTorrent** works, each Defendant (or someone using that address) must have had part of the film on his or her computer and allowed others to download it. The investigator was also able to ascertain—and Defendants do not deny—that Defendants are located in this judicial district and used Comcast as the internet service provider.

**II. Discussion**

**A. Motions to Quash**

All Defendants have moved to quash the subpoenas Plaintiff has served on Comcast. As of now, Defendants are known to Plaintiff only by their IP addresses and general locations. The subpoenas request Defendants' name, address, telephone number, email address, and the Media Access Control

("MAC") address (used to identify the specific computer used to download and upload the film).

Defendants argue first that the subpoenas should be quashed because they subject the Defendants to an undue burden. See Fed.R.Civ.P. 45(c)(3)(A)(iv). The claimed undue burden is that Defendants will suffer a reputational injury if they are identified as the alleged infringer. The problem with this argument is that the undue burden referred to by Rule 45 is the burden on the subpoenaed party, in this case Comcast. See *Malibu Media, LLC v. John Does 1–6*, 2013 WL 2150679, at *4 (N.D.Ill. May 17, 2013) (citing cases involving subpoenas of internet service providers). Accordingly, the subpoenas will not be quashed as imposing an undue burden on Defendants.

Defendants also argue that the subpoenas should be quashed because the burden of the proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(2)(C)(iii). Defendants believe the likely benefit is small because the subpoenas will only reveal the Comcast *subscriber's* identity and that is not necessarily the alleged infringer. The infringer could be, for example, a houseguest or a neighbor stealing the subscriber's Wi–Fi through a wall. Comcast, therefore, cannot tell Plaintiff who actually used the IP address to enjoy Young & Hot. And the burden is high, Defendants argue, because the subscriber is going to be outed as a person who may have enjoyed such a film—causing or threatening significant reputational injury. In fact, Defendants believe that threating reputational injury is the very point of this lawsuit. They maintain that the sole object of this lawsuit is to leverage the shame of downloading films like Young & Hot in order to force a quick settlement.

The Court understands that Defendants are in an undesirable spot, and their assessment of Plaintiff's motivation may be more or less correct, but that **does** not mean that the burden of Plaintiff's proposed discovery outweighs its benefit. The "burden" that Defendants have identified is simply the burden of being

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4501443 (N.D.Ill.)
(Cite as: 2013 WL 4501443 (N.D.Ill.))

accused of stealing pornography. It is not a wild assumption on Plaintiff's part that the subscriber may be the alleged infringer or may lead to the alleged infringer. Without connecting the IP address to a person, Plaintiff would have no way of prosecuting infringement of its claimed copyright. The Court will not prohibit this discovery because it is less than certain to identify the individual who Plaintiff really wants to find. See also *Malibu Media, LLC,* 2013 WL 2150679, at *5 (describing the subpoena to discover the subscriber as a "useful starting point for identifying the actual infringer" and refusing quash the subpoena based on a defendant's general denial of liability). And the Court will not prohibit Plaintiff's requested discovery because it will allow Plaintiff to make reasonable, albeit somewhat embarrassing, claims against each Defendant. Defendants' motions to quash are denied.

*3 Finally, Doe Defendant 29 asks the Court to modify the subpoena to require Comcast to provide Plaintiff with only the subscriber's name and address, and not their phone number, email, and MAC address. Defendant's concern is that the additional information is not required to effectuate service and that it will be used to harass him or her with settlement demands. The Court will not modify the subpoena for two reasons. First, basic information about Defendant will be produced in the ordinary course of discovery. It would serve little purpose to deny today what Plaintiff would be entitled to tomorrow. Second, Plaintiff is aware that it cannot use Defendant's personal information to coerce Defendant into a settlement. If Defendant's fears of harassment are founded, the Court will hear Defendant's complaint and take appropriate action.

## B. Motions to Sever for Improper Joinder

Federal Rule of Civil Procedure 20(a)(2) permits defendants to be joined in a single action if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Beyond these two requirements, consideration is given as to whether joinder would result in prejudice against any parties or otherwise cause delay. *First Time Videos, LLC v. Does 1–500,* 276 F.R.D. 241, 252, (N.D.Ill.2011). If parties have been improperly joined as defendants, the court may sever the claims pursuant to Rule 21. Rule 21 provides, "On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." The district court has "broad discretion whether to sever a claim under Rule 21." *Rice v. Sunrise Express, Inc.,* 209 F.3d 1008, 1016 (7th Cir.2000). Claims may be severed, and the severance may create two separate proceedings, provided that the claims are "discrete and separate." *Gaffney v. Riverboat Services of Indiana, Inc.,* 451 F.3d 424, 442 (7th Cir.2006) (quoting *Rice,* 209 F.3d at 1016).

Defendants' arguments that the claims against them should be severed boil down to this: (1) Defendants contributed to the same swarm but they did so weeks apart, so Plaintiff cannot claim that they acted "in concert," and therefore joinder is inappropriate, and (2) Defendants believe that they would be prejudiced by the variety of defense arguments that each Defendant would likely present at trial.

The first point is repeated throughout the Defendants' briefs and is a theme sounded by those skeptical of BitTorrent suits like this one. See, *e.g., The Case Against Mass Joinder* (arguing that direct collaboration should be required for joinder). The problem with the argument is that Rule 20 **does** not require direct transactions or collaboration. In fact, Rule 20 expressly allows for joinder based on a "series of transactions or occurrences." The Court has little doubt that participation in a swarm during a relatively limited time-period of satisfies that rule. Other district courts agree. See, *e.g., TCYK, LLC,* 2013 WL 3465186, at *3 (citing cases from D. Mass, E.D. Mich, and E.D. Tex); *Malibu Media, LLC,* 2013 WL

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4501443 (N.D.Ill.)
(Cite as: 2013 WL 4501443 (N.D.Ill.))

