IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DALLAS BUYERS CLUB, LLC, | ) |
| | ) Case No.: 14-c-2162 |
| Plaintiff, | ) |
| | ) Judge Gary Feinerman |
| v. | ) |
| | ) |
| DOES 1 – 36, | ) |
| | ) |
| Defendants. | ) |

**JOHN DOE #17'S RESPONSE TO PLAINTIFF'S MEMORANDUM ON JOINDER AND RESPONSE TO DEFENDANT DOE 17'S MOTION TO QUASH**

Defendant, John Doe #17 in response to Plaintiff, Dallas Buyers Club LLC's Memorandum and Response to John Doe #17's Motion to Quash states as follows:

1. **Introduction**

On May 9th, 2014 Defendant John Doe #17 received a letter from their ISP (Internet Service Provider) regarding a subpoena for their personal information. Defendant responded with a Motion to Quash the subpoena in which the defendant provided valid reasons as to why this subpoena should be quashed. On May 16nth, 2014 Defendant served a copy of the Motion to Quash to Opposing Counsel and Comcast Cable Communications, LLC. On June 23rd, 2014 Plaintiff responded with a memorandum and response to Defendants Motion to Quash.

2. **Argument**

   A. **The Plaintiff argues that joinder is appropriate in this case and denies that it is a basis for quashing a subpoena.**

The purpose of joinder under Rule 20 is "to promote trial convenience and expedite the final resolution of disputes, thereby preventing multiple lawsuits, extra expense to the parties, and loss

of time to the court as well as the litigants appearing before it." West Coast Productions, Inc. v Does 1–5,829, 275 FRD 9, 15 (DDC 2011) (quoting M.K. v Tenet, 216 FRD 133, 137 (DDC 2002)). The two prongs of Rule 20(a) are thus "liberally construed in the interest of convenience and judicial economy … in a manner that will secure the just, speedy, and inexpensive determination of the action." Spaeth v Michigan State University College of Law, 845 FSupp2d 48, 53 (DDC 2012) (quoting Davidson v District of Columbia, 736 FSupp2d 115, 119 (DDC 2010)). Indeed, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; [and] joinder of claims, parties, and remedies is strongly encouraged." United Mine Workers of America v Gibbs, 383 US 715, 724 (1966). The breadth of permissive joinder is not unlimited. For example, the fact that defendants allegedly violated the same trademark does not in all cases mean that the plaintiff's claim against them arose out of the same transaction or occurrence. SB Designs v Reebok International Ltd., 305 FSupp23d 888 (ND ILL 2004). Compare, Androphy v Smith & Nephew Inc., 31 FSupp2d 620 623 (ND Ill 1998)(same, patent infringement); Direct TV Inc v Collins, 244 FRD 408 (SD Ohio 2007)(downloading same encrypted satellite signal did not justify joinder where defendants did not act in concert with each other); Bridgeport Music Inc. v 11C Music, 202 FRD 229 (DC Tenn 2001)(infringement of copyrighted music); Golden Scorpio Corp. v Steel Horse Bar & Grill, 596 FSupp2d 1282 (D Ariz 2009)(joinder not allowed against 12 restaurants using trademark "Steel Horse" in businesses across the country in trademark infringement case, because the acts of infringement were separate and distinct). These cases make clear that alleging the same type of harm is not enough to justify joinder, because each act of infringement is a separate occurrence.

### B. BitTorrent Protocol

The BitTorrent protocol was developed by the Department of Defense as a means of communication in the event normal communications were disrupted. If Person A wants to communicate with Person B, but the direct link between them has been broken, BitTorrent allows A to communicate with B over the internet by going through others who have their own links to B, so the disrupted direct link does not prevent communication between A and B.