2150679, at *8 ("[I]t is difficult to see how the sharing and downloading activity alleged in the Complaint—a series of individuals connecting either directly or with each other as part of a chain or 'swarm' of connectivity designed to illegally copy and share the exact same copyrighted file—could *not* constitute a 'series of transactions or occurrences' for the purposes of Rule 20(a).") (quoting *Digital Sin, Inc. v. Does 1–176,* 279 F.R.D. 239, 244 (S.D.N.Y.2012)). Defendants are alleged to have downloaded identical copies of a single film and to have shared that same film with others doing the same thing, embodying and sustaining the swarm, all during a limited period of time. That is a *series* of transactions or occurrences; to conclude otherwise ignores the word "series," and would improperly restrict Rule 20(a)(2)(A) to the same transaction or occurrence.

*4 Next Defendants argue that they would be prejudiced by the variety of defense arguments that each Defendant would likely present at trial. There are two responses to this concern. First, Rule 20(a)(2)(B) requires common questions of fact or law, but it **does** not require that all questions of fact or law be shared. See, e.g., *Sunlust Pictures, LLC v. Does 1–75,* 2012 WL 3717768, at *4 (N.D.Ill. Aug.27, 2012). Here, Defendants use the same internet service provider, live in the same judicial district, and are accused of using the same technology to illegally download and share the same movie. So, plainly, there are common questions of fact or law. Second, this case is at the pleading stage, but if as the case progresses and factual and legal differences emerge that make joinder inappropriate, the Court can reconsider its ruling. Fed.R.Civ.P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."); *First Time Videos, LLC v. Does 1–500,* 276 F.R.D. 241 (N.D.Ill.2011) ("The Court recognizes that each **Doe** Defendant may later present different factual circumstances to support individual legal defenses. Prospective factual distinctions, however, will not defeat the commonality in facts and legal claims that

support joinder under Rule 20(a)(2)(B) at this [early] stage in the litigation."). Accordingly, the motions to sever for improper joinder are denied.

**C. Doe Defendant 1's Motion to Dismiss**

According to a table attached to Plaintiff's complaint, **Doe** Defendant 1 is alleged to have infringed Plaintiff's copyright for Young & Hot on June 6, 2012. Plaintiff did not register the film with the United States Copyright office until June 8, 2012. Doe Defendant 1 argues that because the film was not registered at the time of the alleged infringement, he or she cannot be liable for statutory damages or attorney's fees. As authority for this proposition, Doe Defendant 1 cites 17 U.S.C. § 412, which states:

In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

*5 Plaintiff responds that its work was first published in June of 2012 and that it was registered the

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2013 WL 4501443 (N.D.Ill.)
(Cite as: 2013 WL 4501443 (N.D.Ill.))

same month. See [1–2]. The provision cited by **Doe Defendant 1** provides for a three-month grace period: so long as the work is registered within three months of publication, the copyright holder may recover statutory damages and fees. See, *e.g.*, *Hays v. Sony Corp. of Am.*, 847 F.2d 412, 415 (7th Cir.1988) ("The plaintiffs could not obtain statutory damages or attorney's fees, because they did not register their copyright within three months after first publishing the [work] * * *."); *Television Digest, Inc. v. U.S. Tel. Ass'n*, 841 F.Supp. 5, 11 (D.D.C.1993) ("Statutory damages are available for all infringements of copyrights registered within three months after the first publication of the work.") *Singh v. Famous Overseas, Inc.*, 680 F.Supp. 533, 536 (E.D.N.Y.1988) ("[17 U.S.C. § 412(2) ] provides a grace period of three months after publication during which registration can be made without loss of remedies: full remedies could be recovered for any infringement begun during the three months after publication if registration is made before that period has ended. This exception is needed to take care of newsworthy or suddenly popular works which may be infringed almost as soon as they are published, before the copyright owner has had a reasonable opportunity to register his claim.") (quoting H.R.Rep. No. 94–1476). Because Plaintiff has alleged that its work was registered within the grace period provided by 17 U.S.C. § 412, **Doe Defendant 1's** motion to dismiss is denied.

**D. Motion for a Protective Order**

In the event that the Court denied **Doe Defendant 1's** motions to quash or dismiss, he or she also moved for a protective order requiring that any information released by Comcast remain confidential. Plaintiff **does** not oppose the motion and agrees to allow **Doe Defendant 1** to proceed anonymously through the end of discovery. Considering the sensitive subject matter, the Court agrees that such a protective order is appropriate and so the motion is granted: **Doe Defendant 1** may proceed anonymously at least through the end of discovery. The Court believes that the same order would be appropriate for the other remaining De-

fendants. The parties should confer as to whether they can agree to such an order and, if not, the remaining Defendants may move for the entry of one under Rule 26(c), see *Hard Drive Productions v. Does 1–48*, 2012 WL 2196038, at *6 (N.D.Ill. June 14, 2012).

**III. Conclusion**

Defendants' motions [12, 14, 16, and 20] are denied except for Doe Defendant 1's motion for a protective order, which is granted.

N.D.Ill.,2013.
Malibu Media, LLC v. John Does 1-49
Slip Copy, 2013 WL 4501443 (N.D.Ill.)

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.