As is pertinent here in this case, the process begins with one person who has obtained a copy of a copyrighted movie and wishes to share it. Instead of sharing it directly, this first person – known as the "seeder" – downloads the movie into BitTorrent. In turn, BitTorrent breaks the

movie into smaller pieces, often thousands of them. A "tracker," which is a permanent server on the internet that coordinates file distribution, assigns to the movie itself and to each different piece of the movie a unique identifying number, consisting of dozens of randomly-generated letters and numbers, known as a Hash identifier. The tracker distributes the pieces of the movie to BitTorrent "clients," the term used for BitTorrent once installed on a specific computer. Once this is done, the "seeder" is no longer necessary for the sharing process. Information about the tracker and the movie is maintained on a "torrent" file. A user who wants to obtain the movie must have BitTorrent installed on his computer. He accesses the torrent file, and BitTorrent automatically connects to the tracker. The tracker responds by providing to the BitTorrent client a list of "peers" who have the various pieces of the movie. The BitTorrent client then connects to those peers and begins downloading pieces of the movie from them. Soon, an entire movie is assembled. Using the Hash identifiers, BitTorrent compares this newly-assembled movie to the original movie to make certain that all the pieces have been received and that all are correct and not corrupted. At that point, the download is complete and the user has a completely viewable copy of the movie. The people who participate in BitTorrent sharing are called "peers," and cumulatively the peers are referred to as a "swarm." The purpose of a swarm is to share a particular torrent file. Once a client downloads a particular file, the client becomes a peer and hence a member of the swarm. As long as a peer continues to run BitTorrent, sharing continues. A peer need not do anything at all to share with future clients who visit the torrent site; as long as the program is not disabled, his BitTorrent client continually and automatically shares the piece[s] of the movie when so directed by the tracker. See cases cited in Malibu Media v Does 1-14, 2012 WL 6115653 (ND Ind) at ; and Malibu Media LLC v John Does 1-54, 2012 WL 3030302 (D Col). After reviewing the above cases, John A. Gorman United States Magistrate Judge states

> "I have reviewed all of the cases cited by those two courts, as well as many more, and I find most persuasive the cases concluding that joinder is improper under the circumstances presented in the cases now before this Court. Some of these cases found joinder improper because the complaint contained only allegations that the defendants participated in a common swarm; these courts believed that this was insufficient to support a finding that their alleged conduct arose out of the same transaction, occurrence, or series of transactions or occurrences as Rule 20 requires. See, for example, Pacific Century International v Does 1-31, 2012 WL 2129003 at (ND Ill)."

Other cases in which the complaint included more specific allegations also declined joinder. For example, in In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765 at (EDNY), the Court found that the allegations of the complaint were insufficient to show that the anonymous defendants had shared file bits with each other. See also, SBO Pictures Inc. v Does 1-57, 2012 WL 1415523 at (D Md) (no joinder where no allegation that any defendant shared file pieces directly with another); Hard Drive Productions Inc. v Does 1-188, 809 FSupp2d 1150, 1164 (ND Cal 2011) (no concerted action where no pleading that any particular defendant shared plaintiff's work with any other particular defendant) As well other courts have expressed concern that joinder of large numbers of defendants in BitTorrent-related copyright infringement lawsuits will impede just, speedy, and inexpensive resolution of the cases. See, e.g., Malibu Media, LLC. v. Reynolds, 2013 WL 870618, at (noting that "each defendant is likely to assert a unique defense"); Third Degree Films v. Does 1-47, 286 F.R.D. 188, 196 (D. Mass. 2012) ("The Court simply cannot see how it 'promote[s] trial convenience' to hold forty-seven mini-trials and ask one jury to make findings as to each of them."); Patrick Collins, Inc. v. Does 1-38, No. 12–10756–NMG, 2013 WL 1175245, at (D. Mass. Mar. 19, 2013) (finding that joinder would create "significant logistical difficulties" where 34 Doe defendants remained).

Therefore, as shown in the above; the joining of many "John Does" within the same case based purely on the minimal facts at hand does not render enough evidence to group individuals together in the same case. Therefore, joinder is not appropriate in this case and even if the court should so find that it is: Rule 20(b) provides that "[t]he court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party." FRCP 20(b).

### C. Plaintiff States that Defendants Remaining Arguments do not Merit Quashing Plaintiffs Subpoena.

Plaintiff states that the subpoena does not impose an undue burden on Defendant, because Defendant is not the party who must comply with the subpoena. However, though Defendant is not the "Direct" recipient of the Subpoena who must comply with the Subpoena, Defendant is still directly affected. Defendant was affected on May 9nth, 2014 when Defendant received a letter stating that Comcast Cable Communications, LLC would not be taking any legal action to

defend Defendants information and unless Defendant took legal action Comcast Cable Communications, LLC would release Defendants name, address, and telephone number. The moment Defendant was notified that Comcast Cable Communications, LLC would not protect Defendants information the burden fell on Defendant to protect Defendants information. Therefore, Plaintiff has indeed placed an undue burden upon the Defendant to protect Defendants information even though the Subpoena was directed to Comcast Cable Communications, LLC. Plaintiff then states that Plaintiff is only using the IP addresses as a means to gather further information and denies Defendants claims that an "IP address is not a person" is not a valid reason for quashing a subpoena. However, merely paying the bill and having your name on the internet service providers record does not in any way constitute that that person may have had anything to do with the so called "file sharing." As stated before and as one court noted,

> Comcast subscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe, inexcusably pilfering Plaintiffs' property and depriving them, and their artists, of the royalties they are rightly owed. . . . Wholesale litigation of these claims is inappropriate, at least with respect to a vast majority (if not all) of Defendants.

There are simply too many variables to consider when trying to locate the perpetrator through an IP address that it is unfair to subject law abiding citizens to such scrutiny. In the case of Malibu Media, LLC v. John Does subscriber assigned IP address 99.169.76.167, No. 1:13-cv-23714-UU , at (March 20th, 2014) The court explained that even if Malibu Media, LLC could accurately show that the copyright infringer used the Internet connection of the account holder connected to IP-address they still would not be able to prove who shared the file. As the presiding Judge Ungaro Stated,

> "There is nothing that links the IP address location to the identity of the person actually downloading and viewing Plaintiff's videos, and establishing whether that person lives in this district. Even if this IP address is located within a residence, the geolocation software cannot identify who has access to that residence's computer and who would actually be using it to infringe Plaintiff's copyright,"

As a result the case was dismissed by the court. In a similar case filed in the United States District of Washington Seattle, Elf Man, LLC v. Eric Cariveau , et al ., Defendants, No. C13-0507RSL the presiding Judge Lasnik writes,

> "Simply identifying the account holder associated with an IP address tells us very little about who actually downloaded 'Elf-Man' using that IP address. While it is possible that the subscriber is the one who participated in the BitTorrent swarm, it is also possible that a family member, guest, or freeloader engaged in the infringing conduct"

Plaintiff's claims that discovering the owners of the IP addresses is the next step in finding out more information that may lead to evidence is just a sham to gather people's information to use for settlement and threat letters. The very likelihood that Plaintiff would find useful information leading to more evidence through the use of these IP addresses is a very big if and only continues to show their real intent.

### 3. Conclusion

In sum, the Plaintiff has indeed improperly joined John Doe #17 with 35 other Defendants within the same case as shown above. Plaintiff has also subjected Defendant to an undue burden by requiring them to protect their information or otherwise be named for something they did not do. As well, the claim by Plaintiff that they are only using these IP addresses as a means to gather information might hold true, if in fact there was evidence of that. On the contrary, this type of "Copyright Trolling" is something that Dallas Buyers Club, LLC is already known for doing. These so called lawsuits include hundreds of defendants scattered across the nation. Dallas Buyers Club, LLC currently has multiple similar lawsuits throughout the Midwest region in Michigan, Ohio, Indiana, Wisconsin, Illinois, as well as Florida, Washington, and Colorado. Dallas Buyers Club LLC so far has filed over 50 cases in various jurisdictions and the Defendant count is over 1500. Their ultimate goal is to issue subpoenas to internet service providers (ISP's) in order to get addresses, names, and telephone numbers to then send settlement/threat letters and earn a lot of money quickly. Defendant should not have to be subject to protecting their information against a cooperation that is already known for this type of behavior.

It is for the above reasons that Defendant respectfully asks the court to GRANT Defendants Motion to Quash the Subpoena.

Dated August 24, 2014                                Respectfully Submitted by

                                                     John Doe #17_____